**BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

IN RE: GENERIC DIGOXIN AND            MDL DOCKET NO. 2724
DOXYCYCLINE ANTITRUST LITIGATION

**MEMORANDUM IN SUPPORT OF
MOTION OF PLAINTIFF ROCHESTER DRUG COOPERATIVE, INC.
FOR TRANSFER OF RELATED ACTIONS TO THE EASTERN DISTRICT OF
PENNSYLVANIA FOR COORDINATED OR CONSOLIDATED PRETRIAL
PROCEEDINGS AS PART OF MDL NO. 2724 PURSUANT TO 28 U.S.C. § 1407**

Pursuant to 28 U.S.C. § 1407, Plaintiff Rochester Drug Co-Operative, Inc. ("RDC") respectfully submits this Memorandum of Law in support of its motion to transfer and coordinate or consolidate related actions in the Eastern District of Pennsylvania as part of MDL No. 2724, established by the Panel on August 5, 2016.

## BACKGROUND

This litigation concerns overlapping antitrust price-fixing conspiracies involving manufacturers and suppliers of generic drugs, evolving out of one governmental investigation. The Panel created MDL No. 2724 that included the first round of cases from this investigation. As noted at the Panel argument on July 28, 2016, Plaintiff fully expected to bring additional generic drugs before the Panel from this one investigation. Plaintiff is now aware of eighteen additional complaints brought by direct purchasers[1] involving additional generic drugs (other than digoxin and doxycycline) that have been filed since the creation of MDL No. 2724 (the "Related Actions"). The additional generic drugs include: Clobetasol, Desonide, Divalproex,

---

[1] Plaintiff is also aware of additional complaints filed by end payors. Direct purchasers are entities that directly purchased the generic drugs at issue from the defendants whereas end payors are entities that indirectly purchased, paid, and/or provided reimbursement for the generic drugs at issue. While the end payor cases may come before the Panel, they are not the subject of this motion, but they may be the subject of an end payor motion.

Econazole, Fluocinonide, Levothyroxine, Pravastatin, and Propranolol. There is substantial overlap among the defendants in these additional cases. Attached to this Memorandum is Schedule A, which lists each direct purchaser Related Action, the parties involved, and where those cases are currently pending.

The filing of the Related Actions relates to a developing antitrust investigation by the United States Department of Justice Antitrust Division ("DOJ") that began about two years ago and now spans multiple companies and drugs.[2] As part of that investigation, the DOJ convened a grand jury in the Eastern District of Pennsylvania. This grand jury has issued subpoenas to a number of generic manufacturers (many of whom are named as defendants in the additional complaints) and their employees. The grand jury probe has been examining whether generic manufacturers engaged in activities designed to fix prices and allocate markets on a wide-variety of generic drugs. According to a June 26, 2016 report by Policy and Regulatory Report ("PaRR Report"), the DOJ's investigation is focusing on trade associations and is wide-ranging:

> A PaRR source says prosecutors see the case much like its antitrust probe of the auto parts industry, which has gone on for years and morphed into the department's largest criminal antitrust probe ever. Like in that case, prosecutors expect to "move from one drug to another in a similar cascading fashion."[3]

On December 12, 2016, the DOJ filed the first two criminal charges against two generic pharmaceutical executives stemming from this investigation. Various sources report that these charges are part of what is reportedly a "broad, well-coordinated and long-running series of schemes to fix the prices and allocate markets for a number of generic pharmaceuticals in the

---

[2] *See U.S. Charges in Generic-Drug Probe to be Filed By Year-End,* McLaughlin, David and Chen, Caroline (Bloomberg Nov. 3, 2016, updated Nov. 4, 2016) at https://www.bloomberg.com/news/articles/2016-11-03/u-s-charges-in-generic-drug-probe-said-to-be-filed-by-year-end.

