## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724**<br>**16-MD-2724**<br><br>**ORAL ARGUMENT REQUESTED** |

*This document relates to*:

*State of Connecticut et al. v. Aurobindo Pharma USA, Inc., et al.*

No. 2:17-cv-03768 (CMR) (E.D. Pa.)
No. 3:16-cv-02056 (VLB) (D. Conn.)

*State of Connecticut et al. v. Teva Pharmaceuticals USA, Inc., et al.*

No. 2:19-cv-02407 (CMR) (E.D. Pa.)
No. 3:19-cv-00710 (MPS) (D. Conn.)

*State of Connecticut et al. v. Sandoz, Inc., et al.*

No. 2:20-cv-03539 (CMR) (E.D. Pa.)
No. 3:20-cv-00802 (SRU) (D. Conn.)

## RESPONSE IN OPPOSITION TO THE STATES' MOTION TO REMAND

**KIRKLAND & ELLIS LLP**
Devora W. Allon
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
devora.allon@kirkland.com

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................ 2

    1.   The Panel Transfers the State Actions to MDL 2724. ...................................... 2

    2.   The District Court Expends Significant Resources as the States Take the Lead. ............ 4

    3.   Congress Passes the Venue Act, But the States Continue to Move the MDL Forward. . 5

ARGUMENT ................................................................................................................ 6

I.   The States Have Waived Any Right To Seek Remand. ........................................ 6

    A.   The States Did Not Timely Raise a Venue Objection and Continued to Litigate. .......... 6

    B.   This MDL Is Not Comparable to *Google*. .................................................... 10

II.   The Venue Act Does Not Apply Retroactively. .................................................. 11

III.  The States' Interpretation of the Venue Act Leads to Absurd Results. ................................ 19

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Crash Disaster in Ionian Sea on September 8, 1974*,
438 F. Supp. 932 (J.P.M.L. 1977) ..................................................................... 11

*Akeso Health Scis., LLC v. Designs for Health, Inc.*,
2018 WL 2558420 (C.D. Cal. Jan. 25, 2018) ......................................................... 8

*Alaska Airlines v. United States*,
399 F. Supp. 906 (N.D. Cal. 1975) ......................................................................... 9

*Ex Parte Collett*,
337 U.S. 55 (1949) .................................................................................................. 18

*Davis v. Smith*,
253 F.2d 286 (3d Cir. 1958) ................................................................................... 7

*In re Delta Airlines, Inc., Flight Attendant Weight Standards Litig.*,
411 F. Supp. 795 (J.P.M.L. 1976) ....................................................................... 11

*Dietz v. Bouldin*,
579 U.S. 40 (2016) ................................................................................................. 20

*Doe v. Chao*,
540 U.S. 614 (2004) ............................................................................................... 14

*Fairhope Fabrics, Inc. v. Mohawk Carpet Mills, Inc.*,
140 F. Supp. 313 (D. Mass. 1956) ......................................................................... 8

*First Bank Bus. Cap., Inc. v. Agriprocessors, Inc.*,
602 F. Supp. 2d 1076 (N.D. Iowa 2009) ............................................................ 7, 9

*Fort Wayne Corrugated Paper Co. v. Anchor Hocking Glass Corp.*,
31 F. Supp. 403 (W.D. Pa. 1940) ........................................................................... 8

*Freeman v. Bee Mach. Co.*,
319 U.S. 448 (1943) ................................................................................................. 7

*In re Google Digital Advert. Antitrust Litig.*,
MDL No. 3010, 2023 WL 3828612 (J.P.M.L. June 5, 2023) ........................ *passim*

*Hamdan v. Rumsfeld*,
548 U.S. 557 (2006) ............................................................................................... 16

*I.N.S. v. Cardoza-Fonseca*,
    480 U.S. 421 (1987) ............................................................................................14

*Intellectual Ventures II LLC v. FedEx Corp.*,
    2017 WL 5630023 (E.D. Tex. Nov. 22, 2017) ...................................................8

*Kaist IP US LLC v. Samsung Elecs. Co.*,
    2017 WL 7058227 (E.D. Tex. Dec. 18, 2017)....................................................8

*Koninklijke Philips N.V. v. ASUSTeK Comput. Inc.*,
    2017 WL 3055517 (D. Del. July 19, 2017) ........................................................9

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994)..............................................................................12, 16, 17

*Lexecon v. Milberg Weiss Bershad Hynes & Lerach*,
    523 U.S. 26 (1998)................................................................................................7

*Lindh v. Murphy*,
    521 U.S. 320 (1997)..................................................................................12, 13, 14

*Mantissa Corp. v. Ondot Sys., Inc.*,
    267 F. Supp. 3d 918 (S.D. Tex. 2017) .................................................................9

*Martin v. Hadix*,
    527 U.S. 343 (1999)............................................................................................17

*Mathews v. Kidder, Peabody & Co.*,
    161 F.3d 156 (3d Cir. 1998)..........................................................12, 13, 17, 18

*Parker v. NutriSystem, Inc.*,
    620 F.3d 274 (3d Cir. 2010) ..............................................................................20

*Red Carpet Studios v. Midwest Trading Grp., Inc.*,
    2018 WL 4300544 (S.D. Ohio Sept. 10, 2018) ..................................................8

*Rivers v. Roadway Express, Inc.*,
    511 U.S. 298 (1994)............................................................................................16

*Scheidemann v. I.N.S.*,
    83 F.3d 1517 (3d Cir. 1996)..........................................................2, 13, 14, 16

*Schoen v. Mountain Producers Corp.*,
    170 F.2d 707 (3d Cir. 1948)..............................................................................19

*Spearman v. Sterling S.S. Co.*,
    171 F. Supp. 287 (E.D. Pa. 1959) .......................................................................8

*Steven I. v. Central Bucks School Dist.*,
618 F.3d 411 (3d Cir. 2010)..................................................................17, 18

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
581 U.S. 258 (2017)....................................................................................8

*U.S. Fid. & Guar. Co. v. United States*,
209 U.S. 306 (1908)..................................................................................12

*United States v. Nat'l City Lines, Inc.*,
337 U.S. 78 (1949)....................................................................................18

*Viscofan USA, Inc. v. Flint Grp.*,
2009 WL 1285529 (C.D. Ill. May 7, 2009) .............................................9

*Vooys v. Bentley*,
901 F.3d 172 (3d Cir. 2018)......................................................................20

*Wachovia Bank, N.A. v. Schmidt*,
546 U.S. 303 (2006)....................................................................................7

*In re Wilson*,
451 F.3d 161 (3d Cir. 2006)......................................................................12

**Statutes**

28 U.S.C. § 1404(a) ........................................................................................9

28 U.S.C. § 1406(b) ........................................................................................7

28 U.S.C. § 1407(a) ......................................................................................11

28 U.S.C. § 1407(e) ......................................................................................12

28 U.S.C. § 1407(g) ..........................................................................5, 14, 19

Consolidated Appropriations Act, 2023
Pub. L. No. 117-328, 136 Stat. 4459 .........................................................5

**Other Authorities**

168 Cong. Rec. H10475, H10528 (daily ed. Dec. 23, 2022) .......................16

168 Cong. Rec. H8252-53 (daily ed. Sept 29, 2022) ....................................5

168 Cong. Rec. H8253 (daily ed. Sept 29, 2022) ........................................14

168 Cong. Rec. S10007 (daily ed. Dec. 21, 2022)................................15, 16

168 Cong. Rec. S2935-36 (daily ed. June 14, 2022) ...........................................................5, 14, 15

168 Cong. Rec. S7752 (daily ed. Dec. 19, 2022)...........................................................................15

