BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724 <br> 16-MD-2724 |

*This document relates to*:

| | |
|---|---|
| *State of Connecticut et al. v. Aurobindo Pharma USA, Inc., et al.* | Civil Action No.: 2:17-cv-03768 (CMR) |
| *State of Connecticut et al. v. Teva Pharmaceuticals USA, Inc., et al.* | Civil Action No.: 2:19-cv-02407 (CMR) |
| *State of Connecticut, et al., v. Sandoz, Inc., et al.* | Civil Action No.: 2:20-cv-03539 (CMR) |

**STATES' REPLY IN SUPPORT OF REMAND**

Defendants provide no compelling reason for this Panel to reconsider its determination that the Antitrust Venue Act applies retroactively to state antitrust enforcement actions. *In re Google Digital Advert. Antitrust Litig.*, MDL No. 3010, 2023 WL 3828612, at *3 (J.P.M.L. June 5, 2023). Instead, Defendants try to divine a different meaning for the Venue Act from a "selective tour through the legislative history." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). This Panel should instead continue to root itself solidly in (1) the Venue Act's text, which indicates that it applies to any pending state antitrust enforcement actions, and (2) the long-standing default rule that jurisdiction-shifting statutes apply retroactively to pending cases. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994).

Recognizing the odds against them, Defendants also raise a variety of waiver and forfeiture arguments, none of which hold water. The States never waived their venue rights, and the States moved timely to remand once it became clear that the Panel's decision in *In re Google* would

1

withstand appellate review. The Panel should order remand of the state antitrust enforcement actions in this MDL.

**ARGUMENT**

**I.     The Venue Act Applies Retroactively to this MDL.**

Defendants provide no reason for this Panel to reconsider its recent decision that the Antitrust Venue Act "applies to pending state antitrust enforcement actions." *In re Google*, 2023 WL 3828612, at *2 (J.P.M.L. June 5, 2023). Defendants concede (at 11-12) both to the Panel's holding in *In re Google* and to the general two-part framework established in *Landgraf* that is the basis for the States' Motion to Remand.

Instead, Defendants claim (at 13-14) that the Panel's analysis should differ this time around because appellate review would occur in the Third Circuit. But Defendants are wrong that the analysis under *Matthews v. Kidder, Peabody & Co., Inc.*, 161 F.3d 156 (3d Cir. 1998) is meaningfully different from the Supreme Court's analysis under *Landgraf* or the Panel's analysis in *In re Google*.

The *Matthews* court did not hold that a court *must* consider legislative history as part of the retroactivity analysis under *Landgraf*. Instead, the *Matthews* court held that, in absence of a clear statement from Congress, courts "must use normal statutory construction rules" to determine if a statute applies retroactively—but only "[i]n the absence of a clear statement from Congress." *Matthews*, 161 F.3d at 161; *see also United States v. Gonzales*, 520 U.S. 1, 6 (1997) ("[G]iven the straightforward statutory command, there is no reason to resort to legislative history."); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'").

Congress made a clear statement in the Venue Act, which provides that "[n]othing in this section *shall apply* to any action in which the United States or a State *is* a complainant arising under the antitrust laws." *See* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. gg, Title III, § 301, 136 Stat. 4459, 5970 (2022) (emphasis added). Congress's use of the present tense means the Venue Act applies to "any action" a state attorney general brings to enforce the antitrust laws—including those actions pending when the Venue Act was enacted. Even under *Matthews*, using legislative history to overcome this clear statutory text would be inappropriate. *Argus Leader Media*, 139 S. Ct. at 2364 ("Even those of us who sometimes consult legislative history will never allow it to be used to muddy the meaning of clear statutory language.").

Moreover, the *Matthews* court itself was cognizant of the perils of attempting to divine meaning from legislative history, declining to do so not once, but *twice*. *Matthews*, 161 F.3d at 163, 170 (finding that "defendants' reliance on unstated intentions, absent language, and explicit directives in [unrelated] areas [of the legislation]" could not serve as the "clear evidence" the court sought "when discerning congressional intent"). Here, like in *Matthews*, the Defendants can offer nothing from "legislative history in which the issue of retroactivity [was] even discussed, let alone explicitly endorsed—no floor statements, no debate on the issues, nothing in congressional reports on the Reform Act, including the final Conference Committee Report." *Id.* If anything, *Matthews* supports the proposition that that legislative history cannot provide "clear evidence" to overcome either the Venue Act's plain meaning or the bedrock judicial default rule that procedural rule changes apply to pending cases. *See Landgraf*, 511 U.S. at 280; *In re Google*, at *2.

