**UNITED STATES JUDICIAL PANEL**
on
**MULTIDISTRICT LITIGATION**

**IN RE: GENERIC PHARMACEUTICALS**
**PRICING ANTITRUST LITIGATION**                                  MDL No. 2724

**REMAND ORDER**

**Before the Panel**:  The state antitrust enforcement actions listed on Schedule A (the State Actions) were transferred from the District of Connecticut to the Eastern District of Pennsylvania for centralized proceedings in MDL No. 2724 between 2017 and 2020.  This highly complex antitrust proceeding involves claims for price fixing of numerous generic drugs in violation of the Sherman Act and state antitrust laws.  Plaintiffs in this MDL allege that the average market price of these pharmaceutical products increased between 2012 and the present because of overlapping conspiracies effectuated by defendants through direct company-to-company contacts and joint activities undertaken through trade associations.

In December 2022, legislation was enacted that amended 28 U.S.C. § 1407(g) to exempt state antitrust enforcement actions arising under federal antitrust law from MDLs.  Plaintiffs in the State Actions[1] move for an order remanding these actions to the District of Connecticut.  Plaintiffs argue that Section 1407(g) as amended applies to their actions and requires remand.  Approximately forty defendants in the State Actions oppose the motion for remand.[2]

---

[1] Plaintiffs state in their papers that this motion is brought by "[e]very state except Alabama, Arkansas, Hawaii, and Texas, along with the District of Columbia, Puerto Rico, the Northern Mariana Islands, and the Virgin Islands."  Mem. in Supp. at 1 n.1, MDL No. 2724 (J.P.M.L. filed Nov. 1, 2023), ECF No. 407-1.

[2] Opposing defendants include:  Upsher-Smith Laboratories, LLC; Actavis Elizabeth, LLC; Actavis Holdco U.S., Inc.; Actavis Pharma, Inc.; Amneal Pharmaceuticals, Inc.; Amneal Pharmaceuticals, LLC; Apotex Corp.; Ara Aprahamian; Aurobindo Pharma U.S.A., Inc.; Bausch Health Americas, Inc.; Bausch Health US, LLC; Mitchell S. Blashinsky; Douglas Boothe; Breckenridge Pharmaceutical Inc.; James Brown; Maureen Cavanaugh; Citron Pharma, LLC; Dr. Reddy's Laboratories, Inc.; Marc Falkin; Glenmark Pharmaceuticals Inc., USA; James Grauso; Kevin Green; Lannett Company, Inc.; Lupin Pharmaceuticals, Inc.; Rajiv Malik; Mayne Pharma Inc.; Mylan Inc.; Mylan Pharmaceuticals Inc.; James Nesta; Michael Perfetto; Perrigo New York, Inc.; Dave Rekenthaler, Richard Rogerson, Sandoz Inc.; Fougera Pharmaceuticals Inc.; Teva Pharmaceuticals USA, Inc.; John Wesolowski; Wockhardt USA LLC; and Zydus Pharmaceuticals (USA) Inc.  Defendants Tracy Sullivan DiValerio and Ascend Laboratories, LLC, join these defendants' opposition.

- 2 -

Prior to its amendment in December 2022, Section 1407(g) exempted federal antitrust enforcement actions from centralization under Section 1407.  The 2022 amendment, which was enacted as part of the Consolidated Appropriations Act, 2023, added the words "or a State" to this exemption.  *See* Pub. L. No. 117-328, Div. gg, Title III, § 301, 136 Stat. 4459, 5970 (Dec. 29, 2022).  Thus, Section 1407(g), as amended, now states: "Nothing in this section shall apply to any action in which the United States or a State is a complainant arising under the antitrust laws." Subsequently, we held that this amendment "applies to pending state antitrust enforcement actions and, absent a state's waiver of its venue rights, the Panel must grant . . . remand."  *In re Google Dig. Advert. Antitrust Litig.*, MDL No. 3010, __ F. Supp. 3d __, 2023 WL 3828612, at *2 (J.P.M.L. June 5, 2023).  Plaintiffs argue that Section 1407(g), as amended and as previously applied by the Panel, requires remand of the State Actions here.