[3] Eric Palmer, *DOJ Criminal probe takes a look at trade associations*, FiercePharma (July 10, 2015), *available at* http://www.fiercepharma.com/regulatory/doj-criminal-probe-takes-a-look-at-trade-associations.

United States."[4]  *See* U.S. Dep't of Justice Press Release, dated December 14, 2016, "*Former Top Generic Pharmaceutical Executives Charged with Price-Fixing, Bid-Rigging and Customer Allocation Conspiracies*," at https://www.justice.gov/opa/pr/former-top-generic-pharmaceutical-executives-charged-price-fixing-bid-rigging-and-customer. *See United States of America v. Jeffrey A. Glazer*, No. 2:16-cr-00506-RBS (E.D. Pa.); *United States of America v. Jason T. Malek,* No. 2:16-cr-00508-RBS (E.D. Pa.).  These cases are both pending in the Eastern District of Pennsylvania.

Consolidation of the Related Actions in the Eastern District of Pennsylvania as part of MDL No. 2724 is appropriate because they involve common questions of fact.  All of the above Related Actions are brought on behalf of direct purchasers of generic drugs, and allege that Defendants and other co-conspirators agreed, combined, and conspired to inflate, fix, raise, maintain, or artificially stabilize prices of and/or to allocate markets for generic drugs in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  Each complaint alleges that the unlawful price increases followed meetings of the Generic Pharmaceutical Association in the 2013 to 2015 time frame, so every complaint involves a common nucleus of fact.  *See, e.g., Rochester Drug Co-Operative, Inc. v. Allergan PLC, et al.*, 16-cv-03189 (E.D. Pa. June 20, 2016) at ¶ 6 (Digoxin and Doxycycline: "Defendants orchestrated their conspiracy through earnings calls with industry analysts and other private and public communications and meetings such as trade association meetings held by the Generic Pharmaceutical Association"); *FWK Holdings, L.L.C. v. Teligent, et al.*, 16-cv-09475 (D.N.J. December 27, 2016) at ¶ 30 (Econazole "prices inexplicably increased sharply in the four months following June 2014, which is

---

[4] *See* Tom Schoenberg, *U.S. Generic Drug Probe Seen Expanding After Guilty Pleas*, Bloomberg (Dec. 14, 2016), *available at* https://www.bloomberg.com/news/articles/2016-12-14/u-s-files-first-charges-in-generic-drug-price-fixing-probe.

when generic pharmaceutical manufacturers met for a 3-day conference in Bethesda, Maryland."); *FWK Holdings, L.L.C. v. Fougera Pharm., Inc., et al.*, 16-cv-9897 (S.D.N.Y.) at ¶ 4 (Clobetasol: "agreement was furthered by discussions held at Generic Pharmaceutical Association ("GPhA") meetings in Orlando, Florida, and North Bethesda, Maryland in February and June 2014, respectively"); *FWK Holdings, L.L.C. v. Dr. Reddy's Lab. Inc., et al.*, 16-cv-06633) (E.D. Pa. December 27, 2016) at ¶ 7 (Divalproex ER "agreement was furthered by discussions held at Generic Pharmaceutical Association ("GPhA") meetings in Orlando, Florida, and North Bethesda, Maryland in February and June 2014, respectively").

      As this Panel has already determined in creating MDL No. 2724, the most appropriate forum for transfer and coordination or consolidation is the Eastern District of Pennsylvania where the DOJ's criminal investigation of a reportedly wide range of generic drug price fixing is being conducted. *See In re: Generic Digoxin and Doxycycline Antitrust Litigation*, MDL No. 2724 (JPML Transfer Order entered 08/05/16, Doc. # 116) (recognizing that criminal investigation in the same district weighs in favor of transfer to the Eastern District of Pennsylvania). Given that the allegations in the Related Actions also concern antitrust claims against overlapping generic drug manufacturer defendants, and similar claims related to other generic drugs are already pending before Judge Cynthia M. Rufe in the Eastern District of Pennsylvania as part of *In re Generic Digoxin and Doxycycline Antitrust Litigation* MDL No. 2724, transfer and consolidation is appropriate. Moreover, the fact that the plaintiffs in the Related Actions listed in Schedule A are represented by some of the same attorneys who are part of the court-appointed leadership of MDL No. 2724 also weighs in favor of transfer and consolidation.