H.R. 3460, 117th Cong. (as introduced May 21, 2021)..............................................................5, 14

H.R. Rep. No. 117-494 (2022)..........................................................................................................9

S. 1787, 117th Cong. (as introduced May 24, 2021) ................................................................5, 14, 15

S. 1787, 117th Cong. (as passed the Senate June 14, 2021) ...........................................................5

## INTRODUCTION

This MDL spans over 50 actions by five categories of plaintiffs (including three putative classes), over 50 defendants, and over 200 drugs.  These cases implicate complex issues of antitrust law and economics involving the generic pharmaceutical industry.  Since joining this MDL in 2017, the States have taken the lead in directing the litigation, and the MDL's fact discovery and bellwether process have centered on their three complaints.  For seven years, the District Court has expended significant judicial resources organizing and managing this MDL efficiently and productively.  It has ruled on at least 40 motions to dismiss, overseen the months-long bellwether selection process, established leadership committees, appointed three Special Masters, and issued over 200 pretrial orders, many relating to processes for streamlining the MDL.  And at the States' request, the District Court structured the MDL's bellwether process around one of their complaints.

Despite all that, the States now seek to remand their actions to the District of Connecticut before pretrial proceedings are concluded so they can pursue them in a separate venue.  The States rely solely on the Panel's decision in *In re Google Digital Advert. Antitrust Litig.*, MDL No. 3010, 2023 WL 3828612 (J.P.M.L. June 5, 2023).  Their argument fails for three reasons.

***First***, the States have waived any venue rights they may have had and thus cannot now seek to remand.  The Venue Act became law in December 2022; the States in *Google* moved for remand in February 2023; and this Panel remanded *Google* in June 2023.  But in this MDL, the States did not move for remand until November 1, 2023.  Since the Venue Act became law, they have continued to vigorously prosecute and direct this MDL, producing hundreds of thousands of documents, participating in at least 75 depositions, and briefing multiple issues.  Because the States sat on their rights for nearly a year while continuing to litigate their claims in the MDL, they cannot now fairly argue that venue for remaining pretrial proceedings does not lie in the Eastern District

of Pennsylvania—an outcome that would throw this MDL into chaos and require Defendants to litigate the same allegations and legal claims in multiple fora.

**Second**, the Panel should decline to apply *Google* on the merits because Third Circuit precedent—which, unlike in *Google*, would apply to appellate review here—expressly recognizes that retroactive intent must be determined by evaluating all tools of statutory interpretation, including "legislative history." *Scheidemann v. I.N.S.*, 83 F.3d 1517, 1521 (3d Cir. 1996). The *Google* order did not consider legislative history in determining whether the Venue Act applies retroactively or solely prospectively. The full analysis mandated in the Third Circuit demonstrates that the Venue Act does not retroactively apply to this MDL.

**Third**, if the States' interpretation of the Venue Act were correct, the most natural reading of the Act would deprive the Panel of its remand authority, which derives solely from §1407(a), and not any inherent authority. Indeed, the *Google* Panel acknowledged that applying the Venue Act to pending MDLs "potentially could be construed as eliminating our subsection (a) remand authority" over such actions. 2023 WL 3828612 at *3. This absurd result further underscores why the Venue Act cannot reasonably be interpreted to apply to pending cases.

## BACKGROUND

### 1. The Panel Transfers the State Actions to MDL 2724.

This MDL began in August 2016, when the Panel centralized ten pending actions in the Eastern District of Pennsylvania. ECF No. 1.[1] Since then, the size and complexity of the MDL has ballooned, largely due to actions brought by the States:

- **Heritage** Action. In August 2017, the Panel transferred to the Eastern District of Pennsylvania the claims of 40 States brought in the District of Connecticut for coordinated or consolidated pretrial proceedings. ECF No. 417; Compl., *Connecticut v. Aurobindo Pharma USA, Inc.*, No. 3:16-cv-2056-VLB (D. Conn. Dec. 15, 2016), ECF No. 1. Four additional States that

---

[1] Unless otherwise noted, all docket citations are to the E.D.Pa. docket for MDL No. 2724, 2:16-md-02724-CMR.

never filed claims in the District of Connecticut were later added as putative plaintiffs in the Eastern District of Pennsylvania.[2] States' Consolidated Am. Compl., *Connecticut v. Actavis Holdco U.S., Inc.*, No. 2:17-cv-3768-CMR (E.D. Pa. June 18, 2018), ECF No. 15. The States added 14 additional Defendants in the *Heritage* Action in the Eastern District of Pennsylvania, but did not name them as Defendants in the *Heritage* Action in the District of Connecticut.[3] *See id.*

- **Teva Action**. In May 2019, the Panel transferred to the Eastern District of Pennsylvania a new complaint filed in the District of Connecticut by 44 States. ECF No. 1011; Compl., *Connecticut v. Teva Pharms. USA, Inc.*, No. 3:19-cv-00710-MPS (D. Conn. May 10, 2019), ECF No. 1. The States did not object. *See* Mem. of Law in Support of the States' Motion to Remand ("States' Memo") at 2. Nine additional States that never filed claims in the District of Connecticut were later added as putative plaintiffs in the Eastern District of Pennsylvania.[4] Am. Compl., *Connecticut v. Teva Pharms. USA, Inc.*, No. 2:19-cv-02407 (E.D. Pa. Nov. 1, 2019), ECF No. 106. The States added two additional Defendants in the *Teva* Action in the Eastern District of Pennsylvania but did not name them as Defendants in the *Teva* Action in the District of Connecticut.[5] *See id.*

- **Dermatology Action**. In July 2020, the Panel transferred to the Eastern District of Pennsylvania yet another complaint filed in the District of Connecticut, this time by 51 States. ECF No. 1452; Compl., *Connecticut v. Sandoz, Inc.*, No. 3:20-cv-00802-SRU (D. Conn. June 10, 2020), ECF No. 1. The States again did not object. *See* States' Memo at 2. California was later added as a putative plaintiff in the Eastern District of Pennsylvania, but never filed claims in the District of Connecticut. Am. Compl., *Connecticut v. Sandoz, Inc.*, No. 2:20-cv-03539 (E.D. Pa. Sept. 9, 2021), ECF No. 62.[6]

All three of these cases (collectively, the "State Actions") have transformed the landscape of the MDL. The Amended *Heritage* Complaint was the first in the MDL to allege an industry-wide overarching conspiracy. As for the *Teva* and *Dermatology* Actions, they significantly expanded the number of drugs at issue, with the *Teva* Action implicating 114 drugs and the *Dermatology* Action implicating 80 drugs. This tactic expanded the scope of allegations and

---

[2] Alaska, Puerto Rico, Rhode Island, and Wyoming. For simplicity, "States" includes Plaintiff States and Territories.

[3] Ascend Laboratories, LLC, Emcure Pharmaceuticals, Ltd., Rajiv Malik, Satish Mehta, Actavis Holdco U.S., Inc., Actavis Pharma, Inc., Apotex Corp., Dr. Reddy's Laboratories, Inc., Glenmark Pharmaceuticals, Inc., Lannett Company, Inc., Par Pharmaceutical Companies, Inc., Sandoz, Inc., Sun Pharmaceutical Industries, Inc., and Zydus Pharmaceuticals (USA) Inc.

[4] American Samoa, Arkansas, the District of Columbia, Georgia, Guam, New Hampshire, the Northern Mariana Islands, South Dakota, and Wyoming.