Defendants (at 14-17) would have the Panel usurp the plain language of the Venue Act's text based on divinations drawn from language deleted from earlier versions of the bills that ultimately became the Venue Act. But "the omission of [a] retroactivity provision…is not

3

dispositive because it does not tell [the Panel] precisely where the compromise was struck." *Landgraf*, 511 U.S. at 256; *see also In re Google*, at *3. While some courts have drawn negative inferences when Congress removes language from a *previously enacted* statute, courts are exceptionally wary of making "inferences of legislative intent from *unenacted legislation*," such as the deleted text upon which the Defendants rely. *Vill. of Barrington v. Surface Transp. Bd.*, 636 F.3d 650, 666 (D.C. Cir. 2011) (emphasis added); *see also, e.g., Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 381-82 n.11 (1969) ("[U]nsuccessful attempts at legislation are not the best of guides to legislative intent.").

Even assuming *arguendo* that there was some ambiguity in the text of the Venue Act as to whether it applied retroactively, the well-established judicial default rule from *Landgraf* then controls: "Application of a new jurisdictional rule," such as venue, "takes away no substantive right but simply changes the tribunal that is to hear the case" and may generally be applied retroactively. *Landgraf*, 511 U.S. at 274; *see also In re Google*, at *2. And while true (at 17-19) that some procedural rules do alter "primary conduct" and thus should not be applied retroactively, the Supreme Court had long held that venue provisions are *not* the type of procedural rules that raise retroactivity concerns. *See National City Lines*, 337 U.S. 78 (1949); *Ex parte Collett*, 337 U.S. 55 (1949); *see also Matthews*, 161 F.3d at 161 (statutes that "change procedural rules, or simply allocate jurisdiction among fora" do not "impair rights" and may be applied retroactively). The Panel correctly applied this precedent when it noted that "[s]ection 1407 is in the nature of a venue provision for pretrial proceedings," and held that "[t]he venue of an action cannot be characterized as impairing rights that a party had when it acted, increasing a party's liability for past conduct, or imposing new duties." *In re Google*, at *2.

Finally, as this Panel recently determined, "Congress is generally presumed to be aware of relevant judicial precedent…and the applicability of procedural rules to pre-enactment pending cases is well-known. Thus, the [Venue Act's] silence on its applicability to pending actions supports its application to pending actions." *In re Google*, at *3; *see also Edelman v. Lynchburg Coll.*, 535 U.S. 106, 117-18 (2002) ("This background law not only persuades by its regularity over time but points to tacit congressional approval" with "Congress being presumed to have known of this settled judicial treatment of the [background law] when it enacted and later amended Title VII."); *see also North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995) ("It is not only appropriate but also realistic to presume that Congress was thoroughly familiar with our precedents and that it expects its enactments to be interpreted in conformity with them.") (cleaned up). Thus, Defendants' contention (at 17) that Congress would have included retroactivity language had they wanted the Venue Act to apply retroactively gets the analysis exactly backward. Instead, if the Panel again decides that the Venue Act is silent as to retroactivity, the Panel should again presume that by not including retroactivity language, Congress intended to invoke the judicial default rule and intended for the Venue Act to apply retroactively. *In re Google*, at *3.

## II.     The States Have Not Waived Their Venue Rights.

Alternatively, Defendants argue that the States have waived their venue rights, pointing to a series of pre- and post-Venue Act conduct that they claim (at 6-11) constitutes waiver of venue or forfeiture of the States' ability to challenge venue. Defendants' arguments hold no water.

### A.     The States Did Not Waive Venue *Prior* to Passage of the Venue Act.

Defendants argue (at 7) that the States waived their venue rights by (1) failing to object to the transfer of the *Teva* and *Dermatology* actions and by (2) unilaterally offering to waive their *Lexecon* rights at a July 9, 2020, status conference.

As an initial matter, this argument is non-sensical: Defendants assert that actions taken by the States *years* ago—before the Venue Act was even drafted, let alone enacted into law—somehow waive their rights under that recently enacted statute. This runs counter to both common sense and the traditional equitable principle that parties cannot waive an argument that is not available to them. *See, e.g.,* 5C WRIGHT & MILLER, FED. PRAC. & PROC. § 1391 (3d ed. 1998) (a party does not waive venue under Rule 12 if the defense was unavailable to them at the time of an initial motion to dismiss). The States could not have been expected to contest venue prior to the Venue Act's passage.