## I.

Defendants offer several arguments against remand of the State Actions.  First, they argue that plaintiffs have waived any right to seek Section 1407 remand.  As we noted in our *Google* decision, a state can waive its right to remand under Section 1407(g).  2023 WL 3828612, at *2. Indeed, such waivers—called *Lexecon* waivers—are not uncommon and typically are employed by parties who agree to trial in the transferee court.  *See, e.g.*, *In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*, 357 F. Supp. 3d 1389, 1390 (J.P.M.L. 2018) ("While parties often waive *Lexecon* rights for a given case to remain in the transferee court for trial, once the Section 1407 remand process is initiated, the statute unambiguously requires the Panel to return a transferred action to the district from whence it came.").  *See also Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998) (holding that Section 1407 "obligates the Panel to remand any pending case to its originating court when, at the latest, those pretrial proceedings have run their course.").

The Panel has not yet had occasion to consider the standard for a party to waive its right to Section 1407 remand.  Defendants argue that the standard for waiver of an objection to venue set forth in 28 U.S.C. § 1406(b)—namely, that an objection to venue must be raised in a timely and sufficient manner—applies here.  Those few decisions by other courts that have addressed this issue, however, suggest a different standard is required in the Section 1407 context.  For instance, the Fifth Circuit, in a decision denying mandamus relief from a bellwether trial scheduling order, opined:

> Section 1407 provides that transferred actions "*shall be remanded* . . . at or before the conclusion of such pretrial proceedings."  This mandatory language creates a powerful presumption in favor of remand, one that cannot easily be overcome.  The result is a statutory right to remand following an MDL proceeding, analogous to the statutory right to removal under 28 U.S.C. § 1441.  A party cannot waive its removal rights through a forum-selection clause unless the waiver is "clear and unambiguous."  Likewise, we hold that a *Lexecon* waiver must be "clear and unambiguous."

*In re DePuy Orthopaedics, Inc.*, 870 F.3d 345, 351 (5th Cir. 2017) (footnotes and citations omitted).  And the Seventh Circuit, in an appeal from a suggestion of remand, opined that:

- 3 -

The mandatory nature of the § 1407(a) transfer, and its statutory rather than contractual origin, counsel for a more rather than less restrictive waiver standard than that used in the arbitration context. Nevertheless, we need not address whether that is in fact necessary, because even under the standard articulated in arbitration cases, the defendant has failed to demonstrate waiver here.

We consider, then, whether the plaintiffs, expressly or through conduct, evidenced an intent contrary to that statutory mandate, relinquishing the right to remand the case and consenting to retention of the case by the transferee court.

*Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009) (holding that plaintiffs did not waive right to remand by filing a consolidated complaint in MDL, which stated that venue was proper in transferee court, or by taking part in pretrial proceedings, including the establishment of trial dates). Both courts recognized that Section 1407 creates a statutory presumption *against* waiver—the default under the statute is that an action is remanded to its transferor court at the conclusion of pretrial proceedings. *Cf. Lexecon*, 522 U.S. at 35 ("The Panel's instruction [to remand] comes in terms of the mandatory 'shall,' which normally creates an obligation impervious to judicial discretion."). Whatever the standard for waiver may be—we need not precisely define the boundaries of *Lexecon* waiver for purposes of this motion—it must, at a minimum, require that a party take some affirmative action that clearly demonstrates the party's intent to waive its statutory right to remand. Mere inaction or failure to object is not sufficient.

Defendants argue that plaintiffs waived their right to Section 1407 remand by: (1) failing to object to the Panel's orders transferring two of the actions to the MDL; (2) offering to waive their *Lexecon* rights at a July 9, 2020, status conference; (3) by continuing to participate in pretrial proceedings, including discovery, after the amendment of Section 1407(g) in December 2022; and (4) by waiting until November 2023 to move the Panel for Section 1407 remand. That plaintiffs did not oppose transfer of two of the actions cannot constitute waiver. Transfer to an MDL necessarily entails the right to remand under Section 1407; a party's opposition to the transfer is irrelevant. Moreover, plaintiffs did oppose transfer of the first-filed State Action to the MDL. *See In re Generic Pharms. Pricing Antitrust Litig.*, MDL No. 2724, 2017 WL 4582710 (J.P.M.L. Aug. 3, 2017) (denying motion to vacate CTO). That plaintiffs correctly perceived that repeating their arguments against transfer with respect to their later-filed actions would not serve judicial economy or the parties' interests does not amount to waiver of remand under Section 1407.

Plaintiffs' oral offer to waive their *Lexecon* rights at a status conference in 2020 also does not constitute a waiver. Defendants never suggest this offer was accepted or treated as such by the transferee court or the parties. At most, this action constitutes a potential willingness by plaintiffs to relinquish their remand rights—not a clear intent to do so. Tellingly, the transferee court, in a report to the Panel issued in response to plaintiffs' remand motion, suggests that no *Lexecon* waiver has been made. *See* Status Order at 3, *In re Generic Pharms. Pricing Antitrust Litigation*, MDL No. 2724 (filed with J.P.M.L. on Dec. 13, 2023), ECF No. 520 ("Although under *Lexecon*, this Transferee Court could not conduct a trial of the State Action bellwether unless all parties agree, there is still much that can be accomplished through coordinated pretrial proceedings.").