      Finally, as the Panel already determined in creating MDL No. 2724, the Eastern District of Pennsylvania is well-equipped to preside over this multidistrict litigation, having previously

4

handled antitrust and class action cases and, as stated above, is currently handling a related generic drug industry antitrust conspiracy multidistrict litigation involving Digoxin and Doxycycline.

Accordingly, Plaintiff respectfully submits that the Related Actions should be coordinated or consolidated in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1407, as part of MDL No. 2724.

## ARGUMENT

**I.  Transfer and Coordination or Consolidation of the Related Actions is Appropriate**

Under 28 U.S.C. § 1407(a), civil actions pending in different district courts and involving "one or more common questions of fact" may be "transferred to any district for coordinated or consolidated pretrial proceedings." As already determined by the Panel in creating MDL No. 2724, transfer is appropriate to serve the convenience of the parties and witnesses and to promote the just and efficient conduct of the pending actions. *See In re: Generic Digoxin and Doxycycline Antitrust Litigation*, MDL No. 2724 (JPML Transfer Order entered 08/05/16, Doc. # 116).  At Oral Argument before the Panel in July of this year, in *In re: Generic Digoxin and Doxycycline Antitrust Litigation*, the Panel foreshadowed that expansion of the scope of the litigation could result in a return trip to the Panel, and counsel for plaintiffs agreed, "If it expands, we can come before the Panel at that time." MDL No. 2724 transcript of hearing, July 28, 2016 at 11 (Thomas Sobol, counsel for plaintiff).  Here, these factors strongly militate in favor of transferring the Related Actions to the Eastern District of Pennsylvania for coordination or consolidation as part of MDL No. 2724.

### A. The Related Actions Involve Common Questions of Fact Supporting Transfer and Coordination of Consolidation as part of MDL No. 2724

The Related Actions make essentially identical allegations of antitrust violations related to a number of generic drugs and should therefore be transferred and consolidated as part of MDL No. 2724.

The individual complaints in the Related Actions all involve common questions of fact and stem from the same DOJ investigation and same trade association meetings. In the Related Actions, all of the complaints focus on the same alleged unlawful conduct by Defendants—a conspiracy to unlawfully fix and artificially raise the prices of and allocate markets for generic drugs. While each set of complaints deals with specific drugs, there are numerous overlapping defendants, and all of the complaints focus on a series of meetings of the Generic Pharmaceutical Association from 2013 through 2015.  Common questions of fact include, *inter alia*:

1. Whether Defendants and their co-conspirators engaged in a conspiracy to fix, raise, maintain or stabilize the prices of drugs sold in the United States;

2. The identity of the participants of the alleged conspiracy;

3. The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

4. Whether the alleged conspiracy violated the Sherman Act;

5. Whether the conduct of Defendants and their co-conspirators caused injury to the business or property of plaintiffs and the members of the classes in the Related Actions;

6. The effect of the alleged conspiracy on the prices of generic drugs sold in the United States during the alleged class period;

7. The appropriate relief; and

8. The appropriate measure of damages sustained by the Plaintiffs and other members of the classes in the Related Actions.

These substantially identical factual allegations and legal issues in the Related Actions are sufficient to merit transfer and coordination or consolidation. *See In re: Prograf Antitrust Litig.,* 789 F. Supp. 2d 1380 (J.P.M.L. June 3, 2011) ("[W]e find that these three actions involve common questions of fact, and that centralization under Section 1407 . . . will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation."); *In re: Polyurethane Foam Antitrust Litig.*, 753 F. Supp. 2d 1376 (J.P.M.L. 2010) (holding that centralization under § 1407 was appropriate in actions involving common questions of fact regarding defendants and their co-conspirators engaging in a conspiracy to fix, raise, maintain and/or stabilize the prices charged for polyurethane foam sold in the United States in violation of antitrust laws).