[5] Robin Hatosy and Amneal Pharmaceuticals LLC.

[6] Alabama, American Samoa, Arkansas, Guam, and Hawaii have since voluntarily dismissed their claims from all relevant actions.

prompted the filing of over 36 copycat complaints and complaint amendments alleging an "overarching conspiracy," most of which cite to one or more of the complaints in the State Actions. *See* App'x VI. Not only are the States' Actions complex, but they have also had an outsized impact on the MDL and increased the litigation's size, scope, and intricacy.

**2.   The District Court Expends Significant Resources as the States Take the Lead.**

The District Court has diligently managed this MDL since its inception. For example, to create a workable structure and impose order on the discovery process for the hundreds of drugs at issue, the District Court created a tiered discovery schedule based on when a drug was added to the MDL, ensuring that early plaintiffs were not prejudiced by late filers. ECF No. 1135. And in 2018, after the MDL expanded, the District Court appointed three Special Masters to streamline discovery and non-dispositive disputes and assist in managing legal issues affecting the efficient progression of the MDL. ECF No. 667. The District Court has also ruled on at least 40 motions to dismiss (*see, e.g.*, ECF Nos. 722, 858, 2084), dozens of discovery disputes (*see, e.g.,* ECF No. 2215), and the contentious bellwether selection and scheduling process (*see, e.g.,* ECF Nos. 1442, 1687, 1769, 1901). And the District Court has dedicated significant resources to understanding the highly complex pharmaceutical industry, including holding a "tutorial" where the parties had an opportunity to educate the Court and the Special Masters on these issues. *See* ECF No. 2237.

The State Actions have been at the center of the MDL. The District Court selected bellwethers to cover two tracks—an overarching conspiracy and single-drug conspiracies. ECF No. 1442 at 5. The District Court originally selected the States' *Teva* Action as the bellwether complaint for the overarching conspiracy allegations, but, upon reconsideration—and urging by the States—selected the *Dermatology* Action instead. ECF No. 1702. The *Dermatology* Action

has been at the forefront of the MDL ever since.[7]

The States have also been at the center of discovery in the MDL. For example, initial document discovery involved hundreds of thousands of documents previously produced to the States during their investigations. *See, e.g.*, ECF No. 841. Discovery to date has focused on the bellwether cases, including the *Dermatology* Action. The States and their agencies have taken the lead or participated in at least 80 depositions. While the deadline for bellwether fact discovery passed on October 2, 2023, there are still 38 State depositions outstanding, expert discovery is ongoing, and so is non-bellwether discovery, including for the *Heritage* and *Teva* Actions.

### 3. Congress Passes the Venue Act, But the States Continue to Move the MDL Forward.

On December 29, 2022, President Biden signed into law a Consolidated Appropriations Bill that includes the Venue Act. It amends 28 U.S.C. § 1407(g) to add the words "or a State" as follows: "Nothing in this section shall apply to any action in which the United States *or a State* is a complainant arising under the antitrust laws." 28 U.S.C. §1407(g); *see also* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. gg, Title III, § 301, 136 Stat. 4459, 5970.[8] While prior versions of the bill included a retroactive effective date, the Act as passed did not. *Compare* S. 1787, 117th Cong. (as introduced, May 24, 2021), *and* H.R. 3460, 117th Cong. (as introduced May 21, 2021), *with* 168 Cong. Rec. S2935-36 (daily ed. June 14, 2022) (whose purpose was "to strike the retroactive effective date," per the Congressional record), *and* 168 Cong. Rec. H8252-53 (daily ed. Sept 29, 2022).

In the 11 months since the Venue Act became law, the MDL parties—including the States—have continued to expend considerable resources litigating the States' cases, particularly

---

[7] Although dozens of motions to dismiss are pending, the District Court prioritized bellwether motions, ruling on 12 of 13 motions to dismiss in the *Dermatology* Action. *E.g.*, No. 2:20-cv-03539-CMR, ECF Nos. 113-125, 248. The District Court has not yet ruled on the multiple motions to dismiss in the *Heritage* and *Teva* Actions. *See* App'x V.A.

[8] All emphases are added.

the bellwether *Dermatology* Action.  The States have actively participated in both affirmative and defensive discovery during this period.  For example, the States and their relevant agencies have sat for 69 depositions since the Venue Act was passed, and at least 38 state depositions are scheduled for the near future, have been requested but not yet scheduled, or are pending resolution of other disputes.  *See* App'x II.  The States have led some of the most significant depositions during this period, including those of cooperating witnesses, *see* App'x III, and have litigated dozens of discovery disputes, *see* App'x I.  The States have also engaged in dozens of meet-and-confers with Defendants regarding a number of topics, and have continued to make document productions.  *See*, *e.g.*, App'x IV.  Only on November 1, 2023, after all of this activity, did the States move for remand to the District of Connecticut.  Even after that, the States have continued to actively litigate their claims in the MDL.  *See, e.g.*, App'x VII.

## ARGUMENT

The Panel should deny the States' motion to remand for three independent reasons: (1) the States have waived their venue rights by their continuing and significant participation in this MDL well after the Venue Act's enactment; (2) the Venue Act is not retroactive and thus does not apply to the State Actions; and (3) interpreting the Venue Act to apply to pending cases would yield the absurd result of eliminating the Panel's authority to remand the already-transferred State Actions.

## I.    THE STATES HAVE WAIVED ANY RIGHT TO SEEK REMAND.

### A.  The States Did Not Timely Raise a Venue Objection and Continued to Litigate.

In *Google*, the Panel held that "the recent amendment to Section 1407(g) applies to pending state antitrust enforcement actions and, *absent a state's waiver of its venue rights*, the Panel must grant the motion for remand."  2023 WL 3828612, at *2.  An objection to venue must be raised timely and sufficiently.  Section 1406(b) provides that "[n]othing in this chapter," which includes

§ 1407, "shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue." 28 U.S.C. § 1406(b).

As the Supreme Court has explained, "[v]enue, largely a matter of litigational convenience, is waived if not timely raised." *Wachovia Bank, N.A. v. Schmidt,* 546 U.S. 303, 316 (2006).  Venue "may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct." *Freeman v. Bee Mach. Co.*, 319 U.S. 448, 453 (1943).  A litigant waives a venue objection when it "performs some act which indicates to the court that he elects not to raise his privilege of venue." *Davis v. Smith*, 253 F.2d 286, 288 (3d Cir. 1958).

Setting aside the States that never brought their claims in the District of Connecticut and thus do not even have rights under the Venue Act in the first place, *see infra* at 11, the remaining States have waived any venue argument.  First, the States have demonstrated their satisfaction with the Eastern District of Pennsylvania.  While the States objected to the Panel's transfer of the *Heritage* Action to the MDL, they did not object to the transfer of the *Teva* or *Dermatology* Actions.  *See supra* at 2-3.  The States also previously offered to waive their rights under *Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 40 (1998), and remain in the Eastern District of Pennsylvania through trial, even suggesting they would seek a transfer back to that court if the case were remanded.  *See* Transcript (July 9, 2020), ECF No. 1465 at 26:15–27:8.