Moreover, Defendants concede (at 7) that the States *did* object to transfer of the earlier *Heritage* action. In their Motion to Vacate CTO-3, the States emphasized the unique role of the State Attorneys General in bringing enforcement actions to advance the public interest and enforce federal and state antitrust law.[1] The Panel rejected that argument and ordered the transfer of the *Heritage* action to the MDL.[2] Despite this transfer order, the States subsequently filed the *Teva* and *Dermatology* actions in the District of Connecticut and not in the transferee court. In the interests of judicial economy, the States did not repeat identical arguments in support of transfer that had already been rejected by the Panel.

Defendants also claim that the States waived venue by orally *offering* to waive their rights under *Lexecon* at the July 9, 2020, status conference, even though that offer was never accepted. But Defendants appear to concede (at 7) that neither the States nor the Defendants have formally waived either party's *Lexecon* rights. Under the relevant case law, a *Lexecon* waiver must be "clear

---

[1] Plaintiff States' Motion to Vacate Conditional Transfer Order (CTO-3), *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (J.P.M.L. May 16, 2017), ECF No. 321. The States also argued that they alleged different facts, sought different remedies, and were far more procedurally advanced than the pending class actions. *Id.*

[2] Transfer Order, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (J.P.M.L. Aug. 3, 2017), ECF No. 336.

and unambiguous." *In re DePuy Orthopaedics, Inc.*, 870 F.3d 345, 351 (5th Cir. 2017); *Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 615-19 (7th Cir. 2009). A pre-Venue Act suggestion that the States would be willing to waive *Lexecon* if Defendants also waived, and that was never accepted by Defendants, is far from "clear and unambiguous."

Moreover, even if the States' conditional offer had constituted waiver—which it did not—the intervening change of law ushered in by the Venue Act would constitute "good cause" for the States to withdraw their hypothetical *Lexecon* waiver given the strong public policy established by the Venue Act that the State Attorneys General should be able to litigate in their chosen forums. *See In re Fosamax Prods. Liability Litig.,* 815 F. Supp. 2d 649, 653 (S.D.N.Y. 2011) (*Lexecon* waiver may be withdrawn for "good cause," such as when "contrary to public policy").

Finally, Defendants argue (at 11) that the States waived venue under *Lexecon* by amending their complaint in the MDL to add parties instead of amending the underlying complaints in the District of Connecticut. While it is true that *some* courts have found that amending an MDL complaint to add parties directly into the MDL *can* constitute waiver under *Lexecon—not* the Venue Act—courts considering *Lexecon* waiver look more broadly to the parties' conduct as a whole and whether that conduct clearly and unambiguously evidences "an intent to forego the mandatory remand." *Armstrong*, 552 F.3d at 618 (finding that the plaintiff did not waive *Lexecon* by filing an amended complaint); *see also In re: Dealer Mgmt. Sys. Antitrust Litig.*, 2023 WL 8113436, at *4 (N.D. Ill. Nov. 21, 2023) (finding that plaintiffs did not waive *Lexecon* by direct filing and suggesting that direct-filed cases be treated "as having originated outside of that district"). That is a high standard. For example, in *Armstrong*, the court found that plaintiffs had not waived *Lexecon* because they had reserved the question of *Lexecon* waiver in a pretrial order. *Id.* at 617-18. The court also rejected defendant's arguments that the plaintiffs had waived *Lexecon*

7

by repeatedly agreeing to trial dates and by amending their complaint in the MDL, even when plaintiffs had alleged in the amended complaint that venue was proper in the transferee court. *Id.* Relevant to this MDL, the court also rejected the defendant's claim that *participating in pretrial proceedings* could constitute waiver because good faith participation in the litigation was "critical" to ensuring "timely completion of discovery and the facilitation of settlement negotiations." *Id.*

Just like the plaintiffs in *Armstrong*, the States' conduct in this MDL—both before and after passage of the Venue Act—does not demonstrate a clear and unambiguous intent to forego remand to the District of Connecticut. The States never dismissed their underlying complaints in the District of Connecticut. The States reserved the questions of *Lexecon* and the Venue Act as part of a stipulated pretrial order.[3] And the States have continued to litigate their cases in good faith. Seen in its entirety, the States' conduct falls well short of the "clear and unambiguous" expression of intent required to waive *Lexecon* under relevant case law. *In re DePuy Orthopaedics, Inc.*, 870 F.3d at 351; *Armstrong*, 552 F.3d at 615-19.