- 4 -

Defendants next point out that plaintiffs have been at the center of discovery in the MDL. According to defendants, plaintiffs (and their relevant state agencies) have sat for 69 depositions since Section 1407(g) was amended in December 2022, and have litigated dozens of discovery disputes. But participation in the pretrial proceedings envisioned under Section 1407—no matter how extensive—cannot, on its own, constitute waiver of the right to remand under Section 1407.

Nor is the delay by plaintiffs in seeking Section 1407 remand here a basis for finding waiver. To be sure, inordinate delay in seeking Section 1407 remand, combined with other conduct evincing an intent to waive a party's *Lexecon* rights, can amount to waiver. For instance, in *In re Carbon Dioxide Industry Antitrust Litigation*, 229 F.3d 1321, 1326–27 (11th Cir. 2000), the Eleventh Circuit held that plaintiffs could not seek Section 1407 remand where they had repeatedly agreed to trial in the transferee court and did not seek remand until the day of jury selection. The circumstances here are not comparable. The State Actions are not approaching trial or even the conclusion of pretrial proceedings. Indeed, motions to dismiss remain pending in all three actions, and defendants have not yet answered plaintiffs' complaints. Further, plaintiffs offer a reasonable explanation for their delay in moving for Section 1407 remand—they were awaiting the outcome of the remand motion in *Google* and the subsequent mandamus proceeding in the Second Circuit. *See* Order, *In re Google LLC*, No. 23-910 (2d Cir. Oct. 4, 2023), ECF No. 101 (denying petition for writ of mandamus). Accordingly, plaintiffs have not waived their right to seek Section 1407 remand.

## II.

Defendants next seek to revisit our ruling in *Google* that Section 1407(g) applies to state antitrust enforcement actions pending in MDLs. In *Google*, the Panel applied the statutory interpretation framework established in *Landgraf v. USI Film Productions*, 511 U.S. 244, 280 (1994), to determine that the amendment to Section 1407(g) requires remand of state antitrust enforcement actions pending in MDLs at the time of enactment. *See Google*, 2023 WL 3828612, at *2–3. Defendants contend that the Panel's analysis of Section 1407(g) should differ here because MDL No. 2724 is pending in a transferee court located within the Third Circuit. We find this argument—that the Panel's interpretation of its foundational statute should differ depending on where a given MDL was centralized—deeply problematic. If there indeed is a split between the Second and Third Circuits as to the interpretation of Section 1407, that split should be resolved by the Supreme Court, rather than by the Panel employing different standards of statutory interpretation in different cases.

In any event, we are not persuaded that the interpretation and application of Section 1407(g) differs under Third Circuit precedent. Defendants rely upon *Mathews v. Kidder, Peabody & Co., Inc.*, 161 F.3d 156 (3d Cir. 1998), in which the Third Circuit interpreted *Lindh v. Murphy*, 521 U.S. 320 (1997), as adding a step to the *Landgraf* analysis. As formulated by the *Mathews* court, a court should "(1) look for an express command in either direction; (2) discern whether there is congressional intent to only apply a statute prospectively; (3) analyze the statute for retroactive effect; and (4) look for clear intent to apply the statute retrospectively (if it has a retroactive effect) or simply use normal rules of construction to determine the statute's temporal reach." *Mathews*, 161 F.3d at 161.

- 5 -

We held in *Google* that "the express language of the Section 1407(g) does not provide an answer as to its temporal reach." 2023 WL 3828612, at *2. Moving to the second question under *Mathews*, there is no discernable congressional intent that the amendment to Section 1407(g) should not apply to actions pending in MDLs. Defendants focus on the deletion of a June 2021 "effective date" provision from the first version of the State Antitrust Enforcement Venue Act bill[3] and an "applicability" provision in a later version of the bill.[4] Defendant in *Google* relied upon the same legislative history. We found it unpersuasive because:

> The Supreme Court in *Landgraf* cautioned against relying on the deletion of a retroactivity provision, explaining that such omissions may reflect a political "compromise" and "does not tell us precisely where the compromise was struck." Moreover, Congress generally is presumed to be aware of relevant judicial precedent, and the application of procedural rules to pre-enactment pending cases is well-known.