Thus, there are many common questions supporting transfer and coordination or consolidation of the Related Actions.

**B.     Transfer Will Promote the Just and Efficient Conduct of the Related Actions**

In light of the common factual allegations asserted and identical legal theories pursued by plaintiffs in the Related Actions, transfer and coordination or consolidation will serve the "convenience of the parties and witnesses and promote the just and efficient conduct" of the litigation. 28 U.S.C. § 1407(a).

Consolidating or coordinating the Related Actions as part of MDL No. 2724 will eliminate duplicative discovery because plaintiffs in the Related Actions will seek to develop similar evidence, including evidence of the conspiracy to unlawfully fix and artificially raise the prices of and allocate markets for generic drugs, from the overlapping defendants. *In re Fresh*

*and Processed Potatoes Antitrust Litig.*, 744 F. Supp. 2d 1381 (J.P.M.L. 2010) ("These actions share factual questions relating to alleged anticompetitive conduct in the market for fresh and processed potatoes. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary."); *In re: Online DVD Rental Antitrust Litig.*, 609 F. Supp. 2d 1376 (J.P.M.L. 2009) (same).  As alleged in the complaint filed by the state attorneys general, *State of Connecticut v. Aurobindo Pharma USA*, 16-cv-2056-VLB (D. Conn. Dec. 15, 2016), the generic manufacturer conspirators communicated in person and via telephone, email, instant messages, and similar media, on a wide variety of generic drugs, the discovery for which will be expensive and time-consuming.  Transfer for coordination or consolidation will ensure that this discovery can be undertaken more efficiently and economically.

Moreover, Plaintiffs in the Related Actions will also have to satisfy the class action prerequisites of Rule 23 of the Federal Rules of Civil Procedure further supporting transfer and coordination or consolidation. *See In re Southeastern Milk Antitrust Litig.*, 530 F. Supp. 2d 1359 (J.P.M.L. 2008) (coordinating and transferring actions where all actions shared factual questions, citing the need to prevent inconsistent rulings, especially on class certification). This weighs heavily in favor of transfer and coordination or consolidation. *See In re Am. Family Mut. Ins. Co. Overtime Pay Litig.,* 416 F. Supp. 2d 1346, 1347 (J.P.M.L. 2006) (directing centralization "in order to eliminate duplicative discovery; prevent inconsistent pretrial rulings, particularly with respect to class certification."); *In re Roadway Express, Inc. Emp't Practices Litig.,* 384 F. Supp. 612, 613 (J.P.M.L. 1974). The Panel has "consistently held that the existence of and the need to eliminate [the possibility of inconsistent certification rulings] presents a highly persuasive reason favoring transfer under Section 1407." *In re Roadway Express, Inc. Emp't Practices Litig.,* 384

F. Supp. at 613; *see also, In re Plumbing Fixture Cases,* 298 F. Supp. 484, 493 (J.P.M.L. 1968) (explaining that § 1407 was designed to prevent "pretrial chaos" resulting from "conflicting class action determinations.").

Thus, where, as here, transfer to a single court will avoid duplicative discovery and potentially conflicting pretrial rulings, transfer for pretrial purposes is warranted to promote the interest of judicial economy and efficiency. Further, as the DOJ's investigation continues to unfold in the Eastern District of Pennsylvania, establishing a single court as the venue for related private claims will promote the just and efficient resolution of these matters.