Second, by waiting ten months after passage of the Venue Act before moving to remand, the States failed to "timely" and "seasonably" object to the venue; furthermore, by actively litigating their Actions during this period, they engaged in "submission through conduct" to venue in the Eastern District of Pennsylvania.  *Freeman*, 319 U.S. at 453; *see also*, *e.g., Davis*, 253 F.2d at 288-89 (designating a process agent constituted a "voluntary act [that] subjected the [party] to suit because it unequivocally demonstrated waiver of the venue privilege"); *First Bank Bus. Cap.,*

*Inc. v. Agriprocessors, Inc.*, 602 F. Supp. 2d 1076, 1093 (N.D. Iowa 2009) (venue waived by waiting six weeks to challenge and participating in receivership proceedings and stipulating to an order). Even when controlling law on venue changes, an objection to venue may still be waived by delay. *See, e.g.*, *Intellectual Ventures II LLC v. FedEx Corp.*, 2017 WL 5630023, at *3 (E.D. Tex. Nov. 22, 2017) (denying motion where defendant waited more than two months after the Supreme Court rendered its decision in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258 (2017) regarding venue to seek dismissal and had "continued actively litigating this case").[9] Among other things, the States' prominent participation in discovery, *see supra* at 4-6, is flatly inconsistent with their current challenge to venue. *See Spearman v. Sterling S.S. Co.*, 171 F. Supp. 287, 289 (E.D. Pa. 1959) (waiver where defendant had taken plaintiff's deposition and waited more than a year to challenge venue); *Fairhope Fabrics, Inc. v. Mohawk Carpet Mills*, *Inc.*, 140 F. Supp. 313, 316 (D. Mass. 1956) (venue waiver where defendant "availed itself of the power of discovery … by taking depositions, and maintaining the entire conduct of the proceedings"); *Fort Wayne Corrugated Paper Co. v. Anchor Hocking Glass Corp.*, 31 F. Supp. 403, 406 (W.D. Pa. 1940) (venue waiver where motion was made five months after the complaint was filed, after motion to quash service was made, and depositions had been conducted).

That the States have waived their venue argument is reinforced by the significant resources the District Court has devoted to administering the State Actions within the MDL and the substantial prejudice that Defendants would incur in litigating the State Actions elsewhere. Given

---

[9] *See also Red Carpet Studios v. Midwest Trading Grp., Inc.*, 2018 WL 4300544, at *2 (S.D. Ohio Sept. 10, 2018) (venue objection forfeited where defendants waited for six months after *TC Heartland*); *Akeso Health Scis., LLC v. Designs for Health, Inc.*, 2018 WL 2558420, at *3 (C.D. Cal. Jan. 25, 2018) (similar); *Kaist IP US LLC v. Samsung Elecs. Co.*, 2017 WL 7058227, at *2 (E.D. Tex. Dec. 18, 2017) ("Here, even after *TC Heartland*, Defendants waited four and five months to raise their venue challenges with the Court, at a time when the Court and the parties were investing great effort in the proceedings. Granting such untimely motions at this stage of the proceeding would disrupt the efficiency of the judicial process, both here and in the proposed transferee district.").

the scope, complexity, and shape that the MDL has taken—driven in large part by the State Actions—it "would undermine judicial efficiency to allow [the States] to challenge venue now." *First Bank*, 602 F. Supp. 2d at 1093–94. Furthermore, "[c]ourts have found prejudice to be a relevant consideration in determining whether waiver by implication has occurred." *Mantissa Corp. v. Ondot Sys., Inc.*, 267 F. Supp. 3d 918, 923 (S.D. Tex. 2017) (citations omitted). Here, remanding would substantially prejudice Defendants by exposing them to duplicative discovery and the expense of litigating in multiple fora. Non-bellwether fact discovery, including in the States' *Heritage* and *Teva* Actions, is ongoing. For many non-bellwether defendants, depositions have only just begun, or not started at all. And even bellwether fact discovery, which formally closed in October 2023, is continuing as to certain States and third parties. Between ongoing discovery and many pending motions, there is a real risk of "duplicative discovery, inconsistent pretrial rulings, and conflicting discovery obligations"—exactly what the Panel sought to avoid when it transferred the State Actions to the Eastern District of Pennsylvania. ECF No. 417. This provides further confirmation that the State Actions should remain there.[10]

At bottom, the States have "waived any challenge to venue … through their conduct actively litigating this case" since December 29, 2022. *Koninklijke Philips N.V. v. ASUSTeK Comput. Inc.*, 2017 WL 3055517, at *3 (D. Del. July 19, 2017). Through their words and actions, the States have indicated that they were "content with the venue" of the MDL and are therefore estopped from challenging venue. *Viscofan USA, Inc. v. Flint Grp.*, 2009 WL 1285529, at *4 (C.D. Ill. May 7, 2009); *see also Alaska Airlines v. United States*, 399 F. Supp. 906, 910 (N.D.

---

[10] Given these risks, and as the Venue Act "does not impede antitrust defendants from seeking to transfer a case to a more convenient forum under the federal change-of-venue statute," H.R. Rep. No. 117-494, at 3 (2022), Defendants would have strong arguments for the State Actions to be transferred *back* to the Eastern District of Pennsylvania after remand "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Remanding the State Actions only for them to be transferred back to the Eastern District of Pennsylvania would be inefficient, waste judicial resources, and cause unnecessary delays.

Cal. 1975) (venue waived where party "entered into stipulations and made many appearances, in none of which [it made] any objection to venue")*.* Given the States' conduct over the last several years, and particularly in the 11 months following passage of the Venue Act, their motion must be denied on this ground alone.

### B.  This MDL Is Not Comparable to *Google*.

While the States filed a motion to remand in *Google* fewer than two months after passage of the Venue Act, here the States waited over ten months and continued to fully participate in this MDL, making it a clear-cut case of waiver.  Given the advanced stage of this MDL, the procedural complications that would result from remanding are far greater here than in *Google*.  Whereas the States' case in *Google* had been transferred to the MDL only two years before the motion to remand, the States here have been proceeding before the District Court for more than *six years*.  And while there were no pending motions to dismiss in *Google*, *see* MDL 3010, ECF No. 71-1 at 2, here, there are over 20 motions to dismiss pending in the State Actions (and 40 already decided).  *See* App'x V.A.  Further, unlike *Google*, this MDL has an established bellwether process, with one bellwether, the *Dermatology* Action, selected at the States' urging.  *See supra* at 4-5.

Additionally, while discovery in *Google* was "in its infancy" and depositions had not started when the motion to remand was filed, MDL 3010, ECF No. 71-1 at 2, discovery is far more advanced here.  Bellwether fact discovery is nearly at its end, non-bellwether discovery is ongoing, and hundreds of depositions have taken place, with hundreds more likely to be scheduled.  Multiple discovery disputes are still pending.  *See* App'x V.B.  Expert discovery for the bellwether cases is ongoing.  *See* App'x VII.  These pending motions and ongoing discovery will create a morass of procedural uncertainty and potentially inconsistent rulings if the State Actions are remanded, a problem this Panel did not face in *Google*.