### B. The States Did Not Waive Venue *After* Passage of the Venue Act.

Defendants next argue (at 7-8) that the States waived their venue rights by continuing to litigate between the time the Venue Act passed and the time the States moved for remand. In support, Defendants cite exclusively to cases arising in the context of a defendant waiving venue by failing to raise it as an argument in a Rule 12 motion to dismiss or continuing to litigate after an intervening change of venue law. However, traditional venue waiver case law is not the proper framework under which the Panel should assess venue waiver in the MDL context. *See, e.g.,* 15 WRIGHT & MILLER, FED. PRAC. & PROC. JURIS. § 3862 (4th ed. 2008) (the "MDL transferee district

---

[3] Pretrial Order No. 234, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724, 2:16-md-02724-CMR (E.D. Pa. May 9, 2023), ECF No. 2443, ¶ 19 ("Pretrial planning conferences, including with regard to *Lexecon* and the State Antitrust Enforcement Venue Act (to the extent applicable), will be scheduled at a later time in consultation with counsel.").

need not be a proper venue" and venue is proper if proper in the "transferor district"). Instead, courts utilize the framework established in *Lexecon* to determine whether a party has waived its right to be remanded to its original forum.

In any event, the States have not waived venue. First, the States are challenging venue prior to answers being filed, making the challenge timely under traditional waiver principles. *See* Fed. R. Civ. P. 12(b) & (h); *Tri-State Empl. Servs., Inc. v. Mountbatten Sur. Co.*, 295 F.3d 256, 260 n.2 (2d Cir. 2002) (venue must be raised "in a pre-answer motion or responsive pleading").

Second, Defendants cite (at 8) to a line of irrelevant cases related to the Supreme Court's 2017 ruling in *TC Heartland LLC v. Kraft Foods Brands LLC*, 581 U.S. 258 (2017). Defendants conveniently omit other cases involving *TC Heartland* finding no waiver and recognizing that venue waiver is "neither rigid nor context-independent." *See, e.g., In re Micron Tech., Inc.*, 875 F.3d 1091, 1097 (Fed. Cir. 2017). Instead, a court should consider several factors beyond just the "sheer time" a party took to challenge venue, such as whether the challenge takes place near trial, or whether the movant's delay constitutes "tactical wait-and-see" gamesmanship, *id.* at 1102, or whether the challenge would cause "undue prejudice." *UCB, Inc. v. Mylan Techs., Inc.*, No. CV 17-322-LPS, 2017 WL 5985559, at *2 (D. Del. Dec. 1, 2017) (finding no waiver where the motion to transfer would not cause prejudice). None of those factors are present here. No trial date has been set in the MDL, and the Defendants can point to no strategic advantage the States would have obtained by moving to remand when they did.[4] Instead, the States raised venue with the parties

---

[4] Indeed, it was to everyone's advantage, including the Defendants, that the States continued to litigate and conduct important discovery after the Venue Act was passed. It would have been extremely disruptive for the States to simply stop litigating their cases and stop coordinating with the other parities in the MDL in the lead up to the Bellwether fact discovery deadline.

9

and the transferee judge shortly after the Venue Act was passed, and once it became clear that the Panel's decision in *In re Google* would survive appellate review, the States moved to remand.[5]

### C. The States Have Not Forfeited Their Right to Challenge Venue.

To the extent that the Defendants' waiver arguments are construed as an argument that the States have forfeited the right to challenge venue, as opposed to waiver of venue itself, the States have not forfeited their argument by filing their Motion to Remand on November 1, 2023.

Pursuant to PTO No. 234[6] the States informed the parties and the Court that they would move to remand at the Leadership Status Conference on October 19, 2023, only 15 days after the Second Circuit denied Google's mandamus petition and motion for reconsideration in *In re Google*, effectively affirming this Panel's determination that the Venue Act applies to pending state antitrust enforcement actions. *In re Google LLC*, No. 23-910, Dkt. No. 101 (2d Cir. Oct. 4, 2023). The States moved for remand 13 days later on November 1, 2023.

If the States had filed any sooner—and while this Panel and the Second Circuit were still considering the motion to remand in the Google action—the Defendants almost certainly would have objected that the issue was not ripe and that the Panel should not decide any such motion until reaching a decision in *In re Google*. Defendants cannot now attack the States for anticipating that very argument and waiting until the interpretation of the Venue Act was settled before swiftly moving to remand this action.