*Google*, 2023 WL 3828612, at *3 (internal citations omitted). The *Mathews* court was similarly wary of finding "clear evidence" of congressional intent from "unstated intentions, absent language, and explicit directives in [unrelated] areas [of the legislation]." *Mathews*, 161 F.3d at 170; *see also id.* ("We are extremely reluctant to find the 'clear statement' of congressional intent required by the *Landgraf/Lindh* analysis in the unexplained and unremarkable alteration of language in what was clearly a minor aspect . . . of a complex legislative scheme.").

Defendants argue that the Supreme Court has, at times, considered deleted retroactivity provisions as indicia of congressional intent.[5] However, the circumstances of this legislation—

---

[3] The proposed bill initially included a section stating, "[t]his Act and the amendments made by this Act, shall take effect on June 1, 2021." *See* S. 1787, 117th Cong. (as introduced, May 24, 2021); H.R. 3460, 117th Cong. (as introduced May 21, 2021). After the bill was reported out of committee in both chambers, this section was stricken. *See* 168 Cong. Rec. S2935-36 (daily ed. June 14, 2022); 168 Cong. Rec. H8253 (daily ed. Sept 29, 2022).

[4] When the State Antitrust Enforcement Venue Act was incorporated into the Consolidated Appropriations Act, a version appearing in that bill included a provision that said, "[t]he amendments made by subsection (a) shall apply to any matter pending on, or filed on or after, the date of enactment of this Act," 168 Cong. Rec. S7752 (daily ed. Dec. 19, 2022). Both the Senate and the House subsequently passed the Consolidated Appropriations Act of 2023, without this language. *See* 168 Cong. Rec. S10077 (daily ed. Dec. 22, 2022); 168 Cong. Rec. H10475, H10528 (daily ed. Dec. 23, 2022).

[5] The two cases cited by defendants involved very different statutes and legislative histories. *Rivers v. Roadway Express, Inc.*, 511 U.S. 298 (1994), was also raised by Google in its motion to stay the Panel's remand order in MDL No. 3010. We found Google's reliance on *Rivers* to be unpersuasive. *See In re Google Dig. Advert. Antitrust Litig.*, MDL No. 3010, __ F. Supp. 3d __, 2023 WL 9316534, at *2 n.5 (J.P.M.L. Aug. 3, 2023) (finding that *Rivers* "considered legislative history in a different context," namely, in determining whether Congress intended to restore a prior

(continued…)

- 6 -

specifically, as part of a much larger $1.7 trillion appropriations package that reportedly was driven by the threat of a government shutdown and imminent expiration of the 117th Congress—weigh against reading any congressional intent (much less a clear intent) in these deletions.

Turning to the third *Mathews* question, the Panel found in *Google* that the Section 1407(g) amendment was "plainly a procedural rule" that does not have genuine retroactive effect. *Google*, 2023 WL 3828612, at *2 ("The venue of an action cannot be characterized as impairing rights that a party had when it acted, increasing a party's liability for past conduct, or imposing new duties."). Defendants dispute this interpretation, arguing that some procedural rules are subject to a presumption against retroactivity where the procedures affected have already occurred, *e.g.*, evidentiary rulings in a case in which trial has been completed. *See Mathews*, 161 F.3d at 161 n.8. Transfer under Section 1407 does not fit into this exception, however, because such transfers are for pretrial purposes only and cases transferred are always subject to remand. *See In re Google Dig. Advert. Antitrust Litig.*, MDL No. 3010, ___ F. Supp. 3d ___, 2023 WL 9316534, at *3 (J.P.M.L. Aug. 3, 2023) (explaining that "it is in the very nature of Section 1407 that cases are transferred into and out of MDLs in the midst of pretrial proceedings"). Nor does remand, as suggested by defendants, undo the acts and decisions by the parties and the transferee court. For instance, even after remand, the decisions of the transferee court generally remain law of the case. *See, e.g.*, *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 705–06 (5th Cir. 2014) (holding that transferor court "properly applied the law of the case when it refused to reconsider the MDL court's rulings"). Thus, even under Third Circuit precedent, we conclude that Section 1407(g) applies to the State Actions.

## III.

Defendants also argue that the natural reading of the amendment to Section 1407(g) deprives the Panel both of its authority to transfer state antitrust enforcement actions and its authority to remand such actions. We addressed this argument in *Google*:

> On its face, the Venue Act plainly is intended to allow state antitrust actions to proceed in the action's original forum, and interpreting the subsection (g) amendment to eliminate the possibility of remand to that forum yields an absurd result that is the exact opposite of the statute's purpose. Thus, we conclude that we retain the authority to remand previously-centralized state antitrust enforcement actions under subsection (a). We also believe that the power to remand is a part of the Panel's inherent authority to grant a remedy for actions transferred to an MDL that no longer belong there.