## II. The Panel Has Already Determined that the Eastern District of Pennsylvania is the Most Appropriate Forum

On August 5, 2016, this Panel issued a Transfer Order finding that the Eastern District of Pennsylvania was the appropriate forum for coordinated pretrial proceedings concerning allegations of antitrust violations involving the generic drugs digoxin and doxycycline. The Panel chose that jurisdiction for very sound reasons, including because: the related criminal investigation is being conducted in the Eastern District of Pennsylvania, which is directly affected by the alleged conspiracies among generic drug manufacturers and suppliers in the generic drug industry. *See In re Digoxin and Doxycycline Antitrust Litig.*, MDL No. 2724 (J.P.M.L. Aug. 5, 2016) Doc. # 116 at 3 ("[T]he parties assert that a federal criminal investigation into defendants' generic drug pricing practices is underway in the Eastern District of Pennsylvania. Thus, a significant proportion of potential witnesses and documentary evidence will be located within or near the district. All responding parties, save one plaintiff, support centralization in the Eastern District of Pennsylvania, which offers a convenient and accessible forum for this litigation."). Additionally, many of the defendants in the Related Actions and in the pending MDL have their principal place of business in close proximity to the Eastern District

of Philadelphia. Further, as noted above, federal criminal charges recently brought against two former senior generic pharmaceutical executives for their roles in conspiracies to fix prices, rig bids, and allocate customers for certain generic drugs came about as a result of an ongoing federal antitrust investigation into anticompetitive conduct that is being conducted with the assistance of the FBI's Philadelphia Division and the U.S. Attorney's Office for the Eastern District of Pennsylvania.[5]

In addition, MDL No. 2724 has already been assigned by the Panel to the Honorable Cynthia M. Rufe in the Eastern District of Pennsylvania. *See In re Digoxin and Doxycycline Antitrust Litig.*, MDL No. 2724 (J.P.M.L. Aug. 5, 2016), Doc. #116 at 3. The Eastern District of Pennsylvania in general is an appropriate forum in which to transfer of the Related Actions because of its expertise in multidistrict litigation and the efficiency of its docket. In addition, Judge Rufe is "an experienced jurist who will steer this litigation on a prudent course" and is well able to preside over the Related Actions. *Id.* Judge Rufe is well-acquainted with complex antitrust litigation. Thus, the Eastern District of Pennsylvania not only has the resources to accommodate an additional multidistrict litigation, but it also has extensive experience in multidistrict litigation, and particularly in the antitrust context.

Indeed, Judge Rufe has taken firm control of the litigation and is moving it apace. She has held two status conferences, appointed leadership, and entered a scheduling order that will move the case through motions to dismiss and has directed the parties to negotiate and submit Protective Orders, ESI Protocols and Preservations Orders, by specific dates.

---

[5] *See* U.S. Dep't of Justice Press Release, *Former Top Generic Pharmaceutical Executives Charged with Price-Fixing, Bid-Rigging and Customer Allocation Conspiracies* (Dec. 14, 2016), *available at* at https://www.justice.gov/opa/pr/former-top-generic-pharmaceutical-executives-charged-price-fixing-bid-rigging-and-customer.