The procedural difficulties are also more complex in this case because certain of the States' claims were brought, and certain Defendants were sued, only in the Eastern District of Pennsylvania and not in the District of Connecticut. *See supra* at 2-3. Yet, under 28 U.S.C. § 1407(a), the JPML may transfer "pending" civil actions to another district "for coordinated or consolidated pretrial proceedings," so long as "[e]ach action … shall be remanded by the [JPML] at or before the conclusion of such pretrial proceedings *to the district from which it was transferred*." 28 U.S.C. § 1407(a). Because several States' claims were not "pending" in any court when the States added their claims to their amended complaints, and because several Defendants have never been added to the actions in the District of Connecticut, there is no district from which certain States' claims or Defendants were transferred, and thus no court to which they can be remanded. *See*, *e.g.*, *In re Air Crash Disaster in Ionian Sea on September 8, 1974*, 438 F. Supp. 932, 933 (J.P.M.L. 1977) (explaining that "the Panel can only remand those claims to the … transferor court"); *In re Delta Airlines, Inc., Flight Attendant Weight Standards Litig.*, 411 F. Supp. 795, 797 (J.P.M.L. 1976) (noting that "the Panel's power of remand is restricted to remanding actions … to transferor districts from which an action was transferred under Section 1407"). This complexity was not present in *Google*, where the plaintiffs and defendant were identical in the transferor and transferee courts. *See* Civil Action No. 1:21-md-03010 (S.D.N.Y.), ECF No. 541; Civil Action No. 4:20-cv-957 (E.D. Tex.), ECF Nos. 138, 139. The significant procedural difficulties here are a direct result of the States' own conduct, confirming that they have waived their opportunity to seek remand.

## II.   THE VENUE ACT DOES NOT APPLY RETROACTIVELY.

Even if the States preserved their venue challenge, the States' motion fails because the Venue Act does not apply to the State Actions, which were transferred before the Venue Act's passage. Although the Panel held in *Google* that the Venue Act has retroactive effect under

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994), that reasoning does not comport with the Third Circuit's interpretation of *Landgraf*, which will apply to appellate review of a remand grant here. *See* 28 U.S.C. § 1407(e); *In re Wilson*, 451 F.3d 161, 168-71 (3d Cir. 2006) (citing Third Circuit law). Applying *Landgraf* as construed by the Third Circuit demonstrates that the States cannot employ the Venue Act to seek remand of their claims.

As the Panel correctly recognized in *Google*, "*Landgraf* explained that there is a long-established 'presumption against retroactive legislation' based on fairness considerations and the 'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place.'" *Google*, 2023 WL 3828612, at *2. That presumption dates back more than a century to a case in which the Supreme Court held that a statute should not be construed to apply retrospectively "unless the words used are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied." *U.S. Fid. & Guar. Co. v. United States*, 209 U.S. 306, 314 (1908). The Supreme Court has continued to reaffirm that longstanding principle in cases after *Landgraf*, *see, e.g.*, *Lindh v. Murphy*, 521 U.S. 320, 325 (1997) (explaining that *Landgraf* "reaffirmed" the "presumption against retroactivity" and explained that retroactive application must "be supported by a clear statement"), as has the Third Circuit, *see Mathews v. Kidder, Peabody & Co.*, 161 F.3d 156, 170 (3d Cir. 1998) ("[I]f Congress seeks to … reach[] back in time to upset settled expectations, it must do so unequivocally and in a way that assures … that it has seriously considered the consequences of such action.").

The Supreme Court in *Landgraf* established a two-part test for determining whether a new federal statute has retroactive effect: "whether Congress has expressly prescribed the statute's proper reach," and if not, whether the new statute would have retroactive effect. *Landgraf*, 511

U.S. at 280.  The Third Circuit has held that post-*Landgraf* precedent "reforms the two-part analysis" by adding "an additional threshold question before we move to the question of whether the statute has a retroactive effect."  *Mathews*, 161 F.3d at 160 (*citing Lindh*, 521 U.S. at 326).  The Third Circuit's approach is as follows:

> First, we ask the same threshold question: did Congress expressly prescribe the statute's temporal reach?  Of course, if the answer to this question is 'yes,' then we follow Congress's express prescription and apply the statute accordingly.  However, if the answer is 'no,' then we ask another threshold question before moving to the 'retroactive effect' inquiry—do the normal rules of statutory construction apply in such a way as to remove the possibility of retroactivity?

*Id.*  The Third Circuit added that a "negative inference" or "legislative history" may sufficiently "express[] an intent" to apply a statute prospectively only.  *Id.* at 163.  Thus, in the Third Circuit, "a court may determine congressional intent from the statutory text, by necessary implication from the statute taken as a whole, *or from the statute's legislative history*."  *Scheidemann* 83 F.3d at 1521; *see also Lindh*, 521 U.S. at 324 (rejecting the suggestion that "whenever a new statute on its face could apply to the litigation of events that occurred before it was enacted, there are only two alternative sources of rules to determine its ultimate temporal reach: either an 'express command' from Congress or application of our *Landgraf* default rule").

Because the *Google* MDL arose in the Second Circuit, the Panel did not apply Third Circuit precedent requiring consideration of all tools of statutory construction in evaluating congressional intent.  Instead, the *Google* Panel asked only whether "the statute contain[s] an express command as to its retroactive application."  2023 WL 3828612, at *2.  Here, an analysis consistent with Supreme Court and Third Circuit law, using all canons of statutory construction, reveals that the Venue Act does not apply retroactively and thus cannot be used to remand the State Actions.

To start, the plain language of the Venue Act says nothing about retroactive application.  Instead, it states, in relevant part, "[n]othing in this section shall apply to any action in which the

United States or a State is a complainant arising under the antitrust laws."  28 U.S.C. § 1407(g).

That does not end the analysis, however.   The Panel must exhaust the "normal rules of

construction," *Lindh*, 521 U.S. at 326, including, as the Third Circuit has instructed, the Venue

Act's "legislative history," *Scheidemann*, 83 F.3d at 1521.  The language that Congress deleted

from the draft Venue Act before passage is thus highly relevant.   "Few principles of statutory

construction are more compelling than the proposition that Congress does not intend *sub silentio*

to enact statutory language that it has earlier discarded in favor of other language."   *I.N.S. v.*

*Cardoza-Fonseca*, 480 U.S. 421, 442-3 (1987); *see also Doe v. Chao*, 540 U.S. 614, 622-623

(2004) (rejecting interpretation of Privacy Act that would allow presumed damages when

"Congress cut out the very language in the bill that would have authorized" such damages).

Congress repeatedly considered—and deleted—language stating that the Venue Act

applies to cases pending on the date of the Act's enactment.  As initially introduced in both the

House and the Senate, the Venue Act included a provision that would have made the law

retroactive.  The proposed bill included a section stating, "[t]his Act and the amendments made by

this Act, *shall take effect on June 1, 2021*," a date that was a year prior to the bill's introduction.

S. 1787, 117th Cong. (as introduced, May 24, 2021); H.R. 3460, 117th Cong. (as introduced

May 21, 2021).  But in both chambers, after it was reported out of committee, the bill was revised

to strike that section and remove the retroactive effective date.  168 Cong. Rec. S2935-36 (daily

ed. June 14, 2022); 168 Cong. Rec. H8253 (daily ed. Sept 29, 2022).  The bill's originally proposed

language was thus changed to read, as follows:

> SECTION 1. Short Title.
>      This Act may be cited as the "State Antitrust Enforcement Venue Act of
>      2021".
> SEC. 2. AMENDMENTS.
>      Section 1407 of title 28 of the United States Code is amended—
>      (1) in subsection (g) by inserting "or a State" after "United States", and

14

      (2) by striking subsection (h).
~~SEC. 3. EFFECTIVE DATE~~
      ~~This Act and the amendments made by this Act, shall take effect on June 1,~~
~~2021.~~

*Comparing* S. 1787, 117th Cong. (as introduced, May 24, 2021), *with* S. 1787, 117th Cong. (as

passed the Senate, June 14, 2022).   The Congressional Record leaves little doubt about the

"[p]urpose" of this amendment, describing it as: "[t]o strike the retroactive effective date."   168