---

[5]     The Panel should also consider the unique role of the State Attorneys General as chief law enforcement officers of their respective states. Many State Attorneys General are statutorily obligated to prosecute enforcement actions against parties that harm consumers in their respective jurisdictions. *See, e.g.*, N.C. Gen. Stat. § 114-6; Neb. Rev. Stat. § 84-211. Defendants' suggestion that the States forfeited venue by continuing to litigate their cases flies in the face of the State Attorneys General's obligations to the citizens of their States. The Venue Act did not stay any of the States' cases in the MDL, nor did it preempt or override any of the existing scheduling orders. The States were obligated to continue to litigate these enforcement actions on behalf of the consumers in their respective jurisdictions in the MDL unless and until they were transferred back to the District of Connecticut.

[6]     Pretrial Order No. 234, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724, 2:16-md-02724-CMR (E.D. Pa. May 9, 2023), ECF No. 2443, ¶ 19.

**III.   The Panel Should Order Remand to Avoid Absurd Results.**

Defendants argue (at 19-20) that the States' interpretation of the Venue Act leads to absurd results in the sense that the Venue Act not only removes the Panel's authority to consolidate the State Attorneys General into an MDL, but also removes the Panel's authority to remand.

The Panel has already considered—and rejected—this argument. *See In re Google*, at *3 ("[I]nterpreting the subsection (g) amendment to eliminate the possibility of remand to that forum yields an absurd result that is the exact opposite of the statute's purpose."). To avoid the absurd result of the Venue Act trapping State Attorneys General in MDLs, contrary to Congress's intent, the Panel interpreted 28 U.S.C. § 1407(a) to continue to apply to previously-centralized state antitrust enforcement actions. *Id.* Alternatively, the Panel recognized that it could rely on its inherent authority to grant a remedy for actions transferred, to ensure that the purpose of the Venue Act was properly effectuated. *Id.*

**IV.   Remand Is Unlikely to Be Disruptive or Prejudicial.**

Finally, Defendants make several claims (at 4-5, 8-10) about the substantial prejudice, the wasted resources, and "morass of procedural uncertainty" that will be occur if the Panel orders remand. These claims are overstated and conjectural, and largely irrelevant to the legal question of whether the Venue Act applies retroactively to this MDL. In passing the Venue Act, Congress determined that interests in inefficiency should give way to the right of the State Attorneys General to enforce the antitrust laws in their chosen forums. It is not for the Panel, nor for the parties, to second guess Congress's policy determination.

While the States have been consolidated in MDL 2724, the parties have coordinated a significant amount of discovery relating to the States' actions. Fact discovery is already completed for the States' *Dermatology* bellwether and has been ongoing for years in the two other actions. The parties also continue to engage in expert discovery. These efforts will not be wasted should

11

the Panel order remand. However, the States recognize that remand will require substantial cooperation between the parties and the transferee judge and have already been discussing those issues with other parties in the MDL. The States are committed to working in good faith with the other plaintiffs, Defendants, and the court to reduce the burden on the parties relating to remand.

## **CONCLUSION**

Defendants have provided this Panel no reason to rethink its decision that the Venue Act applies to state antitrust enforcement actions in pending MDLs. Defendants' waiver arguments are also unavailing, and the States respectfully request that the Panel remand their actions to the District of Connecticut, where they were originally filed.

DATED: December 6, 2023

Respectfully submitted,

/s/ *Colin P. Snider*
Colin P. Snider
Assistant Attorney General
2115 State Capitol
P.O. Box 98920
Lincoln, NE 68509
Tel: (402) 471-7759
colin.snider@nebraska.gov

*Attorney for the State of Nebraska*

W. Joseph Nielsen
Sage L. Zitzkat
Assistant Attorneys General
165 Capitol Avenue
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5040
joseph.nielsen@ct.gov
sage.zitkat@ct.gov

*Liaison Counsel for the States*
*Attorneys for the State of Connecticut*

Robert L. Hubbard
Assistant Attorney General
28 Liberty, 20th Floor

New York, New York 10005
Tel: (212) 416-8267
robert.hubbard@ag.ny.gov

*Attorney for the State of New York*

Jessica V. Sutton
Special Deputy Attorney General
114 West Edenton Street
Raleigh, North Carolina 27603
Tel: (919) 716-6000
jsutton2@ncdoj.gov

*Attorney for the State of North Carolina*