*Google*, 2023 WL 3828612, at *3. *See also id.* at *3 n.3 (citing *United States v. Fitzgerald*, 906 F.3d 437, 447 (6th Cir. 2018) ("absurd results are to be avoided, and courts should not construe a

_____

understanding of § 1981). Defendants here also cite *Hamdan v. Rumsfeld*, 548 U.S. 557 (2006), which involved application of the Detainee Treatment Act of 2005 to a challenge to a trial before a military commission at Guantanamo Bay. The Court there found that Congress had considered the temporal reach of the statute at every stage of the legislative process. *Id.* at 579–80. The same cannot be said here.

- 7 -

statute to produce an absurd result that we are confident Congress did not intend") (internal citations omitted)).  Holding otherwise would leave the State Actions stranded in a procedural limbo—the actions could never be remanded from the transferee court and possibly could not be tried in E.D. Pennsylvania, as they were transferred exclusively for pretrial proceedings. Defendants' proposed solution to this conundrum—adopting a prospective application of the amended Section 1407(g) that, as we have held, is not consistent with a proper interpretation of the statute—is not persuasive.

IV.

Defendants suggest that because several states' claims were added through amendment of the complaints in the MDL, and were never filed in the transferor court, there is no district to which these claims can be remanded.  This argument is easily dispensed with.  Section 1407(a) states that "[e]ach *action* so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred." (Emphasis added.)  Regardless of whether certain claims or plaintiffs originated in the MDL, the State Actions originated in the District of Connecticut and ultimately must be remanded there.[6]

V.

Finally, defendants argue that the transferee court and the parties have expended significant resources on the State Actions, which will be wasted if the actions are remanded to the District of Connecticut.  This is undoubtedly true to some extent.  As the transferee court reports, one of the State Actions "is fully integrated into, and a key part of, the bellwether proceedings."  *See* Status Order at 4.  Even so, the impact of remand on the MDL is largely irrelevant where the mandate of the statute is clear.  Further, while remand may temporarily disrupt proceedings in the MDL, it is unlikely that the work by the parties and the court in the MDL will be for nought.  As mentioned, the rulings of the transferee court will apply to the State Actions absent a ruling to the contrary by the transferor court, and the extensive discovery conducted to date undoubtedly will be used in both the State Actions and the MDL.  Additionally, informal cooperation among the parties and coordination among the involved courts remains possible.[7]

---

[6] Similarly, it is irrelevant that some of the plaintiffs in these three actions are not states (e.g., the District of Columbia).  Section 1407(g) applies to "any action in which the United States or *a State* is a complainant arising under the antitrust laws." (Emphasis added.)  The statute does not require that states constitute *all* plaintiffs in an action.

[7] Defendants suggest in their opposition that they may seek Section 1404 transfer of the State Actions from the District of Connecticut to the Eastern District of Pennsylvania.  We offer no opinion on the merits of such a motion but note that in other contexts such a transfer "can result in a more streamlined action, without the procedural necessity of remand to the transferor court that is required under Section 1407."  *In re Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012).

- 8 -

IT IS THEREFORE ORDERED that the actions listed on Schedule A are remanded to the District of Connecticut.

PANEL ON MULTIDISTRICT LITIGATION

_____
Karen K. Caldwell
Chair

| | |
|---|---|
| Nathaniel M. Gorton | Matthew F. Kennelly |
| David C. Norton | Roger T. Benitez |
| Dale A. Kimball | Madeline Cox Arleo |

**IN RE: GENERIC PHARMACEUTICALS**
**PRICING ANTITRUST LITIGATION**                    MDL No. 2724

## SCHEDULE A

<u>Eastern District of Pennsylvania</u>

STATE OF CONNECTICUT, ET AL. v. AUROBINDO PHARMA USA, INC., ET AL.,
    C.A. No. 2:17−03768 (D. Connecticut, C.A. No. 3:16−02056)
STATE OF CONNECTICUT, ET AL. v. TEVA PHARMACEUTICALS USA, INC.,
    ET AL., C.A. No. 2:19−02407 (D. Connecticut, C.A. No. 3:19−00710)
STATE OF CONNECTICUT, ET AL. v. SANDOZ, INC., ET AL.,
    C.A. No. 2:20−03539 (D. Connecticut, C.A. No. 3:20−00802)