Under similar circumstances, where antitrust conspiracies involving multiple products in the same industry were at issue, this Panel has reasoned that transfer and consolidation of such cases into one MDL is appropriate.  *See In re: Automotive Wire Harness Systems Antitrust Litig.*, MDL No. 2311, *In re: Instrument Panel Clusters Antitrust Litigation*, MDL No. 2349, *In re: Fuel Senders Antitrust Litig.*, MDL No. 2350, *In re: Heating Control Panels Antitrust Litig.*, MDL No. 2351 (J.P.M.L. Transfer Order, filed 06/12/12, MDL No. 2349, Doc. #52) ("*Auto Parts Antitrust Litig.*") at 2-3.  In *Auto Parts Antitrust Litig.*, the parties agreed that centralization of separate MDLs in one federal judicial district concerning antitrust conspiracies involving different automotive components was appropriate, but the Panel concluded that the creation of three new MDLs was unwarranted  In reaching its decision, the Panel in *Auto Parts* reasoned that "[i]n situations . . . where similar conspiracies are alleged involving overlapping defendants and stemming from the same government investigation, and the parties and counsel already overlap to such a large extent, we find that the creation of a single MDL presents less of a concern."  *Id.* at 2.  *See also In re: Walgreens Herbal Supplements Mktg. & Sales Practices Litig.*, 109 F. Supp. 3d 1373, 1375 (J.P.M.L. 2015) ("In our judgment, a single MDL encompassing all four retailers is necessary to ensure the just and efficient conduct of this litigation. In many situations, we are hesitant to bring together actions involving separate defendants and products, but where, as here, the actions stem from the same government investigation and there is significant overlap in the central factual issues, parties, and claims, we find that creation of a single MDL is warranted."); *In Re Corrugated Container Antitrust Litig.*, 441 F. Supp. 921, 924 (J.P.M.L. 1977).  The same reasoning applies herein and strongly supports maintaining a single MDL, No. 2724, for the litigation of antitrust actions concerning different generic drugs.

All of the above—the location of the criminal investigation, overlap of parties and counsel, the location of parties and counsel, and the fact that this case concerns anticompetitive conduct in the generic drug industry that centered on trade association meetings—in addition to the resources and experience of the transferee court, weigh heavily in favor of transfer and coordination or consolidation of the Related Actions in the Eastern District of Pennsylvania.

**III.     MDL 2724 Should Now Be Re-Named In re: Generic Drugs Antitrust Litigation**

When this Panel issued its August 5, 2016 Transfer Order, the claims at issue in the complaints before the Panel were limited to digoxin and doxycycline.  As a result, the Panel ruled that it was premature to expand the name of the litigation to include other pharmaceutical products.  Because these additional complaints now involve similar anticompetitive conduct but with other generic drugs, Plaintiff respectfully suggests that the Panel consider changing the name of MDL No. 2724 to *In re: Generic Drug Pricing Antitrust Litigation*.

**CONCLUSION**

Accordingly, Plaintiff RDC respectfully requests that the Panel grant its motion and transfer the Related Actions listed on the attached Schedule A as well as any other related cases to the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings.

Dated: December 28, 2016                                         Respectfully submitted,

                                                                 NASTLAW LLC


                                                                 By:   /s/ Dianne M. Nast
                                                                       Dianne M. Nast

                                                                 Dianne M. Nast (PA Bar No. 24424)
                                                                 Erin C. Burns (PA Bar No. 89742)
                                                                 1101 Market Street
                                                                 Suite 2801
                                                                 Philadelphia, PA 19107
                                                                 215-923-9300
                                                                 215-923-9302 (facsimile)
                                                                 dnast@nastlaw.com
                                                                 eburns@nastlaw.com

                                                                 BERGER & MONTAGUE, P.C.
                                                                 David F. Sorensen
                                                                 Nick Urban
                                                                 Zachary D. Caplan
                                                                 1622 Locust Street
                                                                 Philadelphia, PA 19103
                                                                 (215) 875-3000
                                                                 (215) 875-4604 (fax)
                                                                 dsorensen@bm.net
                                                                 nurban@bm.net
                                                                 zcaplan@bm.net

FARUQI & FARUQI, LLP
Peter Kohn
Joseph T. Lukens
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
(215) 277-5770
(215) 277-5771 (fax)
pkohn@faruqilaw.com
jlukens@faruqilaw.com

TAUS, CEBULASH & LANDAU, LLP
Barry S. Taus
Kevin Landau
Archana Tamoshunas
80 Maiden Lane, Suite 1204
New York, NY 10038
(212) 931-0704
btaus@tcllaw.com
klandau@tcllaw.com
atamoshunas@tcllaw.com

*Counsel for Rochester Drug Co-Operative, Inc. and the Proposed Direct Purchaser Class*