Cong. Rec. S2935-36 (daily ed. June 14, 2022).   The revised version of the bill—without the

retroactive effective date—was passed by both Houses.   *Id.*

      The Venue Act was then incorporated into the Consolidated Appropriations Act.   The

version that appeared in that Act included a provision that said, "[t]he amendments made by

subsection (a) shall apply to any matter pending on, or filed on or after, the date of enactment of

this Act," 168 Cong. Rec. S7752 (daily ed. Dec. 19, 2022), which again would have provided that

the Act was retroactive.   That language had not appeared in any other version of the bill.   Congress

caught the error and amended the Act to remove the language that would have made it retroactively

applicable.   Specifically, the amendment struck the language as reflected below:

    SEC. 301. VENUE FOR STATE ANTITRUST ENFORCEMENT.
      Section 1407 of title 28, United State Code, is amended—
        (a)    (1) in subsection (g) by inserting "or a State" after "United
             States" … .
             (2) by striking subsection (h).
      ~~(b) APPLICABILITY.   The amendments made by subsection (a)~~
      ~~shall apply to any matter pending on, or filed on or after, the date~~
      ~~of enactment of this Act.~~

*Comparing* 168 Cong. Rec. S7752 (daily ed. Dec. 19, 2022), *with* 168 Cong. Rec. S10007 (daily

ed. Dec. 21, 2022).   Both the Senate and the House subsequently passed the Consolidated

Appropriations Act of 2023, as amended—*i.e.*, without the Venue Act having any language stating

that it applied retroactively.  168 Cong. Rec. S10077 (daily ed. Dec. 22, 2022); 168 Cong. Rec. H10475, H10528 (daily ed. Dec. 23, 2022).

In *Google*, the Panel found this drafting history minimally useful because the "Supreme Court in *Landgraf* cautioned against relying on the deletion of a retroactivity provision."  2023 WL 3828612, at *3.  But the Supreme Court has repeatedly considered deleted retroactivity provisions as indicia of congressional intent.  It did so in *Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 308-309 (1994), *Landgraf's* companion case, and then again in *Hamdan v. Rumsfeld*, 548 U.S. 557, 579-80 (2006), where the Court explained that "Congress' rejection of the very language that would have achieved the result the Government urges here weighs heavily against the Government's interpretation."  Given these cases, the Panel's conclusion that drafting history is not a legitimate tool for evaluating congressional intent is untenable, and inconsistent with governing Third Circuit law.  *See Scheidemann*, 83 F.3d at 1521.

Contrary to the Panel's conclusion in Google, *Landgraf* did not hold that courts are barred from considering Congress's rejection of retroactivity provisions as evidence of congressional intent.  Instead, *Landgraf* held that the rejected provisions in that case were weak evidence of congressional intent because multiple equally plausible inferences could be drawn.  The prior version of the statute at issue contained a "special provision for reopening final judgments" as well as "provisions covering pending cases."  *Landgraf*, 511 U.S. at 256 n.9.  The President vetoed the bill, and it was unclear whether his disapproval referred only to the provision for reopening final judgments or also to the provisions covering pending cases.  *Id*.  The Court explained that Congress may have settled "on a less expansive form of retroactivity that, unlike the [prior] bill, did not reach cases already finally decided."  *Id*. at 256.  There is no comparable ambiguity here.

A proper construction of the Venue Act per *Landgraf* and Third Circuit precedent shows

that "the normal rules of statutory construction apply in such a way as to remove the possibility of retroactivity." *Mathews*, 161 F.3d at 160.  Had Congress wanted the Venue Act to apply retroactively, it would have left in one of the provisions that did so.  It would not have *three times* deleted a provision explicitly establishing retroactivity.  There is no clear evidence of congressional intent for the statute to apply retroactively, and the States have not offered a plausible explanation for why Congress would have thrice deleted retroactivity provisions had Congress somehow intended the Venue Act to apply retroactively.

Nonetheless, even if the Panel proceeds to the second step of *Landgraf*, retroactivity does not follow.  While the Panel in *Google* concluded that the Venue Act is "plainly a procedural rule" and thus it applies to "pre-enactment pending cases," 2023 WL 3828612, at *2-3, "the mere fact that a new rule is procedural does not mean that it applies to every pending case."  *Landgraf*, 511 U.S. at 275 n.29; *accord Martin v. Hadix*, 527 U.S. 343, 359 (1999).  As the Third Circuit has observed, "concerns about retroactivity are nonetheless applicable to procedural rules."  *Steven I. v. Central Bucks School Dist.*, 618 F.3d 411, 414 n.7 (3d Cir. 2010).

*Landgraf* itself made clear that a procedural change should not require the unraveling of what has already happened.  *See id.* at 275 n.29 ("A new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime, and the promulgation of a new rule of evidence would not require an appellate remand for a new trial."); *accord id.*, 511 U.S. at 291 (Scalia, J., concurring in the judgment).  Just as a rule governing the "filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime," *id.*, at 275 n.29, the Venue Act does not govern the States' claims here because they have already been transferred to the MDL.

The Third Circuit has elaborated on the circumstances in which a procedural statute will

17

raise retroactivity concerns.  "[P]rocedural rules are subject to the presumption against retroactivity in a case in which the procedures affected have already transpired."  *Mathews*, 161 F.3d at 161 n.8.  In applying *Landgraf*, the Third Circuit has recognized that while "rules of procedure regulate secondary … conduct," such as "the filing of a suit," their retroactive application may still be unfair.  *See Steven I.*, 618 F.3d at 414 n.7.  Instead, the proper question is whether "the secondary conduct governed by the statute" occurred before the statute's effective date.  *Id.*

This is a quintessential case where "the procedures affected have already transpired," *Mathews*, 161 F.3d at 161 n.8, and "the secondary conduct governed by" the Venue Act happened long before the statute's enactment, *Steven I*, 618 F.3d at 414 n.7.  The relevant conduct the Venue Act regulates is the centralization of claims brought by States in an MDL.  Unlike *Google*, here, centralization happened *more than six years before* the Venue Act became law.  Unwinding centralization would be a retroactive application of the statute barred by the presumption against retroactivity, which is true in the Third Circuit even if the Venue Act is labeled "procedural."

*Ex Parte Collett*, 337 U.S. 55 (1949), and *United States v. Nat'l City Lines, Inc.*, 337 U.S. 78 (1949), two decisions that long pre-date *Landgraf*, are distinguishable.  *See Google*, 2023 WL 3828612, at *2-3.  In both cases, the Supreme Court held that the newly enacted § 1404, which permits *forum non conveniens* transfers, could be applied to pending cases without raising retroactivity concerns.  But the reasoning of these cases does not extend here.  The application of the new statute in those cases did not undo any prior judicial act; instead, it changed the judicial forum that would preside over the cases *prospectively*.  By contrast, applying the Venue Act here requires unwinding MDL transfers that *have already happened*—and that have resulted in hundreds of acts and decisions by the parties and the Eastern District of Pennsylvania.

Third Circuit precedent strongly supports this distinction.  Like *Collett* and *National City*

18

*Lines*, the Third Circuit in *Schoen v. Mountain Producers Corp.*, 170 F.2d 707, 714 (3d Cir. 1948), considered whether to apply the newly enacted § 1404 to a pending case.  It concluded that Congress "made its intention clear that the procedural provisions" at issue "were to apply to all actions pending on September 1st as well as to all those commenced thereafter."  *Id*.  The Third Circuit then observed: "Of course, as to pending actions these new procedural provisions are applicable only to the extent that they relate to procedural steps which had not been taken in those actions prior to September 1st."  *Id*.  The Third Circuit applied the new statute only because "relief upon the ground of *forum non conveniens* has not as yet been either granted or denied by the district court."  *Id*.  In sharp contrast, the relevant procedural step—transfer of all three actions to the MDL—has already occurred here.  Under the Third Circuit's reasoning in *Schoen*, the Venue Act cannot be applied to undo an MDL centralization that occurred years ago.

## III.   THE STATES' INTERPRETATION OF THE VENUE ACT LEADS TO ABSURD RESULTS.

If the Panel adheres to its determination in *Google* that the Venue Act applies even where the Panel's transfers preceded the Venue Act's passage, then the most natural reading of the Venue Act would deprive the Panel of authority to remand the States' claims to their transferor court.  As amended by the Venue Act, 28 U.S.C. §1407(g) provides: "*Nothing in this section* shall apply to any action in which … a State is a complainant arising under the antitrust laws."  28 U.S.C. §1407(g).  Under the most natural reading of that statutory language, "[n]othing" in §1407 "shall apply" to the State Actions.  That includes all of the powers that §1407(a) grants to the Panel, including the power to "remand[]" transferred actions to the transferor court.

In its *Google* order, the Panel acknowledged that "Section 1407(g), as amended, potentially could be construed as eliminating" its remand authority.  2023 WL 3828612 at *3.  The Panel rejected that proposition because the Venue Act "is intended to allow state antitrust actions to

proceed in the action's original forum," so interpreting §1407(g) "to eliminate the possibility of remand to that forum yields an absurd result that is the exact opposite of the statute's purpose." *Id*. The Panel also believed that it had "inherent power" to remand "actions transferred to an MDL that no longer belong there." *Id.*

The Venue Act's purpose alone cannot override the clear statutory text providing that "[n]othing" in §1407 "shall apply," including the Panel's remand authority. *See Parker v. NutriSystem, Inc.*, 620 F.3d 274, 277 (3d Cir. 2010) ("Where the statutory language is unambiguous, the court should not consider statutory purpose[.]"). The States cannot have it both ways, claiming that the Venue Act eliminates the ability of this Panel to have transferred their actions under §1407(a), but that it does not eliminate the ability of this Panel to remand those transferred actions. Nor can the Panel resort to an "inherent authority" to remand, for "the exercise of an inherent power cannot be contrary to any express grant of or limitation on the … power contained in a rule or statute," as §1407(g) contains. *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016).

The proper means of avoiding an absurd result is to interpret the Venue Act *not* to apply to pending cases,[11] as "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Vooys v. Bentley*, 901 F.3d 172, 192 (3d Cir. 2018). Avoiding the absurd result recognized by the *Google* Panel is another compelling reason to conclude that the Venue Act does not apply to pending cases.

## CONCLUSION

For the above reasons, Defendants respectfully request that the Panel deny the States' motion to remand.

---

[11] This scenario only arises in MDLs with antitrust actions brought by States pending when the Venue Act was passed, which describes all of two MDLs: *Google* and this one. All other antitrust actions brought by States *will* proceed in their original forum—precisely because *all* of §1407 will not apply, including the Panel's transfer and remand powers.

Dated: November 29, 2023

/s/ Devora W. Allon
Devora W. Allon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
devora.allon@kirkland.com

*Counsel for Upsher-Smith Laboratories, LLC*

/s/ Sheron Korpus
Sheron Korpus
Seth A. Moskowitz
Seth B. Davis
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Fax: (212) 506-1800
skorpus@kasowitz.com
smoskowitz@kasowitz.com
sdavis@kasowitz.com

*Counsel for Actavis Elizabeth, LLC, Actavis Holdco U.S., Inc., and Actavis Pharma, Inc.*

/s/ Robin P. Sumner
Robin P. Sumner
Melissa Hatch O'Donnell
Michael J. Hartman
TROUTMAN PEPPER HAMILTON
SANDERS LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
Telephone: (215) 981-4000
robin.sumner@troutman.com
melissa.odonnell@troutman.com
michael.hartman@troutman.com

*Counsel for Amneal Pharmaceuticals, Inc. and Amneal Pharmaceuticals, LLC*

/s/ James W. Matthews
James W. Matthews
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, Massachusetts 02199
Tel:  (617) 342-4000
Fax:  (617) 342-4001
jmatthews@foley.com

*Counsel for Apotex Corp.*

/s/ G. Robert Gage, Jr.
G. Robert Gage, Jr., Esq.
Gage Spencer & Fleming LLP
410 Park Avenue, Suite 810
New York, New York 10022
Tel: 212-768-4900
Fax: 212-768-3629
grgage@gagespencer.com

*Counsel for Ara Aprahamian*

/s/ Nathan E. Denning
Nathan E. Denning
Chloe S. Booth
WIGGIN AND DANA LLP
437 Madison Avenue, 35th Floor
New York, NY 10022
Tel: (212) 551-2600
Fax (212) 551-2888
ndenning@wiggin.com

Benjamin H. Diessel
Emmett F. Gilles
Christopher Bailes
Ariela C. Anhalt
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
New Haven, CT 06510
Tel: (203) 498-4400
Fax: (203) 782-2889
bdiessel@wiggin.com
egilles@wiggin.com
cbooth@wiggin.com
cbailes@wiggin.com
aanhalt@wiggin.com

*Counsel for Aurobindo Pharma U.S.A., Inc.*

/s/ Robin D. Adelstein
Robin D. Adelstein
Mark A. Robertson
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019-6022
Telephone: (212) 318-3000
Facsimile: (212) 408-5100
robin.adelstein@nortonrosefulbright.com
mark.robertson@nortonrosefulbright.com

Counsel for Bausch Health Americas, Inc.
and Bausch Health US, LLC

/s/ Guy Petrillo
Guy Petrillo
Christina Karam
PETRILLO KLEIN & BOXER LLP
655 Third Ave.
22nd Floor
New York, NY 10017
212-370-0330

Counsel for Douglas Boothe

/s/ Larry H. Krantz
Larry H. Krantz
Jerrold L. Steigman
KRANTZ & BERMAN LLP
747 Third Avenue, 32nd Floor
New York, New York 10017
lkrantz@krantzberman.com
jsteigman@krantzberman.com

Counsel for James Brown

/s/ Michelle N. Lipkowitz
Michelle N. Lipkowitz
Mintz, Levin, Cohn, Ferris, Glovsky and
Popeo, P.C.
555 12th Street NW, Suite 1100
Washington, DC 20004
+1.202.434.7448
MNLipkowitz@mintz.com

Counsel for Mitchell S. Blashinsky

/s/ Donald Hawthorne
Donald Hawthorne, Esq.
Email: dhawthorne@curtis.com
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178
Tel:  +1 212 696 6000
Fax:  +1 212 697 1559

Counsel for Breckenridge Pharmaceutical
Inc.

/s/ Thomas H. Suddath, Jr.
Thomas H. Suddath, Jr.
REED SMITH LLP
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone:  215-851-8100
Facsimile:  215-851-1420
tsuddath@reedsmith.com

Counsel for Maureen Cavanaugh

/s/ Steven E. Bizar
Steven E. Bizar
John P. McClam
Agnese Nadalini
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Tel : (215) 994-4000
steven.bizar@dechert.com
john.mcclam@dechert.com
agnese.nadalini@dechert.com

*Counsel for Citron Pharma, LLC*

/s/ James A. Backstrom
James A. Backstrom
JAMES A. BACKSTROM,
COUNSELLOR AT LAW
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
(215) 864-7797
jabber@backstromlaw.com

*Counsel for Marc Falkin*

/s/ Roger B. Kaplan
Roger B. Kaplan
Jason Kislin
Aaron Van Nostrand
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Telephone: (973) 360-7900
Facsimile: (973) 301-8410

Brian T. Feeney
1717 Arch Street, Suite 400
Philadelphia, PA 19103
Telephone: (215) 988-7812
Facsimile: (215) 717-5265
brian.feeney@gtlaw.com

*Counsel for Dr. Reddy's Laboratories, Inc.*

/s/ Dimitra Doufekias
Dimitra Doufekias
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
Tel.: (202) 887-1500
Fax: (202) 887-0763
ddoufekias@mofo.com

*Counsel for Glenmark Pharmaceuticals Inc., USA*

/s/ Robert E. Connolly
Robert E. Connolly
Law Office of Robert Connolly, LLC
1735 Market Street
Suite 125, #469
Philadelphia, Pa. 19103
Telephone: (215) 219-4418
bob@reconnollylaw.com

*Counsel for James Grauso*

/s/ Robert E. Welsh, Jr.
Robert E. Welsh, Jr.
WELSH & RECKER, P.C.
306 Walnut Street
Philadelphia, PA 19106
(215) 972-6430
rewelsh@welshrecker.com

*Counsel for Kevin Green*

/s/ George Gordon
George G. Gordon
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104-2808
Tel.: (215) 994-2000
Fax: (215) 994-2240
george.gordon@dechert.com

*Counsel for Lannett Company, Inc.*

*/s/ Colin Kass*
Colin R. Kass
Proskauer Rose LLP
1001 Pennsylvania Ave, NW
Suite 600 South
Washington, DC 20004
Telephone: (202) 416-6890
Facsimile: (202) 416-6899
ckass@proskauer.com

Bradley I. Ruskin
David A. Munkittrick
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
bruskin@proskauer.com
dmunkittrick@proskauer.com

Leiv Blad
Meg Slachetka
Competition Law Partners
1101 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 742-4300
meg@competitionlawpartners.com
leiv@competitionlawpartners.com

*Counsel for Lupin Pharmaceuticals, Inc.*

*/s/ Robert J. Cleary*
Robert J. Cleary
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York  10036
212.969.3000
rlceary@proskauer.com

*Counsel for Rajiv Malik*

*/s/ Brian J. Smith*
Michael Martinez
Lauren Norris Donahue
Brian J. Smith
K&L GATES LLP
70 W. Madison St., Suite 3300
Chicago, IL 60602
Tel. 312-372-1121
Fax 312-827-8000
michael.martinez@klgates.com
lauren.donahue@klgates.com
brian.j.smith@klgates.com

*Counsel for Mayne Pharma Inc.*

/s/ Chul Pak
Chul Pak
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas
40th Floor
New York, New York 10019
Phone: (212) 999-5800
Fax: (212) 999-5899
cpak@wsgr.com

Seth C. Silber
Jeffrey C. Bank
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1700 K Street, NW, 5th Floor
Washington, D.C. 20006
Phone: (202) 973-8800
Fax: (202) 973-973-8899
ssilber@wsgr.com
jbank@wsgr.com

Benjamin F. Holt
Adam K. Levin
Justin W. Bernick
HOGAN LOVELLS US LLP
555 Thirteenth Street
NW Washington, D.C. 20004
Telephone: (202) 637-5600
benjamin.holt@hoganlovells.com
adam.levin@hoganlovells.com
justin.bernick@hoganlovells.com

Jasmeet K. Ahuja
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
jasmeet.ahuja@hoganlovells.com

*Counsel for Mylan Inc. and Mylan
Pharmaceuticals Inc.*

/s/ Peter M. Ryan
Peter M. Ryan
COZEN O'CONNOR P.C.
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: (215) 665-2130
Facsimile: (215) 701-2157
pryan@cozen.com

*Counsel for James Nesta*

/s/ Adam S. Lurie
Adam S. Lurie
LINKLATERS LLP
601 Thirteenth Street NW
Suite 400S
Washington, DC 20005
Telephone: (202) 654-9200
Facsimile: (202) 654-9210
adam.lurie@linkaters.com

*Counsel for Michael Perfetto*

<u>/s/ J. Clayton Everett, Jr.</u>
J. Clayton Everett, Jr.
William S.D. Cravens
Molly R. Maidman
Y. Frank Ren
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  +1.202.739.3000
Facsimile:   +1.202.739.3001
clay.everett@morganlewis.com
william.cravens@morganlewis.com
molly.maidman@morganlewis.com
frank.ren@morganlewis.com

Harvey Bartle IV
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  +1.215.963.5000
Facsimile:   +1.215.963.5001
harvey.bartle@morganlewis.com

*Counsel for Perrigo New York, Inc.*

<u>/s/ Margaret A. Rogers</u>
Margaret A. Rogers
ARNOLD & PORTER KAYE SCHOLER
LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: +1 212.836.8000
Fax: +1 212.836.8689
Margaret.Rogers@arnoldporter.com

*Counsel for Sandoz Inc. and Fougera
Pharmaceuticals Inc.*

<u>/s/ Jeffrey Brown</u>
Jeffrey Brown
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036-6797
Telephone: (212) 698-3511
Facsimile: (212) 698-3599
jeffrey.brown@dechert.com

*Counsel for Dave Rekenthaler*

<u>/s/ Calli J. Padilla</u>
Stephen A. Miller
Calli J. Padilla
COZEN O'CONNOR P.C.
1650 Market Street
Suite 2800
Philadelphia, PA 19103
(215) 665-6938
(215) 253-6777 (fax)
samiller@cozen.com
cpadilla@cozen.com

*Counsel for Richard Rogerson*

*/s/ Alison Tanchyk*

J. Gordon Cooney, Jr.
John J. Pease III
Alison Tanchyk
William T. McEnroe
Zachary M. Johns
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
Fax: (215) 963-5001
jgcooney@morganlewis.com
john.pease@morganlewis.com
alison.tanchyk@morganlewis.com
william.mcenroe@morganlewis.com
zachary.johns@morganlewis.com

Amanda B. Robinson
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel: (202) 739-3000
Fax: (202) 739-3001
amanda.robinson@morganlewis.com

*Counsel for Teva Pharmaceuticals USA, Inc.*

*/s/ Charles S. Leeper*

Charles S. Leeper
Kenneth M. Vorrasi
Alison M. Agnew
FAEGRE DRINKER BIDDLE & REATH
LLP
1500 K Street, NW, Suite 1100
Washington, DC  20005
Telephone:  202-842-8800
Facsimile:  202-842-8465
charles.leeper@faegredrinker.com
kenneth.vorrasi@faegredrinker.com
alison.agnew@faegredrinker.com

*Counsel for John Wesolowski*

*/s/ Clifford Katz*

Clifford Katz
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel.: (212) 808-7800
Fax: (212) 808-7897
ckatz@kelleydrye.com

*Counsel for Wockhardt USA LLC*

*/s/ Jason R. Parish*

Jason R. Parish
BUCHANAN INGERSOLL & ROONEY PC
1700 K Street, NW, Suite 300
Washington, DC 20006
Tel:  (202) 452-7900
Fax:  (202) 452-7989
jason.parish@bipc.com

Bradley J. Kitlowski
BUCHANAN INGERSOLL & ROONEY PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Tel:  (412) 562-8800
Fax:  (412) 562-1041
bradley.kitlowski@bipc.com

*Counsel for Zydus Pharmaceuticals (USA)
Inc.*