**No. 24-_____**

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

————————————

### IN RE ACTAVIS HOLDCO U.S., *et al*.

Petitioners.

————————————

On Petition for a Writ of Mandamus to the
United States Judicial Panel on Multidistrict Litigation,
Case No. MDL No. 2724
Honorable Judge Cynthia M. Rufe
U.S. District Court for the Eastern District of Pennsylvania

————————————

## PETITION FOR A WRIT OF MANDAMUS
————————————

DEVORA W. ALLON
  *Counsel of Record*
KIRKLAND & ELLIS LLP
601 LEXINGTON AVENUE
NEW YORK, NY 10022
(212) 446-4800

GEORGE W. HICKS, JR.
KIRKLAND & ELLIS LLP
1301 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20004
(202) 389-5000

*Counsel for Petitioner Upsher-Smith Laboratories, LLC*

February 14, 2024

[Additional Counsel on Inside Cover]

Sheron Korpus
Seth B. Davis
Seth A. Moskowitz
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

*Counsel for Actavis Elizabeth, LLC,
Actavis Holdco U.S., Inc., and
Actavis Pharma, Inc.*

Robin P. Sumner
Michael J. Hartman
TROUTMAN PEPPER HAMILTON
SANDERS LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
(215) 981-4000

*Counsel for Amneal Pharmaceuticals,
Inc. and Amneal Pharmaceuticals,
LLC*

James T. McKeown
Elizabeth A. N. Haas
FOLEY & LARDNER LLP
777 E. Wisconsin Avenue
Milwaukee, WI 53202
(414) 271-2400

Steven F. Cherry
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
(202) 663-6000

*Counsel for Apotex Corp.*

Fabien M. Thayamballi
Shapiro Arato Bach LLP
1140 Avenue of the Americas
17th Floor
New York, New York 10036
(212) 257-4880

*Counsel for Ara Aprahamian*

W. Gordon Dobie
Frank A. Battaglia
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
(312) 558-5600

Irving Wiesen
LAW OFFICES OF IRVING L.
WIESEN, P.C.
420 Lexington Ave. – Suite 2400
New York, NY 10170
(212) 381-8774

*Counsel for Ascend Laboratories, LLC*

Robin D. Adelstein
Mark A. Robertson
Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10019-6022
(212) 318-3000

*Counsel for Bausch Health Americas,
Inc. and Bausch Health US, LLC*

Larry H. Krantz
KRANTZ & BERMAN LLP
747 Third Avenue, 32nd Floor
New York, New York 10017
(212) 661-0009

*Counsel for James Brown*

Nathan E. Denning
Chloe S. Booth
WIGGIN AND DANA LLP
437 Madison Avenue, 35th Floor
New York, NY 10022
(212) 551-2600

Benjamin H. Diessel
Emmett F. Gilles
Christopher Bailes
Ariela C. Anhalt
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
New Haven, CT 06510
(203) 498-4400

*Counsel for Aurobindo Pharma
U.S.A., Inc.*

Guy Petrillo
Christina Karam
PETRILLO KLEIN & BOXER LLP
655 Third Ave.
22nd Floor
New York, NY 10017
(212) 370-0330

*Counsel for Douglas Boothe*

Michelle N. Lipkowitz
Mintz, Levin, Cohn, Ferris, Glovsky
and Popeo, P.C.
555 12th Street NW, Suite 1100
Washington, DC 20004
(202) 434-7448

*Counsel for Mitchell S. Blashinsky*

Steven E. Bizar
John P. McClam
Agnese Nadalini
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Counsel for Citron Pharma, LLC*

Thomas H. Suddath, Jr.
REED SMITH LLP
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
(215) 851-8100

*Counsel for Maureen Cavanaugh*

Roger B. Kaplan
Jason Kislin
Aaron Van Nostrand
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
(973) 360-7900

Brian T. Feeney
1717 Arch Street, Suite 400
Philadelphia, PA 19103
(215) 988-7812

*Counsel for Dr. Reddy's
    Laboratories, Inc.*

Dimitra Doufekias
Megan E. Gerking
Robert W. Manoso
Aaron Scheinman
Megan S. Golden
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
(202) 887-1500

Michael B. Miller
Benjamin E. Campbell
MORRISON & FOERSTER LLP
250 W 55th Street
New York, NY 10019
(212) 468-8000

*Counsel for Glenmark
    Pharmaceuticals Inc., USA*

Robert E. Connolly
LAW OFFICE OF ROBERT E.
CONNOLLY
1735 Market Street
Suite A, #469
Philadelphia, PA 19103
(215) 219-4418

*Counsel for James Grauso*

Robert E. Welsh, Jr.
Richard D. Walk, III
WELSH & RECKER, P.C.
306 Walnut Street
Philadelphia, PA 19106
(215) 972-6430

*Counsel for Kevin Green*


George G. Gordon
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104-2808
(215) 994-2000

*Counsel for Lannett Company, Inc.*


Adam Farbiarz
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3000

*Counsel for Rajiv Malik*


Brian J. Smith
K&L Gates LLP
70 W. Madison St., Suite 3300
Chicago, IL 60602
(312) 807-4202

*Counsel for Mayne Pharma Inc.*


Colin R. Kass
Proskauer Rose LLP
1001 Pennsylvania Ave, NW
Suite 600 South
Washington, DC 20004
(202) 416-6890

Bradley I. Ruskin
David A. Munkittrick
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036
(212) 969-3000

Leiv Blad
Meg Slachetka
Competition Law Partners
1101 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 742-4300

*Counsel for Lupin*
   *Pharmaceuticals, Inc.*


Peter M. Ryan
COZEN O'CONNOR P.C.
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-2130

*Counsel for James Nesta*

Benjamin F. Holt
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
(202) 637-5600

Jasmeet K. Ahuja
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600

*Counsel for Mylan Defendants*


J. Clayton Everett, Jr.
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000

Harvey Bartle IV
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000

*Counsel for Perrigo New York, Inc.*


Margaret A. Rogers
ARNOLD & PORTER KAYE
SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000

*Counsel for Sandoz Inc. and Fougera*
*    Pharmaceuticals Inc.*

Jeffrey Brown
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
(212) 698-3511

*Counsel for Dave Rekenthaler*


Stephen A. Miller
Calli J. Padilla
COZEN O'CONNOR P.C.
1650 Market Street
Suite 2800
Philadelphia, PA 19103
(215) 665-6938

*Counsel for Richard Rogerson*


J. Gordon Cooney, Jr.
John J. Pease III
Alison Tanchyk
William T. McEnroe
Zachary M. Johns
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000

Amanda B. Robinson
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 739-3000

*Counsel for Teva Pharmaceuticals*
*    USA, Inc.*

Michael Weinstein
Michael C. Klauder
COLE SCHOTZ P.C.
25 Main Street
Hackensack, NJ 07601
(201) 489-3000

*Counsel for Walter Kaczmarek*

Charles S. Leeper
Kenneth M. Vorrasi
Alison M. Agnew
FAEGRE DRINKER BIDDLE &
REATH LLP
1500 K Street, NW, Suite 1100
Washington, DC  20005
(202) 842-8800

*Counsel for John Wesolowski*

Clifford Katz
Damon Suden
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
(212) 808-7800

*Counsel for Wockhardt USA LLC*

Jason R. Parish
BUCHANAN INGERSOLL &
ROONEY PC
1700 K Street, NW
Washington, DC 20006
(202) 452-7900

Bradley J. Kitlowski
BUCHANAN INGERSOLL &
ROONEY PC
Union Trust Building
501 Grant Street
Pittsburgh, PA 15219
(412) 562-8800

*Counsel for Zydus Pharmaceuticals
    (USA) Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................... ii

INTRODUCTION ................................................................................ 1

JURISDICTIONAL STATEMENT .......................................................... 5

ISSUES PRESENTED ........................................................................... 5

RELIEF SOUGHT ................................................................................ 6

STATEMENT OF FACTS ...................................................................... 6

      A.    The State Actions Drive the Growth in the Size and Complexity of the MDL. ........................................................ 6

      B.    The MDL Court Expends Significant Resources as the States Take the Lead. ........................................................................ 8

      C.    Congress Passes the Venue Act, But the States Continue to Litigate for Nearly a Year. .................................................... 9

      D.    The JPML Grants the States' Motion to Remand Despite Judge Rufe's Concerns. ...................................................... 10

REASONS WHY THE WRIT SHOULD ISSUE .................................... 14

I.     The Venue Act Does Not Require Remand Of Cases Already Transferred Into And Pending In MDLs........................................ 15

II.    The States Waived Their Venue Objection Under 28 U.S.C. § 1406. .......... 25

CONCLUSION .................................................................................. 28

COMBINED CERTIFICATE OF COMPLIANCE .................................... i

CERTIFICATE OF SERVICE ............................................................... ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akeso Health Scis., LLC v. Designs for Health, Inc.*,
2018 WL 2558420 (C.D. Cal. Jan. 25, 2018) ...................................................26

*Ex parte Collett*,
337 U.S. 55 (1949) .............................................................................................19

*In re DePuy Orthopaedics, Inc.*,
870 F.3d 345 (5th Cir. 2017) .............................................................................12

*Dietz v. Bouldin*,
579 U.S. 40 (2016) .............................................................................................24

*In re Google Digital Advertising Antitrust Litig.*,
2023 WL 3828612 (J.P.M.L. June 5, 2023) .. 3, 10, 11, 13, 16, 17, 19, 20, 24, 25

*In re Howmedica Osteonics Corp.*,
867 F.3d 390 (3d Cir. 2017) ..............................................................................14

*I.N.S. v. Cardoza-Fonseca*,
480 U.S. 421 (1987).............................................................................................23

*Intell. Ventures II LLC v. FedEx Corp.*,
2017 WL 5630023 (E.D. Tex. Nov. 22, 2017)..................................................26

*In re Kaiser Aluminum Corp.*,
456 F.3d 328 (3d Cir. 2006) ..............................................................................23

*Landgraf v. USI Film Products*,
511 U.S. 244 (1994)...............................................................................3, 16, 17, 18

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
523 U.S. 26 (1998)..............................................................................................27

*Martin v. Hadix*,
527 U.S. 343 (1999).............................................................................................17

*Mathews v. Kidder, Peabody & Co.*,
161 F.3d 156 (3d Cir. 1998) ........................................... 3, 16, 17, 19, 20, 22, 23

*In re McGraw-Hill Global Educ. Holdings LLC*,
  909 F.3d 48 (3d Cir. 2018) ...............................................................14, 15

*In re Patenaude*,
  210 F.3d 135 (3d Cir. 2000) ................................................................21

*Plum Tree, Inc. v. Stockment*,
  488 F.2d 754 (3d Cir. 1973) ................................................................15

*Princeton Digit. Image Corp. v. Ubisoft Ent. SA*,
  2018 WL 3105062 (D. Del. June 25, 2018) .......................................26

*Red Carpet Studios v. Midwest Trading Grp., Inc.*,
  2018 WL 4300544 (S.D. Ohio Sept. 10, 2018) ..................................26

*Scheidemann v. I.N.S.*,
  83 F.3d 1517 (3d Cir. 1996) ................................................................22

*Schoen v. Mountain Producers Corp.*,
  170 F.2d 707 (3d Cir. 1948) ................................................................20

*Steven I. v. Cent. Bucks Sch. Dist.*,
  618 F.3d 411 (3d Cir. 2010) ................................................................17

*Swindell-Dressler Corp. v. Dumbauld*,
  308 F.2d 267 (3d Cir. 1962) ................................................................15

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  581 U.S. 258 (2017) .............................................................................26

*In re United States*,
  273 F.3d 380 (3d Cir. 2001) ................................................................14

*United States v. National City Lines, Inc.*,
  337 U.S. 78 (1949) ...............................................................................19

*Wachovia Bank, N.A. v. Schmidt*,
  546 U.S. 303 (2006) ..........................................................................5, 25

**Statutes**

28 U.S.C. § 1404(a) ...............................................................................19

28 U.S.C. § 1406 ..............................................................4, 6, 15, 25, 27

iii

28 U.S.C. § 1406(b) ...........................................................12, 25, 26, 27

28 U.S.C. § 1407 .................. 1, 4, 5, 6, 12, 13, 15, 18, 19, 20, 21, 23, 24, 26, 27, 28

28 U.S.C. § 1407(a) ...........................................................13, 21, 23, 26

28 U.S.C. § 1407(e) ...........................................................5

28 U.S.C. § 1407(g) ...........................................................3, 5, 9, 13, 18

28 U.S.C. § 1651(a) ...........................................................5

Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. GG, Title III, § 301, 136 Stat. 4459, 5970 ........................................10

**Rules**

J.P.M.L. R. 10.3(a) ...........................................................21

**Other Authorities**

168 Cong. Rec. H10528 (daily ed. Dec. 23, 2022) .................................23

168 Cong. Rec. S2935-36 (daily ed. June 14, 2022) ..............................22

168 Cong. Rec. S7752 (daily ed. Dec. 19, 2022) .................................22

## INTRODUCTION

Mandamus is an extraordinary remedy, but it is the only possible vehicle for correcting a clearly erroneous decision of the Judicial Panel on Multidistrict Litigation that threatens to unravel an active, years-old, multi-district litigation—over the opposition of the MDL court—by retroactively applying an amendment to the MDL statute, 28 U.S.C. § 1407, carving out antitrust actions brought by States. Absent mandamus, the JPML's erroneous statutory interpretation will go unreviewed, petitioners will suffer irreparable harm, and the progress and resolution of the underlying litigation will be hampered for years. None of that could be what Congress intended in making a modest revision to the MDL statute.

This mandamus petition arises from one of the most procedurally complex MDLs in history. The *In re Generic Pharmaceuticals Pricing Antitrust Litigation* MDL has been proceeding in the Eastern District of Pennsylvania since 2016. In the words of Judge Rufe, who has been presiding over the MDL for its entire existence, it is "sweeping in scope." The MDL comprises over fifty distinct actions brought by insurers, pharmacies, hospitals, local governments, and, especially relevant here, States and territories (together, "States"). The plaintiffs allege industry-wide price- and market-fixing conspiracies by manufacturers of generic drugs, distributors of generic drugs, and individuals—over fifty defendants in total—in violation of state and federal antitrust law.

The States have taken the lead in the litigation since their cases were transferred into the MDL in 2017. During that time, Judge Rufe has expended enormous effort organizing the MDL and facilitating its progress, often with the States at the center of her efforts. Judge Rufe has ruled on at least forty motions to dismiss, overseen a months-long bellwether selection process and extensive fact discovery that included production of tens of millions of documents and hundreds of depositions, appointed multiple Special Masters, and issued over 200 pretrial orders. At the States' request, Judge Rufe even structured the bellwether process around one of the State actions.

Now, after nearly six years at the forefront of the MDL, the States have asked the JPML to remand their actions to the District of Connecticut, where they were originally filed. The States sought this remand even though pretrial proceedings are ongoing and Judge Rufe is poised to make critical pretrial rulings—including rulings on *Daubert* and summary judgment motions—in the bellwether cases. After the States moved for remand, Judge Rufe took the extraordinary step of informing the JPML that the States are "fully integrated into and a key part of" the bellwether proceedings, and that remanding their cases would nullify a significant investment of judicial resources. The JPML nevertheless ordered remand because of a 2022 statutory amendment—known as the State Antitrust Enforcement Venue Act ("Venue Act")—providing that the MDL statute does not apply to federal antitrust

2

actions brought by the States.  Adhering to its prior decision in *In re Google Digital Advertising Antitrust Litig.*, 2023 WL 3828612 (J.P.M.L. June 5, 2023), the JPML applied the Venue Act retroactively to the States' pending actions and remanded them to the District of Connecticut, even though they were transferred into the MDL years before the Venue Act went into effect.

The JPML's application of the Venue Act to cases already transferred to an MDL violates the well-established presumption against retroactivity.  The JPML concluded in *Google*, and again here, that retroactive application was appropriate under *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), because the Venue Act established a "procedural" rule.  But the JPML ignored *Landgraf*'s statement that "the mere fact that a new rule is procedural does *not* mean that it applies to every pending case." *Id*. at 275 n.9 (emphasis added).  This Court has explained that "even procedural rules are subject to the presumption against retroactivity *in a case in which the procedures affected have already transpired*."  *Mathews v. Kidder, Peabody & Co.*, 161 F.3d 156, 161 n.8 (3d Cir. 1998) (emphasis added).  In other words, a new procedural rule should not be applied to undo actions that were permitted at the time, unless the statute expressly requires that result.

Here, the "procedures affected" by the Venue Act are transfers into an MDL for pretrial proceedings.  The Venue Act provides that "[n]othing in this section shall apply" to an antitrust action brought by a State, 28 U.S.C. § 1407(g), and nearly

every sentence in "this section," 28 U.S.C. § 1407, relates either to the composition of the JPML or its power to create MDLs and transfer cases into them.  Transfer by the JPML is the critical event that makes the MDL court an appropriate venue.  The Venue Act thus bars the transfer of covered antitrust actions into MDLs after its enactment date—but it does not undo lawful transfers from past years.  Indeed, Congress repeatedly rejected explicit statutory provisions that would have applied the Venue Act to actions already transferred into and pending in MDLs.

Moreover, even if the Venue Act applied retroactively, the JPML clearly erred by refusing to even consider whether the States had waived any venue objection under 28 U.S.C. § 1406 by continuing to actively litigate in the MDL for nearly a year after the Act's passage before seeking remand.  The JPML instead applied a waiver standard applicable to remand requests under 28 U.S.C. § 1407, and it held that because Section 1407 provides that cases must be remanded to the transferor court "at or before the conclusion of [the] pretrial proceedings," a party can only waive the right to a remand expressly, as when a party formally consents to trial in the MDL court.  But the States are *not* seeking a remand on the ground that the pretrial proceedings have run their course.  Instead, the States are arguing that remand is required because the MDL court is an improper venue in light of retroactive application of the Venue Act—*i.e.*, that Section 1407 does not apply at all, and so their actions never should have been transferred to the MDL court in the

first place. That argument, like any standard venue objection, can be "waived if not timely raised," *Wachovia Bank, N.A. v. Schmidt,* 546 U.S. 303, 316 (2006), which is readily the case here.

Congress' modest addition of three words to 28 U.S.C. § 1407(g) does not compel the unraveling of a complex MDL bellwether process that has been years in the making, particularly after months of delay by the States and despite the serious concerns of the presiding judge. This Court should grant the petition for a writ of mandamus and direct that the States' actions remain in the MDL.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over the petition for a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651(a), and the MDL statute, 28 U.S.C. § 1407, which provides that "[n]o proceedings for review of any order of the [P]anel may be permitted except by extraordinary writ" and that "[p]etitions for an extraordinary writ to review an order to transfer or orders subsequent to transfer shall be filed only in the court of appeals having jurisdiction over the transferee district," *id.* § 1407(e)—here, the Eastern District of Pennsylvania.

## ISSUES PRESENTED

1.     Whether the Venue Act, which provides that the MDL statute does not apply to antitrust actions brought by States, requires the remand of cases that were already transferred to and pending in an MDL at the time of the statute's enactment.

2.      Whether the JPML erred in applying the waiver standard applicable to motions for remand under 28 U.S.C. § 1407, rather than the waiver standard applicable to venue objections made under 28 U.S.C. § 1406.

## RELIEF SOUGHT

Defendants seek a writ of mandamus reversing the JPML's January 31, 2024 order that granted the States' motion to remand these actions to the District of Connecticut, and directing that the States' actions remain in the MDL in the Eastern District of Pennsylvania.

## STATEMENT OF FACTS

### A.  The State Actions Drive the Growth in the Size and Complexity of the MDL.

This MDL began in August 2016, when the JPML centralized ten pending actions in the Eastern District of Pennsylvania under Judge Rufe.  ECF 1.[1]  Since 2016, the size of the MDL has ballooned, as has its complexity, largely due to three actions that the States originally brought in the District of Connecticut:

- *Heritage* **Action.**  In August 2017, the JPML transferred to the MDL the claims of forty States alleging "suspicious price increases for certain generic pharmaceuticals."  Compl. ¶ 1, *Connecticut v. Aurobindo Pharma USA, Inc.*, No. 3:16-cv-2056-VLB ("*Connecticut*") (D. Conn. Dec. 15, 2016), ECF 1.  Four additional States that never filed claims in the District of Connecticut were later added as putative plaintiffs in the Eastern District of Pennsylvania.

---

[1] Unless otherwise noted, all docket citations are to the E.D. Pa. Docket for MDL No. 2724 (No. 2:16-md-02724-CMR).

- ***Teva* Action.**  In May 2019, the JPML transferred to the MDL a new complaint relating to generic pharmaceutical pricing filed by forty-four States.  Compl., *Connecticut v. Teva Pharms. USA, Inc.*, No. 3:19-cv-00710-MPS (D. Conn. May 10, 2019), ECF 1.  Nine additional States were later added as putative plaintiffs in the Eastern District of Pennsylvania without first filing in the District of Connecticut.

- ***Dermatology* Action.**  In June 2020, the JPML transferred to the MDL another complaint relating to generic pharmaceutical pricing, filed this time by fifty-one States.  Compl., *Connecticut v. Sandoz, Inc*., No. 3:20-cv-00802-SRU (D. Conn. June 10, 2020), ECF 1.  California was later added as a putative plaintiff in the Eastern District of Pennsylvania without first filing in the District of Connecticut.

These three State actions transformed the MDL.  The amended complaint in the *Heritage* action was the first to allege an overarching, industry-wide conspiracy relating to the prices of generic drugs.  That allegation greatly expanded the scope of the MDL.  It also prompted the filing of more than ten copycat complaints by other plaintiffs, of which at least five alleged an "overarching conspiracy."  *See, e.g.*, Compl., *Humana Inc. v. Actavis Elizabeth, LLC, et al.*, No. 18-cv-03299, ECF 1 ¶¶ 6, 11 (E.D. Pa., filed Aug. 3, 2018).

The *Teva* and *Dermatology* actions, for their part, significantly expanded the number of generic drugs at issue in the MDL.  The *Teva* action alone implicates 114 generic drugs, and the *Dermatology* action implicates a further eighty drugs.  As the MDL swelled to include more and more drugs, over thirty additional copycat complaints followed.  *See, e.g.*, Compl., *MSP Recovery Claims, Series LLC et al. v. Actavis Elizabeth LLC et al.*, No. 2:20-cv-00231, ECF 1-10 ¶¶ 14, 204 (E.D. Pa.,

filed Dec. 16, 2019) (alleging an overarching conspiracy and citing to the complaints in the *Heritage* and *Teva* actions).

In short, not only are the States' three actions themselves wide-ranging and complex; they have had an outsized impact on the MDL and increased the size and intricacy of the litigation as a whole.

## B. The MDL Court Expends Significant Resources as the States Take the Lead.

Over the course of more than six years, Judge Rufe has put an enormous amount of time and effort into managing this sprawling MDL. For example, to create a workable discovery process for the hundreds of drugs at issue, Judge Rufe created a tiered discovery schedule based on when a drug was added to the MDL, ensuring that early plaintiffs were not prejudiced by late filers. ECF 1135. And in 2018, Judge Rufe appointed three Special Masters to streamline discovery and non-dispositive legal issues. ECF 667. Judge Rufe has also ruled on at least forty motions to dismiss (*see, e.g.*, ECF 722, 858, 2084), numerous discovery disputes (*see, e.g.*, ECF 2215), and the contentious bellwether selection and scheduling processes (*see, e.g.*, ECF 1442, 1687, 1769, 1901). Judge Rufe's engagement with and investment in the MDL is such that, more than a year ago, she held an extensive tutorial where the parties had an opportunity to educate her on the pharmaceutical industry and pricing. *See* ECF 2214.

Judge Rufe has centered the discovery and bellwether processes around the State actions, reflecting their outsized importance to and influence on the litigation as a whole. Judge Rufe selected bellwethers to cover two tracks—an overarching conspiracy and single-drug conspiracies. ECF 1442 at 5. The States' *Dermatology* action is the bellwether case for overarching conspiracy allegations and, as such, has long been at the forefront of the MDL.[2] In the *Dermatology* action alone, Judge Rufe has ruled on twelve motions to dismiss. *E.g.*, No. 2:20-cv-03539-CMR, ECF Nos. 113-125, 248. The States have also taken the lead or participated in at least eighty depositions. More than a dozen State depositions remain to be taken, several State document productions remain outstanding, numerous discovery motions are still pending, one motion to dismiss state claims remains pending, and expert discovery is continuing. Non-bellwether fact discovery, including for the *Heritage* and *Teva* actions, is continuing as well.

## C. Congress Passes the Venue Act, But the States Continue to Litigate for Nearly a Year.

On December 29, 2022, President Biden signed into law a Consolidated Appropriations Bill that included the Venue Act. The Act amended 28 U.S.C. § 1407(g) to add the words "or a State" as follows: "Nothing in this section shall

---

[2] Judge Rufe originally selected the States' *Teva* action as the "overarching conspiracy" bellwether, but upon the States' urging, selected the *Dermatology* action instead. ECF 1702.

apply to any action in which the United States *or a State* is a complainant arising under the antitrust laws," defined as three federal antitrust statutes. *See* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. GG, Title III, § 301, 136 Stat. 4459, 5970 (emphasis added). While prior versions of the bill included provisions expressly applying the Act to pending cases, *see e.g.*, S. 1787, 117th Cong. (as introduced, May 24, 2021), the Act as passed did not.

For nearly a year after the Venue Act became law, Judge Rufe and the parties continued to expend considerable resources on the States' cases, particularly the bellwether *Dermatology* action. The States participated in extensive affirmative and defensive discovery during this period. The States and their relevant agencies sat for numerous depositions, and counsel for the States took the lead on several significant depositions, including those of cooperating witnesses. The States also litigated numerous discovery disputes during this period. *See*, *e.g.,* ECF 2592.

### D. The JPML Grants the States' Motion to Remand Despite Judge Rufe's Concerns.

Only on November 1, 2023, after all of this activity in the MDL court, did the States move the JPML to remand their actions to the District of Connecticut. The States' motion relied on the JPML's prior decision in *Google*, which held that the Venue Act "applies to state antitrust enforcement actions pending in MDLs" and that remand of such cases "is required." 2023 WL 3828612, at *3. Defendants opposed remand on the grounds that the States had waived their right to seek remand and that

the JPML had erred in *Google* by holding that the Venue Act applies retroactively and requires the remand of cases pending in MDLs at the time of enactment.

While the remand motion was pending, Judge Rufe issued a report to the JPML "in light of the Motion to Remand filed by the Plaintiffs in the State Actions." A1.[3]  Judge Rufe noted that the MDL had become "sweeping in scope" and "[t]o manage all of the[ ] disparate claims as effectively as possible, the MDL had been structured to move all cases forward, with five bellwether cases taking the lead." A2.  The "State Attorneys General have been active counsel throughout the MDL," she observed, "and particularly so in the bellwether litigation, where the Dermatology Action is the most expansive of the cases."  A3.

Judge Rufe explained that "there is still much that can be accomplished through coordinated pretrial proceedings" and informed the JPML of the substantial work planned for the bellwether cases this year, "including expert discovery, expert reports, *Daubert* motions, and summary judgment." *Id.*  Judge Rufe and the Special Masters she had appointed are well positioned to oversee those proceedings, as they "have developed significant knowledge with regard to the cases and the generic pharmaceutical industry." *Id.*

---

[3] Judge Rufe's Status Order and the JPML's Remand Order are contained in the appendix to this petition.  *See* A1-A13.

In conclusion, Judge Rufe informed the JPML that "under traditional 28 U.S.C. § 1407 considerations"—*i.e.*, the MDL statute—"this Transferee Court would not recommend that the State Actions be transferred at this time, as the State Actions continue to be actively litigated within the MDL.  This is particularly true as to the bellwether State Action, which is fully integrated into, and a key part of, the bellwether proceedings."  A4.

Despite this report from Judge Rufe, the JPML granted the States' motion to remand on January 31, 2024.  A5-A13.  First, the JPML declined to apply "the standard for waiver of an objection to venue set forth in 28 U.S.C. § 1406(b)—namely, that an objection to venue must be raised in a timely and sufficient manner."  A6.  Instead, the JPML determined that "a different standard is required" in the context of the MDL statute, which provides that "transferred actions '*shall be remanded* … at or before the conclusion of [the] pretrial proceedings.'"  *Id*. (quoting *In re DePuy Orthopaedics, Inc.*, 870 F.3d 345, 351 (5th Cir. 2017)).  Because the use of mandatory language "creates a statutory presumption *against* waiver," the JPML concluded that the standard for waiver of the right to remand "must, at a minimum, require that a party take some affirmative action that clearly demonstrates the party's intent to waive its statutory right to remand."  *Id*. at A7.  Without any such affirmative action by the States, the JPML declined to find waiver.

Second, the JPML adhered to its decision in *Google* and held that the Venue Act applies retroactively and requires remand of State-brought antitrust actions already transferred to and pending in MDLs.  The JPML briefly addressed the argument, which it had ignored entirely in *Google*, that the presumption against retroactivity bars the application of the Venue Act to cases pending in MDLs because "the procedures affected" by the Act—*i.e.*, transfers into an MDL—"have already occurred."  *Id.* at A10.  "Transfer under Section 1407 does not fit into this exception," the JPML reasoned, "because such transfers are for pretrial purposes only and cases transferred are always subject to remand."  *Id.*

Accordingly, the JPML ordered the three State actions remanded to the District of Connecticut.  The JPML acknowledged that because it chose to apply the Venue Act to cases pending in MDLs, a plain reading of the statute would "deprive[] the [JPML] both of its authority to transfer state antitrust enforcement actions *and* its authority to remand such actions."  *Id.* (emphasis added).  The Venue Act provides that "[n]othing" in the MDL statute applies to state-antitrust actions, 28 U.S.C. § 1407(g), which would include the JPML's power to "remand[ ]" cases "at or before the conclusion of [the] pretrial proceedings," *id.* § 1407(a).  Nevertheless, the JPML rejected that logical consequence of its own interpretation of the statute as "absurd" and invoked its "inherent authority" to remand actions that "no longer belong" in an MDL.  A10 (quoting *Google*, 2023 WL 3828612, at *3).

13

Defendants filed an emergency motion with the JPML to stay the remand order pending the filing of a petition for writ of mandamus to this Court. J.P.M.L. No. 2724 ECF 528. The JPML granted an administrative stay of the order on February 5, and it stated that it would consider Defendants' stay motion on March 28. J.P.M.L. No. 2724 ECF 530.

## REASONS WHY THE WRIT SHOULD ISSUE

This Court will grant mandamus relief "upon a showing of (1) a clear abuse of discretion or clear error of law; (2) a lack of an alternative avenue for adequate relief; and (3) a likelihood of irreparable injury." *In re McGraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 56 (3d Cir. 2018). "In the venue transfer context," however, "the three-factor mandamus test collapses into the first factor" because "transfer orders 'as a class' meet the second and third requirements." *Id.* (quoting *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 401 (3d Cir. 2017)). The second requirement is met because an appeal after final judgment in the transferee court cannot undo the improper transfer, and the third requirement is met because "an erroneous transfer may result in 'judicially sanctioned irreparable procedural injury.'" *Id.* (quoting *Howmedica*, 867 F.3d at 401). This Court has granted mandamus relief to halt improper transfers on multiple occasions. *See In re United States*, 273 F.3d 380, 385 (3d Cir. 2001) (issuing writ of mandamus "to compel a district court to vacate an order transferring a case to another district"); *In re*

14

*Howmedica*, 867 F.3d at 405 (holding "that a writ of mandamus [was] warranted" where lower court's transfer order rested on "clear and indisputable errors"); *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 (3d Cir. 1973) (issuing writ of mandamus to correct erroneous transfer); *Swindell-Dressler Corp. v. Dumbauld*, 308 F.2d 267, 274-75 (3d Cir. 1962) (same).

Defendants are entitled to mandamus relief, therefore, upon a showing that the JPML's order remanding the State actions to the District of Connecticut is based on a clear error of law "approach[ing] the magnitude of an unauthorized exercise of judicial power." *McGraw-Hill*, 909 F.3d at 57 (citation omitted). Defendants meet that burden for two independent reasons: first, because the JPML's decision is based on its erroneous retroactive application of the Venue Act, in contravention of the retroactivity jurisprudence of the Supreme Court and this Court; and second, because the JPML flatly erred in applying the Section 1407 standard for waiver of the right to remand rather than the Section 1406 standard for the waiver of venue objections. With either of those clear errors of law corrected, there is no basis for the remand, as Judge Rufe has made clear that a transfer would otherwise be inappropriate because pretrial proceedings have not concluded.

## I. The Venue Act Does Not Require Remand Of Cases Already Transferred Into And Pending In MDLs.

The "presumption against retroactive legislation" is rooted in "[e]lementary considerations of fairness" and the principle that "settled expectations should not be

15

lightly disrupted." *Landgraf*, 511 U.S. at 265. If Congress wishes to "reach[] back in time to upset settled expectations, it must do so unequivocally and in a way that assures [the court] that it has seriously considered the consequences of such action." *Mathews*, 161 F.3d at 170.

This Court conducts a three-step analysis when deciding whether to apply a new statute to pending cases. At the first step, the Court asks whether the statute contains an "unambiguous directive" regarding its "temporal reach." *Id.* at 168-69. If there is no such "clear statement," then at the second step, the Court asks whether, using "normal statutory construction rules," there is "congressional intent to *not* apply a statute retrospectively" (or, put differently, "congressional intent to only apply a statute prospectively"). *Id.* at 161. If the Court finds no intent to only apply a statute prospectively, then at the third step, it "look[s] at the effect that the statute will have" if applied to pending cases. *Id.* If it would have a "retroactive effect"— *i.e.*, if it would alter the legal consequences of some act taken under the old legal regime—then the presumption against retroactivity applies with full force, and only "Congress's *clear* intent to apply the statute retrospectively will overcome the presumption." *Id.*

Relying on its *Google* decision, the JPML concluded at the third step of the *Mathews* framework that the Venue Act did not have "retroactive effect," and thus the presumption against retroactivity does not apply, because the Act created a

"procedural rule" that does not govern primary conduct. A10 (citing *Google*, 2023 WL 3828612, at *2–3). The JPML thus determined that there were no legitimate concerns with applying the Act to pre-enactment pending cases. *Id.*; *see also Google*, 2023 WL 3828612, at *2 ("We find that the Section 1407(g) amendment is a … procedural provision as it affects the venue for pretrial proceedings, in contrast to regulating primary conduct. Thus, the amendment applies[.]").

That reasoning is manifestly wrong. The Supreme Court made clear in *Landgraf* that "the mere fact that a new rule is procedural does not mean that it applies to every pending case." 511 U.S. at 275 n.29; *accord Martin v. Hadix*, 527 U.S. 343, 359 (1999) ("When determining whether a new statute operates retroactively, it is not enough to attach a label (*e.g.*, 'procedural,' 'collateral') to the statute."). In particular, *Landgraf* noted that the presumption against retroactivity counsels against applying a procedural change to undo the earlier, lawful use of the old procedure: "A new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed," the Court observed, and "a new rule of evidence would not require an appellate remand for a new trial." 511 U.S. at 275 n.29. Applying *Landgraf*, this Court has likewise explained that "procedural rules are subject to the presumption against retroactivity in a case in which the procedures affected have already transpired." *Mathews*, 161 F.3d at 161 n.8; *see also Steven I. v. Cent. Bucks Sch. Dist.*, 618 F.3d 411, 414 n.7

17

(3d Cir. 2010) (noting that "concerns about retroactivity are … applicable to procedural rules" when "the secondary conduct governed by" the new rule occurred before "its effective date").[4]

The Venue Act has "retroactive effect," and thus the presumption against retroactivity applies, because the "procedures affected" by the Act—transfers into an MDL—occurred before the Venue Act's passage.  Applying the Act to those transfers now would undo them entirely.  The Venue Act amended 28 U.S.C. § 1407(g) to provide that "[n]othing in this section shall apply to any action in which the United States or a State is a complainant arising under the antitrust laws."  "[T]his section," meaning Section 1407—the MDL statute—is overwhelmingly focused on the power of the JPML to transfer cases to MDL courts.  That focus is evident from the beginning of the statute.  Subsection (a) states that "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions *may be transferred* to any district for coordinated or consolidated pretrial proceedings" and that "*[s]uch transfers shall be made* by the [Panel]."  Subsection (b) provides that the "coordinated or consolidated pretrial proceedings

---

[4] As Justice Scalia explained in his *Landgraf* concurrence, "[t]he critical issue" in assessing the retroactivity of any new rule, including procedural rules, is "what is the relevant activity that the rule regulates."  511 U.S. at 291 (Scalia, J., concurring in the judgment).  Absent a clear statement otherwise, "only such relevant activity which occurs after the effective date of the statute is covered."  *Id.*

shall be conducted by *a judge or judges to whom such actions are assigned by the [Panel]*," making clear that transfer by the JPML is the key event that makes the "transferee" court an appropriate venue. Subsection (c) sets forth the procedures that parties must follow in filing a motion to transfer an action into an MDL and that the JPML must follow in deciding such motions. Subsections (d), (e), and (f) relate, respectively, to the composition of the JPML, the proper means of obtaining review of its decisions, and its power to prescribe rules of conduct and procedure.

The "procedures affected" here by Section 1407, and thus by the Venue Act, are the transfers that centralized the State actions in the MDL court. Those transfers "have already transpired," *Mathews*, 161 F.3d at 161 n.8; they happened years before the Venue Act was signed into law. Applying the Venue Act to unwind those transfers, and to prevent the MDL court from concluding the pretrial proceedings it has spent years overseeing, plainly has a "retroactive effect" that triggers the presumption against retroactivity and bars such application of the Act. *Id.* at 161.

The contrast with *Ex parte Collett*, 337 U.S. 55 (1949), and *United States v. National City Lines, Inc.*, 337 U.S. 78 (1949), two decisions on which the JPML relied in *Google*, is instructive. *See* 2023 WL 3828612, at *2-3. In those decisions, the Supreme Court allowed parties to *request* transfers for *forum non conveniens* under 28 U.S.C. § 1404(a) in cases that were pending at the time of the statute's enactment. Allowing parties to make that previously unavailable argument for

19

transfer did not, however, undo any action previously taken in the litigation. As this Court made clear when it addressed the same issue, the new rules permitting such transfers were "applicable only to the extent that they relate to procedural steps which had not been taken in those actions prior to [the enactment date]." *Schoen v. Mountain Producers Corp.*, 170 F.2d 707, 714 (3d Cir. 1948).

Here, by contrast, the JPML held that the Venue Act nullifies transfers of the State actions to the MDL that *have already occurred*. The JPML's application of the Venue Act to procedures that have "already transpired" thus creates a "retroactive effect" that implicates the presumption against retroactivity. *Mathews*, 161 F.3d at 161 & n.8. And because the Venue Act does not contain any "*clear* intent to apply the statute retrospectively" that would overcome the "strong presumption against" retroactive application of statutes—the States and JPML have never contended otherwise—the presumption applies and compels reversal of the JPML's remand order. *Mathews*, 161 F.3d at 161.

The JPML acknowledged in this case that the presumption against retroactivity applies to procedural rules "where the procedures affected have already occurred," A10, although it ignored the argument entirely when it first applied the Venue Act in *Google*. The JPML reasoned that "[t]ransfer under Section 1407 does not fit into this exception, however, because such transfers are for pretrial purposes only and cases transferred are always subject to remand." *Id*.

20

The JPML's response is a *non sequitur*. To be sure, an action transferred into an MDL is always subject to an eventual remand, but it is not subject to remand at any time, simply upon one party's request—a rule that would effectively make participation in MDLs optional. Instead, an action will be remanded to its original court only once the transferee court has concluded the "coordinated or consolidated pretrial proceedings" that the MDL statute requires it to conduct. 28 U.S.C. § 1407(a); *see In re Patenaude*, 210 F.3d 135, 146 (3d Cir. 2000) (denying petition for writ of mandamus seeking remand because, given continued activity in the MDL court, "coordinated pretrial proceedings have not concluded, and the plaintiffs have not demonstrated a clear and indisputable right to the relief they seek"). The JPML itself observed that Section 1407 creates a "default" rule "that an action is remanded to its transferor court *at the conclusion of pretrial proceedings*," A7 (emphasis added), and the JPML acknowledged that the State actions are "not approaching trial or even the conclusion of pretrial proceedings," A8. The JPML's own rules, moreover, advise parties that it "is reluctant to order a remand absent the suggestion of the transferee judge." J.P.M.L. R. 10.3(a). Not only has the transferee court not "suggest[ed]" a remand here, Judge Rufe has made clear that she would *not* recommend a remand and has serious concerns about the disruption and waste that a remand would create. It is beyond dispute that, in these circumstances, a remand under Section 1407 would ordinarily not be warranted.

The only reason for a remand, then, is the JPML's determination that the MDL court can no longer be a proper venue in light of the Venue Act. And it is only possible to make that determination by concluding that the Venue Act retroactively renders invalid the original transfer to the MDL court, which gave the MDL court the statutory mandate to conduct consolidated pretrial proceedings. That application of a new rule to a procedure that "ha[s] already transpired" violates the presumption against retroactivity and must be set aside. *Mathews*, 161 F.3d at 161 n.8.

Application of the presumption against retroactivity is particularly appropriate in this case because Congress repeatedly removed language from the Venue Act that would have applied the Act to pending cases, thus creating a "negative inference" that Congress intended for the statute to only apply prospectively. *Id.* at 163; *see also Scheidemann v. I.N.S.*, 83 F.3d 1517, 1521 (3d Cir. 1996) (noting that "a court may determine congressional intent from the statutory text, by necessary implication from the statute taken as a whole, or from the statute's legislative history"). Both the House and Senate deleted an effective-date provision that would have made the statute apply to cases filed before the statute's enactment, explaining that the "[p]urpose" of that amendment was "[t]o strike the retroactive effective date." 168 Cong. Rec. S2935-36 (daily ed. June 14, 2022). A separate provision expressly applying the Act to "any matter pending on … the date of enactment" was introduced after the reconciliation process, but Congress again removed it. *See* 168 Cong. Rec.

22

S7752 (daily ed. Dec. 19, 2022) (bill with retroactivity provision); 168 Cong. Rec. H10528 (daily ed. Dec. 23, 2022) (final version of bill omitting this provision).

Neither the States nor the JPML have offered any plausible explanation for why Congress would have deleted these retroactivity provisions had Congress intended the statute to apply retroactively. "Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 442-3 (1987). Congress's deletion of express retroactivity provisions in the Venue Act shows a clear intent to apply the statute prospectively only. *See Mathews*, 161 F.3d at 163.

Congress's intent to apply the Venue Act prospectively is clearer still given that the contrary interpretation would yield absurd results. *See In re Kaiser Aluminum Corp.*, 456 F.3d 328, 330 (3d Cir. 2006) ("A basic principle of statutory construction is that [courts] should avoid a statutory interpretation that leads to absurd results."). The Venue Act provides that "[n]othing" in Section 1407 applies to antitrust actions brought by States, and the JPML's authority to remand MDLs "at or before the conclusion of … pretrial proceedings" derives from Section 1407(a). Thus, if the Venue Act retroactively applies to pending cases, as the JPML held, it would deprive the JPML of authority to remand pending, State-brought antitrust cases to their original forums—including the States' actions here.

The JPML acknowledged in *Google*, and again in its decision here, that interpreting the Venue Act "to eliminate the possibility of remand to [the original] forum yields an absurd result that is the exact opposite of the statute's purpose." 2023 WL 3828612, at *3; A10. The JPML did not accept that this absurd consequence undermined its decision to apply the Act retroactively, however. Instead, it declared Defendants' "proposed solution"—applying the Venue Act only prospectively—"not persuasive." A10-A11.

But that is circular reasoning. Defendants' interpretation avoids the very absurdity that the JPML's construction creates. By contrast, the JPML's only way out of the logical implication of its own retroactivity determination eliminating Section 1407 as a basis for remand was to invoke its "inherent authority" to remand actions that "no longer belong" in an MDL. *Id.* at A10 (quoting *Google*, 2023 WL 3828612, at *3). Yet "the exercise of an inherent power cannot be contrary to any express grant of or limitation on the … power contained in a rule or statute." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016). If "[n]othing" in Section 1407, including its remand provision, is applicable because of the Venue Act, that statutory limitation cannot be circumvented by invoking an "inherent power" to remand.

Rather than twist both the statute and canons of construction in knots, the best way to avoid the absurd result created by the JPML's interpretation, and to preserve the JPML's ability to remand pending State-brought antitrust cases at the appropriate

24

time, is to adopt Defendants' interpretation of the Venue Act—as applying only prospectively to cases that have not already been transferred to an MDL court. That interpretation follows from the presumption against retroactivity and the text of the Venue Act, is confirmed by the legislative history, and preserves the effective operation of the MDL statute as a whole.

## II.  The States Waived Their Venue Objection Under 28 U.S.C. § 1406.

Even if the Venue Act applied retroactively, the States would not be entitled to remand because they continued to litigate in the MDL court for nearly a year after the Act's passage, thereby waiving any venue objection. Venue "is largely a matter of litigational convenience" and thus "is waived if not timely raised." *Wachovia*, 546 U.S. at 316; *see* 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue."). The Venue Act became law on December 29, 2022. In the *Google* MDL, the State plaintiffs moved for remand fewer than two months later. But here, the States inexplicably waited until November 1, 2023—over ten months—before filing their remand motion. During those ten months, the States actively participated in the MDL, putting up witnesses for dozens of depositions and litigating dozens more discovery disputes. Many courts have found waiver in almost identical circumstances, where parties waited for

25

several months to seek a transfer after a change in law that they claimed made the current court an improper venue.[5]

The JPML did not dispute that the States' ten-month delay would ordinarily waive any venue objection under the standard "set forth in 28 U.S.C. § 1406(b)—namely, that an objection to venue must be raised in a timely and sufficient manner." A6. But the JPML determined that it should instead apply "the standard for a party to waive its right to Section 1407 remand." *Id.* Because Section 1407 mandates that cases transferred into MDLs "*shall be remanded* … at or before the conclusion of [the] pretrial proceedings," 28 U.S.C. § 1407(a) (emphasis added), the JPML observed that the statute creates a "presumption *against* waiver—the default under the statute is that an action is remanded to its transferor court at the conclusion of pretrial proceedings." A7. To waive the right to remand, therefore, the JPML

---

[5] *See Intell. Ventures II LLC v. FedEx Corp.*, 2017 WL 5630023, at *3 (E.D. Tex. Nov. 22, 2017) (finding waiver of venue objection where party "continued actively litigating" for "more than two months" after the Supreme Court's decision in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258 (2017), before seeking transfer); *Princeton Digit. Image Corp. v. Ubisoft Ent. SA*, 2018 WL 3105062, at *5 (D. Del. June 25, 2018) (party "forfeited its right to assert the lack-of-venue defense by continuing to litigate this case and actively seeking rulings from this Court for approximately eight months after the *TC Heartland* decision was issued"); *Red Carpet Studios v. Midwest Trading Grp., Inc.*, 2018 WL 4300544, at *2 (S.D. Ohio Sept. 10, 2018) (venue objection forfeited where defendants waited six months after change in law); *Akeso Health Scis., LLC v. Designs for Health, Inc.*, 2018 WL 2558420, at *3 (C.D. Cal. Jan. 25, 2018) (venue objection forfeited where party waited "nearly seven months" after change in law, during which time it "actively litigated the case").

26

concluded that a party must take "some affirmative action that clearly demonstrates the party's intent to waive," such as when a party explicitly consents to trial in the MDL court—so-called "*Lexecon* waivers."  *Id.* at 3; *see Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

The JPML clearly erred in applying the Section 1407 standard for waiver of the right to remand, rather than the Section 1406 standard for the waiver of venue objections.  As noted, *see* pp.___, *supra*, the JPML itself acknowledged that Section 1407 creates a "default" rule "that an action is remanded to its transferor court *at the conclusion of pretrial proceedings*," A7 (emphasis added); it also observed that the State actions are "not approaching trial or even the conclusion of pretrial proceedings."  A8.  It follows from those two undisputed facts that a remand under Section 1407 is clearly *not* warranted at this time.  The only possible basis for a transfer to the District of Connecticut at this time is Section 1406(a), which permits transfer from an improper venue to a proper one.  Indeed, by their own retroactivity argument, the States could not obtain a remand under Section 1407, because according to the Venue Act, "[n]othing" in Section 1407 is applicable to their actions, including Section 1407's remand provision.

Accordingly, rather than anything related to Section 1407, the waiver standard of Section 1406(b) governs the States' transfer request, and that provision requires that venue objections be raised "in a timely and sufficient manner."  Because the

27

States waited ten months before challenging venue, while continuing to actively litigate in the MDL court, their objection is waived. The JPML's application of the Section 1407 waiver standard to find no waiver is plain error, and this Court's intervention is necessary to prevent the waste of party and judicial resources that will result if the States succeed in leveraging a three-word statutory amendment to upend a years-old MDL.

## CONCLUSION

The Court should grant the petition and issue a writ of mandamus reversing the JPML's remand order and directing that the States' actions remain in the Eastern District of Pennsylvania.

Respectfully submitted,

Dated: February 14, 2024

/s/ Devora W. Allon
DEVORA W. ALLON
  *Counsel of Record*
KIRKLAND & ELLIS LLP
601 LEXINGTON AVENUE
NEW YORK, NY 10022
(212) 446-4800

GEORGE W. HICKS, JR.
KIRKLAND & ELLIS LLP
1301 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20004
(202) 389-5000

*Counsel for Upsher-Smith*
  *Laboratories, LLC*


/s/ Sheron Korpus
Sheron Korpus
Seth B. Davis
Seth A. Moskowitz
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
skorpus@kasowitz.com
sdavis@kasowitz.com
smoskowitz@kasowitz.com

*Counsel for Actavis Elizabeth, LLC,*
  *Actavis Holdco U.S., Inc., and*
  *Actavis Pharma, Inc.*

*/s/ Robin P. Sumner*
Robin P. Sumner
Michael J. Hartman
TROUTMAN PEPPER HAMILTON
SANDERS LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
Telephone: (215) 981-4000
robin.sumner@troutman.com
michael.hartman@troutman.com

*Counsel for Amneal Pharmaceuticals, Inc.*
    *and Amneal Pharmaceuticals, LLC*


*/s/ James T. McKeown*
James T. McKeown
Elizabeth A. N. Haas
FOLEY & LARDNER LLP
777 E. Wisconsin Avenue
Milwaukee, WI 53202
Tel:  (414) 271-2400
Fax:  (414) 297-4900
jmckeown@foley.com
ehaas@foley.com

Steven F. Cherry
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Tel: (202) 663-6000
Fax: (202) 663-6363
steven.cherry@wilmerhale.com

*Counsel for Apotex Corp.*

30

/s/ Fabien M. Thayamballi
Fabien M. Thayamballi
Shapiro Arato Bach LLP
1140 Avenue of the Americas
17th Floor
New York, New York 10036
(212) 257-4880
fthayamballi@shapiroarato.com

*Counsel for Ara Aprahamian*


/s/ W. Gordon Dobie
W. Gordon Dobie
Frank A. Battaglia
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
wdobie@winston.com

Irving Wiesen
LAW OFFICES OF IRVING L. WIESEN,
P.C.
420 Lexington Ave. – Suite 2400
New York, NY 10170
Tel: (212) 381-8774
Fax: (646) 536-3185
iwiesen@wiesenlaw.com

*Counsel for Ascend Laboratories, LLC*

s/ *Nathan E. Denning*
Nathan E. Denning
Chloe S. Booth
WIGGIN AND DANA LLP
437 Madison Avenue, 35th Floor
New York, NY 10022
Tel: (212) 551-2600
Fax (212) 551-2888
ndenning@wiggin.com

Benjamin H. Diessel
Emmett F. Gilles
Christopher Bailes
Ariela C. Anhalt
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
New Haven, CT 06510
Tel: (203) 498-4400
Fax: (203) 782-2889
bdiessel@wiggin.com
egilles@wiggin.com
cbooth@wiggin.com
cbailes@wiggin.com
aanhalt@wiggin.com

*Counsel for Aurobindo Pharma*
*U.S.A., Inc.*

/s/ Robin D. Adelstein
Robin D. Adelstein
Mark A. Robertson
Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10019-6022
Tel.: 212-318-3000
robin.adelstein@nortonrosefulbright.com
mark.robertson@nortonrosefulbright.com

*Counsel for Bausch Health Americas, Inc. and Bausch Health US, LLC*


/s/ Michelle N. Lipkowitz
Michelle N. Lipkowitz
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
555 12th Street NW, Suite 1100
Washington, DC 20004
(202) 434-7448
MNLipkowitz@mintz.com

*Counsel for Mitchell S. Blashinsky*


/s/ Guy Petrillo
Guy Petrillo
Christina Karam
PETRILLO KLEIN & BOXER LLP
655 Third Ave.
22nd Floor
New York, NY 10017
(212) 370-0330

*Counsel for Douglas Boothe*

/s/ Larry H. Krantz

Larry H. Krantz
KRANTZ & BERMAN LLP
747 Third Avenue, 32nd Floor
New York, New York 10017
(212) 661-0009
lkrantz@krantzberman.com

*Counsel for James Brown*


/s/ Thomas H. Suddath, Jr.

Thomas H. Suddath, Jr.
REED SMITH LLP
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone:  215-851-8100
Facsimile:  215-851-1420
tsuddath@reedsmith.com

*Counsel for Maureen Cavanaugh*


/s/ Steven E. Bizar

Steven E. Bizar
John P. McClam
Agnese Nadalini
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-4000
steven.bizar@dechert.com
john.mcclam@dechert.com
agnese.nadalini@dechert.com

*Counsel for Citron Pharma, LLC*

*/s/ Roger B. Kaplan*

Roger B. Kaplan

Jason Kislin

Aaron Van Nostrand

GREENBERG TRAURIG, LLP

500 Campus Drive, Suite 400

Florham Park, New Jersey 07932

Telephone:  (973) 360-7900

Facsimile:  (973) 301-8410

kaplanr@gtlaw.com

Brian T. Feeney

1717 Arch Street, Suite 400

Philadelphia, PA 19103

Telephone:  (215) 988-7812

Facsimile:  (215) 717-5265

brian.feeney@gtlaw.com

*Counsel for Dr. Reddy's Laboratories, Inc.*

/s/ Dimitra Doufekias

Dimitra Doufekias
Megan E. Gerking
Robert W. Manoso
Aaron Scheinman
Megan S. Golden
MORRISON & FOERSTER LLP
2100 L Street, NW Suite 900
Washington, DC 20037
Tel.: (202) 887-1500
Fax: (202) 887-0763
ddoufekias@mofo.com
mgerking@mofo.com
rmanoso@mofo.com
ascheinman@mofo.com
megangolden@mofo.com

Michael B. Miller
Benjamin E. Campbell
MORRISON & FOERSTER LLP
250 W 55th Street
New York, NY 10019
Tel.: (212) 468-8000
Fax: (212) 468-7900
mbmiller@mofo.com
bcampbell@mofo.com

*Counsel for Glenmark
    Pharmaceuticals Inc., USA*

_/s/ Robert E. Connolly_
Robert E. Connolly
LAW OFFICE OF ROBERT E.
CONNOLLY
1735 Market Street
Suite A, #469
Philadelphia, PA 19103
(215) 219-4418
bob@reconnollylaw.com

_Counsel for James Grauso_


_/s/ Robert E. Welsh, Jr._
Robert E. Welsh, Jr.
Richard D. Walk, III
WELSH & RECKER, P.C.
306 Walnut Street
Philadelphia, PA 19106
Tel: (215) 972-6430
Fax: (985) 617-1021
rewelsh@welshrecker.com
rwalk@welshrecker.com

_Counsel for Kevin Green_


_/s/ George Gordon_
George G. Gordon
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104-2808
Tel.: (215) 994-2000
Fax: (215) 994-2240
george.gordon@dechert.com

_Counsel for Lannett Company, Inc._

37

*/s/ Colin Kass*
Colin R. Kass
Proskauer Rose LLP
1001 Pennsylvania Ave, NW
Suite 600 South
Washington, DC 20004
Telephone: (202) 416-6890
Facsimile: (202) 416-6899
ckass@proskauer.com

Bradley I. Ruskin
David A. Munkittrick
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
bruskin@proskauer.com
dmunkittrick@proskauer.com

Leiv Blad
Meg Slachetka
Competition Law Partners
1101 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 742-4300
leiv@competitionlawpartners.com
meg@competitionlawpartners.com

*Counsel for Lupin*
    *Pharmaceuticals, Inc.*

*/s/ Adam Farbiarz*
Adam Farbiarz
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3000
afarbiarz@proskauer.com

*Counsel for Rajiv Malik*

38

/s/ Brian J. Smith
Brian J. Smith
K&L Gates LLP
70 W. Madison St., Suite 3300
Chicago, IL 60602
P: 312.807.4202
brian.j.smith@klgates.com

*Counsel for Mayne Pharma Inc.*


/s/ Benjamin F. Holt
Benjamin F. Holt
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
benjamin.holt@hoganlovells.com

Jasmeet K. Ahuja
HOGAN LOVELLS US LLP
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
jasmeet.ahuja@hoganlovells.com

*Counsel for Mylan Defendants*


/s/ Peter M. Ryan
Peter M. Ryan
COZEN O'CONNOR P.C.
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: (215) 665-2130
Facsimile: (215) 701-2157
pryan@cozen.com

*Counsel for James Nesta*

_/s/ J. Clayton Everett, Jr._
J. Clayton Everett, Jr.
MORGAN, LEWIS & BOCKIUS
LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: +1.202.739.3000
Facsimile: +1.202.739.3001
clay.everett@morganlewis.com
william.cravens@morganlewis.com

Harvey Bartle IV
MORGAN, LEWIS & BOCKIUS
LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: +1.215.963.5000
Facsimile: +1.215.963.5001
harvey.bartle@morganlewis.com

_Counsel for Perrigo New York, Inc._


_/s/ Margaret A. Rogers_
Margaret A. Rogers
ARNOLD & PORTER KAYE
SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: +1 212.836.8000
Fax: +1 212.836.8689
Margaret.Rogers@arnoldporter.com

_Counsel for Sandoz Inc. and_
_Fougera Pharmaceuticals Inc._

/s/ Jeffrey Brown
Jeffrey Brown
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
Telephone: (212) 698-3511
Facsimile: (212) 698-3599
jeffrey.brown@dechert.com

*Counsel for Dave Rekenthaler*


/s/ Calli J. Padilla
Stephen A. Miller
Calli J. Padilla
COZEN O'CONNOR P.C.
1650 Market Street
Suite 2800
Philadelphia, PA 19103
(215) 665-6938
(215) 253-6777 (fax)
samiller@cozen.com
cpadilla@cozen.com

*Counsel for Richard Rogerson*

/s/ Alison Tanchyk
J. Gordon Cooney, Jr.
John J. Pease III
Alison Tanchyk
William T. McEnroe
Zachary M. Johns
MORGAN, LEWIS & BOCKIUS
LLP
2222 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
Fax: (215) 963-5001
jgcooney@morganlewis.com
john.pease@morganlewis.com
alison.tanchyk@morganlewis.com
william.mcenroe@morganlewis.co
m
zachary.johns@morganlewis.com

Amanda B. Robinson
MORGAN, LEWIS & BOCKIUS
LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel: (202) 739-3000
Fax: (202) 739-3001
amanda.robinson@morganlewis.co
m

*Counsel for Teva Pharmaceuticals
 USA, Inc.*

/s/ Michael Weinstein
Michael Weinstein
Michael C. Klauder
COLE SCHOTZ P.C.
25 Main Street
Hackensack, NJ 07601
(201) 489-3000

*Counsel for Walter Kaczmarek*

/s/ Charles S. Leeper
Charles S. Leeper
Kenneth M. Vorrasi
Alison M. Agnew
FAEGRE DRINKER BIDDLE &
REATH LLP
1500 K Street, NW, Suite 1100
Washington, DC  20005
Telephone:  202-842-8800
Facsimile:  202-842-8465
charles.leeper@faegredrinker.com
kenneth.vorrasi@faegredrinker.com
alison.agnew@faegredrinker.com

*Counsel for John Wesolowski*


/s/  Clifford Katz
Clifford Katz
Damon Suden
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
ckatz@kelleydrye.com
dsuden@kelleydrye.com

*Counsel for Wockhardt USA LLC*

43

*/s/ Jason R. Parish*
Jason R. Parish
BUCHANAN INGERSOLL &
ROONEY PC
1700 K Street, NW
Washington, DC 20006
Telephone:  (202) 452-7940
Facsimile:  (202) 452-7989
Email:  jason.parish@bipc.com

Bradley J. Kitlowski
BUCHANAN INGERSOLL &
ROONEY PC
Union Trust Building
501 Grant Street
Pittsburgh, PA 15219
Telephone:  (412) 562-8368
Facsimile:  (412) 562-1041
Email: bradley.kitlowski@bipc.com

*Counsel for Zydus Pharmaceuticals
    (USA) Inc.*

## COMBINED CERTIFICATE OF COMPLIANCE

1. This petition complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because it contains 6913 words, excluding the parts of the petition exempted by Fed. R. App. P. 21(a)(2)(C).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman type.

3. Pursuant to Third Circuit Local Appellate Rule 31.1(c), I, Devora W. Allon, hereby certify that the text of the electronic Petition for a Writ of Mandamus is identical to the text in the paper copies.

4. Pursuant to Local Appellate Rule 46.1(e), I certify that I am counsel of record and am a member of the bar of the United States Court of Appeals for the Third Circuit.

5. On February 14, 2024, Symantec Protection Engine 8.2, a virus detection program, was run on the electronically filed copy of this brief and no virus was detected.

February 14, 2024

*s/ Devora W. Allon*
Devora W. Allon

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the Court's CM/ECF system, which will send an electronic notice to the registered participants as identified on the Notice of Electronic Filing, and to be filed in paper format pursuant to this Court's Rule 113.1(a). I further certify that service was accomplished upon the following, in compliance with Rule 25(c) of the Federal Rules of Appellate Procedure, via first-class mail, by depositing true copies thereof, enclosed in a wrapper addressed as shown below, into the custody of the United States Postal Service for delivery.

Colin P. Snider
Assistant Attorney General
2115 State Capitol
P.O. Box 98920
Lincoln, NE 68509
Tel: (402) 471-7759
colin.snider@nebraska.gov

*Attorney for the State of Nebraska*

W. Joseph Nielsen
Sage L. Zitzkat
Assistant Attorneys General
165 Capitol Avenue
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5040
joseph.nielsen@ct.gov
sage.zitkat@ct.gov

*Liaison Counsel for the States*
*Attorneys for the State of Connecticut*

Robert L. Hubbard
Assistant Attorney General
28 Liberty, 20th Floor
New York, New York 10005
Tel: (212) 416-8267
robert.hubbard@ag.ny.gov

*Liaison Counsel for the States*
*Attorney for the State of New York*

Jessica V. Sutton
Special Deputy Attorney General
114 West Edenton Street
Raleigh, North Carolina 27603
Tel: (919) 716-6000
jsutton2@ncdoj.gov

*Attorney for the State of North Carolina*

Donald Hawthorne, Esq.
CURTIS, MALLET-PREVOST,
COLT & MOSEL LLP
101 Park Avenue
New York, New York 10178
Tel: +1 212 696 6000
Fax: +1 212 697 1559
Email: dhawthorne@curtis.com

*Counsel for Breckenridge*
*Pharmaceutical Inc.*

Amy Carver
Welsch & Recker
306 Walnut Street
Philadelphia, PA 19106
(215) 972-6430
abcarver@welshrecker.com

*Counsel for Tracy Sullivan DiValerio*

James A. Backstrom
JAMES A. BACKSTROM,
COUNSELLOR AT LAW
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
(215) 864-7797
jabber@backstromlaw.com

*Counsel for Marc Falkin*

Adam S. Lurie
LINKLATERS LLP
601 Thirteenth Street NW
Suite 400S
Washington, DC 20005
Telephone: (202) 654-9200
Facsimile: (202) 654-9210
adam.lurie@linklaters.com

*Counsel for Michael Perfetto*

February 14, 2024

*s/ Devora W. Allon*
Devora W. Allon

# APPENDIX

# TABLE OF CONTENTS

Status Order from Judge Rufe (Dec. 7, 2023) ..........................................................A1

Remand Order from the United States Judicial Panel on Multidistrict
    Litigation (Jan. 31, 2024) ......................................................................................A5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724**<br>**16-MD-2724** |
| **THIS DOCUMENT RELATES TO:**<br><br>*ALL ACTIONS* | **HON. CYNTHIA M. RUFE** |

## STATUS ORDER

The purpose of this Order is to report to the Judicial Panel on Multidistrict Litigation

("JPML") the current status of the litigation known as "In re: Generic Pharmaceuticals Pricing

Antitrust Litigation," MDL No. 2724, in light of the Motion to Remand filed by the Plaintiffs in

the State Actions.[1]

The MDL initially was formed as the result of actions filed by private Plaintiffs

concerning the pricing of two generic pharmaceuticals, digoxin and doxycycline. The Panel later

transferred additional actions brought by private Plaintiffs and renamed the MDL based on the

following:

> (a) plaintiffs assert claims for price fixing of generic drugs in violation of the
> Sherman Act and/or state antitrust laws on behalf of overlapping putative
> nationwide classes of direct or indirect purchasers of generic pharmaceuticals; (b)
> the average market price of the subject generic pharmaceutical is alleged to have
> increased between 2012 and the present; (c) defendants are alleged to have
> effectuated the alleged conspiracy through direct company-to-company contacts
> and through joint activities undertaken through trade associations, in particular
> meetings of the Generic Pharmaceutical Association; and (d) the allegations stem
> from the same government investigation into anticompetitive conduct in the
> generic pharmaceuticals industry.[2]

---

[1] Motion to Remand, *In re Generic Pharmas. Pricing Antitrust Litig.*, MDL No. 2724, Doc. 407  (J.P.M.L. filed Nov. 1, 2023).

[2] *In re Generic Digoxin & Doxycycline Antitrust Litig.*, 222 F. Supp. 3d 1341, 1344 (J.P.M.L. 2017).

Over objection by the Plaintiffs in the State Actions, the Panel later transferred the first

State Action into the MDL, determining that:

> After considering the argument of counsel, we find that the State Action involves common questions of fact with the actions transferred to MDL No. 2724, and that transfer under 28 U.S.C. § 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. Like the actions already pending in the MDL, the States: assert claims for price fixing of generic drugs (specifically, doxycycline hyclate delayed release and glyburide) in violation of the Sherman Act and state antitrust laws; allege that the average market price of these pharmaceutical products increased between 2012 and the present; and allege that defendants effectuated the alleged conspiracy through direct company-to-company contacts and through joint activities undertaken through trade associations. The States' claims, like those of the private plaintiffs, stem from the same government investigation into anticompetitive conduct in the generic pharmaceuticals industry. Inclusion of the State Action in MDL No. 2724 thus will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary.[3]

As additional cases have been filed and transferred in, the MDL has become sweeping in

scope, including proposed class actions brought by three different groups (Direct Purchaser

Plaintiffs, End Payer Plaintiffs, and Indirect Reseller Plaintiffs); cases not seeking class-action

status brought by private entities including insurers, pharmacies, hospitals and others; cases

brought by local governments; and the State Actions. Some of the cases concern individual

drugs, while others allege overarching conspiracies with regard to many generic drugs sold by

many Defendants. To manage all of these disparate claims as effectively as possible, the MDL

has been structured to move all cases forward, with five bellwether cases taking the lead.

Four of the bellwether cases are proposed class actions as to single drugs.[4] The fifth

bellwether case is a State Action alleging an overarching conspiracy with regard to

---

[3] Transfer Order, *In re Generic Pharmas. Pricing Antitrust Litig.*, MDL No. 2724, Doc. 336 (J.P.M.L. filed Aug. 3, 2017).

[4] These bellwether cases are the clobetasol and clomipramine proposed class actions brought by the Direct Purchaser Plaintiffs and the End Payer Plaintiffs.

2

approximately 80 generic dermatology products.[5] This bellwether, referred to as the

Dermatology Action, was filed in the United States District Court for the District of Connecticut

and transferred to the MDL. More than a year after the transfer, an amended complaint was filed

in the Dermatology Action that added the State of California as a Plaintiff.[6] The Offices of State

Attorneys General have been active counsel throughout the MDL, and particularly so in the

bellwether litigation, where the Dermatology Action is the most expansive of the cases.

This Transferee Court has focused on streamlining and preparing the bellwether cases for

settlement or for rulings on the merits, including continuing to address pending motions to

dismiss and other complex motions.[7] Bellwether fact discovery is nearly complete, and there is a

comprehensive schedule in place for further proceedings into 2024—on matters that affect all

bellwether actions—including expert discovery, expert reports, *Daubert* motions, and summary

judgment.

Although under *Lexecon*,[8] this Transferee Court could not conduct a trial of the State

Action bellwether unless all parties agree, there is still much that can be accomplished through

coordinated pretrial proceedings, including dispositive and *Daubert* motions and exploration of

settlement options through the auspices of a settlement neutral. Both the Transferee Court and

the Special Masters appointed to assist with the informal resolution of disputes have developed

significant knowledge with regard to the cases and the generic pharmaceutical industry.

---

[5] *Connecticut v. Sandoz*, No. 20-3539 (E.D. Pa.).

[6] Am. Compl. [Doc. No. 62], No. 20-3539, *Connecticut v. Sandoz*, No. 20-3539 (E.D. Pa.).

[7] During this time, this Transferee Court granted limited intervenor status to the United States as pending criminal prosecutions filed against certain Defendants raised additional challenges to the management of the MDL; only recently have the criminal cases been resolved.

[8] *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

3

Without commenting on the legal analysis relating to the retroactivity of the Venue Act, under traditional 28 U.S.C. § 1407 considerations, this Transferee Court would not recommend that the State Actions be transferred at this time, as the State Actions continue to be actively litigated within the MDL. This is particularly true as to the bellwether State Action, which is fully integrated into, and a key part of, the bellwether proceedings. With all concerned parties in the MDL before this Transferee Court and with the extensive assistance of the Special Masters, counsel have been able to coordinate complex scheduling, facilitate communication, and resolve pretrial disputes.

**AND NOW**, this 7th day of December 2023, it is hereby **ORDERED** that the Clerk of Court is directed to **TRANSMIT** this Status Order to the JPML.

It is so **ORDERED**.

**BY THE COURT:**

/s/ Cynthia M. Rufe

_____

**CYNTHIA M. RUFE, J.**

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

IN RE: GENERIC PHARMACEUTICALS
PRICING ANTITRUST LITIGATION                          MDL No. 2724

## REMAND ORDER

**Before the Panel**:  The state antitrust enforcement actions listed on Schedule A (the State Actions) were transferred from the District of Connecticut to the Eastern District of Pennsylvania for centralized proceedings in MDL No. 2724 between 2017 and 2020.  This highly complex antitrust proceeding involves claims for price fixing of numerous generic drugs in violation of the Sherman Act and state antitrust laws.  Plaintiffs in this MDL allege that the average market price of these pharmaceutical products increased between 2012 and the present because of overlapping conspiracies effectuated by defendants through direct company-to-company contacts and joint activities undertaken through trade associations.

In December 2022, legislation was enacted that amended 28 U.S.C. § 1407(g) to exempt state antitrust enforcement actions arising under federal antitrust law from MDLs.  Plaintiffs in the State Actions[1] move for an order remanding these actions to the District of Connecticut.  Plaintiffs argue that Section 1407(g) as amended applies to their actions and requires remand.  Approximately forty defendants in the State Actions oppose the motion for remand.[2]

---

[1] Plaintiffs state in their papers that this motion is brought by "[e]very state except Alabama, Arkansas, Hawaii, and Texas, along with the District of Columbia, Puerto Rico, the Northern Mariana Islands, and the Virgin Islands."  Mem. in Supp. at 1 n.1, MDL No. 2724 (J.P.M.L. filed Nov. 1, 2023), ECF No. 407-1.

[2] Opposing defendants include:  Upsher-Smith Laboratories, LLC; Actavis Elizabeth, LLC; Actavis Holdco U.S., Inc.; Actavis Pharma, Inc.; Amneal Pharmaceuticals, Inc.; Amneal Pharmaceuticals, LLC; Apotex Corp.; Ara Aprahamian; Aurobindo Pharma U.S.A., Inc.; Bausch Health Americas, Inc.; Bausch Health US, LLC; Mitchell S. Blashinsky; Douglas Boothe; Breckenridge Pharmaceutical Inc.; James Brown; Maureen Cavanaugh; Citron Pharma, LLC; Dr. Reddy's Laboratories, Inc.; Marc Falkin; Glenmark Pharmaceuticals Inc., USA; James Grauso; Kevin Green; Lannett Company, Inc.; Lupin Pharmaceuticals, Inc.; Rajiv Malik; Mayne Pharma Inc.; Mylan Inc.; Mylan Pharmaceuticals Inc.; James Nesta; Michael Perfetto; Perrigo New York, Inc.; Dave Rekenthaler, Richard Rogerson, Sandoz Inc.; Fougera Pharmaceuticals Inc.; Teva Pharmaceuticals USA, Inc.; John Wesolowski; Wockhardt USA LLC; and Zydus Pharmaceuticals (USA) Inc.  Defendants Tracy Sullivan DiValerio and Ascend Laboratories, LLC, join these defendants' opposition.

- 2 -

Prior to its amendment in December 2022, Section 1407(g) exempted federal antitrust enforcement actions from centralization under Section 1407. The 2022 amendment, which was enacted as part of the Consolidated Appropriations Act, 2023, added the words "or a State" to this exemption. *See* Pub. L. No. 117-328, Div. gg, Title III, § 301, 136 Stat. 4459, 5970 (Dec. 29, 2022). Thus, Section 1407(g), as amended, now states: "Nothing in this section shall apply to any action in which the United States or a State is a complainant arising under the antitrust laws." Subsequently, we held that this amendment "applies to pending state antitrust enforcement actions and, absent a state's waiver of its venue rights, the Panel must grant . . . remand." *In re Google Dig. Advert. Antitrust Litig.*, MDL No. 3010, __ F. Supp. 3d __, 2023 WL 3828612, at *2 (J.P.M.L. June 5, 2023). Plaintiffs argue that Section 1407(g), as amended and as previously applied by the Panel, requires remand of the State Actions here.

**I.**

Defendants offer several arguments against remand of the State Actions. First, they argue that plaintiffs have waived any right to seek Section 1407 remand. As we noted in our *Google* decision, a state can waive its right to remand under Section 1407(g). 2023 WL 3828612, at *2. Indeed, such waivers—called *Lexecon* waivers—are not uncommon and typically are employed by parties who agree to trial in the transferee court. *See, e.g.*, *In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*, 357 F. Supp. 3d 1389, 1390 (J.P.M.L. 2018) ("While parties often waive *Lexecon* rights for a given case to remain in the transferee court for trial, once the Section 1407 remand process is initiated, the statute unambiguously requires the Panel to return a transferred action to the district from whence it came."). *See also Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998) (holding that Section 1407 "obligates the Panel to remand any pending case to its originating court when, at the latest, those pretrial proceedings have run their course.").

The Panel has not yet had occasion to consider the standard for a party to waive its right to Section 1407 remand. Defendants argue that the standard for waiver of an objection to venue set forth in 28 U.S.C. § 1406(b)—namely, that an objection to venue must be raised in a timely and sufficient manner—applies here. Those few decisions by other courts that have addressed this issue, however, suggest a different standard is required in the Section 1407 context. For instance, the Fifth Circuit, in a decision denying mandamus relief from a bellwether trial scheduling order, opined:

> Section 1407 provides that transferred actions "*shall be remanded* . . . at or before the conclusion of such pretrial proceedings." This mandatory language creates a powerful presumption in favor of remand, one that cannot easily be overcome. The result is a statutory right to remand following an MDL proceeding, analogous to the statutory right to removal under 28 U.S.C. § 1441. A party cannot waive its removal rights through a forum-selection clause unless the waiver is "clear and unambiguous." Likewise, we hold that a *Lexecon* waiver must be "clear and unambiguous."

*In re DePuy Orthopaedics, Inc.*, 870 F.3d 345, 351 (5th Cir. 2017) (footnotes and citations omitted). And the Seventh Circuit, in an appeal from a suggestion of remand, opined that:

- 3 -

The mandatory nature of the § 1407(a) transfer, and its statutory rather than contractual origin, counsel for a more rather than less restrictive waiver standard than that used in the arbitration context. Nevertheless, we need not address whether that is in fact necessary, because even under the standard articulated in arbitration cases, the defendant has failed to demonstrate waiver here.

We consider, then, whether the plaintiffs, expressly or through conduct, evidenced an intent contrary to that statutory mandate, relinquishing the right to remand the case and consenting to retention of the case by the transferee court.

*Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009) (holding that plaintiffs did not waive right to remand by filing a consolidated complaint in MDL, which stated that venue was proper in transferee court, or by taking part in pretrial proceedings, including the establishment of trial dates). Both courts recognized that Section 1407 creates a statutory presumption *against* waiver—the default under the statute is that an action is remanded to its transferor court at the conclusion of pretrial proceedings. *Cf. Lexecon*, 522 U.S. at 35 ("The Panel's instruction [to remand] comes in terms of the mandatory 'shall,' which normally creates an obligation impervious to judicial discretion."). Whatever the standard for waiver may be—we need not precisely define the boundaries of *Lexecon* waiver for purposes of this motion—it must, at a minimum, require that a party take some affirmative action that clearly demonstrates the party's intent to waive its statutory right to remand. Mere inaction or failure to object is not sufficient.

Defendants argue that plaintiffs waived their right to Section 1407 remand by: (1) failing to object to the Panel's orders transferring two of the actions to the MDL; (2) offering to waive their *Lexecon* rights at a July 9, 2020, status conference; (3) by continuing to participate in pretrial proceedings, including discovery, after the amendment of Section 1407(g) in December 2022; and (4) by waiting until November 2023 to move the Panel for Section 1407 remand. That plaintiffs did not oppose transfer of two of the actions cannot constitute waiver. Transfer to an MDL necessarily entails the right to remand under Section 1407; a party's opposition to the transfer is irrelevant. Moreover, plaintiffs did oppose transfer of the first-filed State Action to the MDL. *See In re Generic Pharms. Pricing Antitrust Litig.*, MDL No. 2724, 2017 WL 4582710 (J.P.M.L. Aug. 3, 2017) (denying motion to vacate CTO). That plaintiffs correctly perceived that repeating their arguments against transfer with respect to their later-filed actions would not serve judicial economy or the parties' interests does not amount to waiver of remand under Section 1407.

Plaintiffs' oral offer to waive their *Lexecon* rights at a status conference in 2020 also does not constitute a waiver. Defendants never suggest this offer was accepted or treated as such by the transferee court or the parties. At most, this action constitutes a potential willingness by plaintiffs to relinquish their remand rights—not a clear intent to do so. Tellingly, the transferee court, in a report to the Panel issued in response to plaintiffs' remand motion, suggests that no *Lexecon* waiver has been made. *See* Status Order at 3, *In re Generic Pharms. Pricing Antitrust Litigation*, MDL No. 2724 (filed with J.P.M.L. on Dec. 13, 2023), ECF No. 520 ("Although under *Lexecon*, this Transferee Court could not conduct a trial of the State Action bellwether unless all parties agree, there is still much that can be accomplished through coordinated pretrial proceedings.").

- 4 -

Defendants next point out that plaintiffs have been at the center of discovery in the MDL. According to defendants, plaintiffs (and their relevant state agencies) have sat for 69 depositions since Section 1407(g) was amended in December 2022, and have litigated dozens of discovery disputes. But participation in the pretrial proceedings envisioned under Section 1407—no matter how extensive—cannot, on its own, constitute waiver of the right to remand under Section 1407.

Nor is the delay by plaintiffs in seeking Section 1407 remand here a basis for finding waiver. To be sure, inordinate delay in seeking Section 1407 remand, combined with other conduct evincing an intent to waive a party's *Lexecon* rights, can amount to waiver. For instance, in *In re Carbon Dioxide Industry Antitrust Litigation*, 229 F.3d 1321, 1326–27 (11th Cir. 2000), the Eleventh Circuit held that plaintiffs could not seek Section 1407 remand where they had repeatedly agreed to trial in the transferee court and did not seek remand until the day of jury selection. The circumstances here are not comparable. The State Actions are not approaching trial or even the conclusion of pretrial proceedings. Indeed, motions to dismiss remain pending in all three actions, and defendants have not yet answered plaintiffs' complaints. Further, plaintiffs offer a reasonable explanation for their delay in moving for Section 1407 remand—they were awaiting the outcome of the remand motion in *Google* and the subsequent mandamus proceeding in the Second Circuit. *See* Order, *In re Google LLC*, No. 23-910 (2d Cir. Oct. 4, 2023), ECF No. 101 (denying petition for writ of mandamus). Accordingly, plaintiffs have not waived their right to seek Section 1407 remand.

## II.

Defendants next seek to revisit our ruling in *Google* that Section 1407(g) applies to state antitrust enforcement actions pending in MDLs. In *Google*, the Panel applied the statutory interpretation framework established in *Landgraf v. USI Film Productions*, 511 U.S. 244, 280 (1994), to determine that the amendment to Section 1407(g) requires remand of state antitrust enforcement actions pending in MDLs at the time of enactment. *See Google*, 2023 WL 3828612, at *2–3. Defendants contend that the Panel's analysis of Section 1407(g) should differ here because MDL No. 2724 is pending in a transferee court located within the Third Circuit. We find this argument—that the Panel's interpretation of its foundational statute should differ depending on where a given MDL was centralized—deeply problematic. If there indeed is a split between the Second and Third Circuits as to the interpretation of Section 1407, that split should be resolved by the Supreme Court, rather than by the Panel employing different standards of statutory interpretation in different cases.

In any event, we are not persuaded that the interpretation and application of Section 1407(g) differs under Third Circuit precedent. Defendants rely upon *Mathews v. Kidder, Peabody & Co., Inc.*, 161 F.3d 156 (3d Cir. 1998), in which the Third Circuit interpreted *Lindh v. Murphy*, 521 U.S. 320 (1997), as adding a step to the *Landgraf* analysis. As formulated by the *Mathews* court, a court should "(1) look for an express command in either direction; (2) discern whether there is congressional intent to only apply a statute prospectively; (3) analyze the statute for retroactive effect; and (4) look for clear intent to apply the statute retrospectively (if it has a retroactive effect) or simply use normal rules of construction to determine the statute's temporal reach." *Mathews*, 161 F.3d at 161.

- 5 -

We held in *Google* that "the express language of the Section 1407(g) does not provide an answer as to its temporal reach." 2023 WL 3828612, at \*2.  Moving to the second question under *Mathews*, there is no discernable congressional intent that the amendment to Section 1407(g) should not apply to actions pending in MDLs.  Defendants focus on the deletion of a June 2021 "effective date" provision from the first version of the State Antitrust Enforcement Venue Act bill[3] and an "applicability" provision in a later version of the bill.[4]  Defendant in *Google* relied upon the same legislative history.  We found it unpersuasive because:

> The Supreme Court in *Landgraf* cautioned against relying on the deletion of a retroactivity provision, explaining that such omissions may reflect a political "compromise" and "does not tell us precisely where the compromise was struck."  Moreover, Congress generally is presumed to be aware of relevant judicial precedent, and the application of procedural rules to pre-enactment pending cases is well-known.

*Google*, 2023 WL 3828612, at \*3 (internal citations omitted).  The *Mathews* court was similarly wary of finding "clear evidence" of congressional intent from "unstated intentions, absent language, and explicit directives in [unrelated] areas [of the legislation]."  *Mathews*, 161 F.3d at 170; *see also id.* ("We are extremely reluctant to find the 'clear statement' of congressional intent required by the *Landgraf/Lindh* analysis in the unexplained and unremarkable alteration of language in what was clearly a minor aspect . . . of a complex legislative scheme.").

Defendants argue that the Supreme Court has, at times, considered deleted retroactivity provisions as indicia of congressional intent.[5]  However, the circumstances of this legislation—

---

[3] The proposed bill initially included a section stating, "[t]his Act and the amendments made by this Act, shall take effect on June 1, 2021."  *See* S. 1787, 117th Cong. (as introduced, May 24, 2021); H.R. 3460, 117th Cong. (as introduced May 21, 2021).  After the bill was reported out of committee in both chambers, this section was stricken.  *See* 168 Cong. Rec. S2935-36 (daily ed. June 14, 2022); 168 Cong. Rec. H8253 (daily ed. Sept 29, 2022).

[4] When the State Antitrust Enforcement Venue Act was incorporated into the Consolidated Appropriations Act, a version appearing in that bill included a provision that said, "[t]he amendments made by subsection (a) shall apply to any matter pending on, or filed on or after, the date of enactment of this Act," 168 Cong. Rec. S7752 (daily ed. Dec. 19, 2022).  Both the Senate and the House subsequently passed the Consolidated Appropriations Act of 2023, without this language.  *See* 168 Cong. Rec. S10077 (daily ed. Dec. 22, 2022); 168 Cong. Rec. H10475, H10528 (daily ed. Dec. 23, 2022).

[5] The two cases cited by defendants involved very different statutes and legislative histories.  *Rivers v. Roadway Express, Inc.*, 511 U.S. 298 (1994), was also raised by Google in its motion to stay the Panel's remand order in MDL No. 3010.  We found Google's reliance on *Rivers* to be unpersuasive.  *See In re Google Dig. Advert. Antitrust Litig.*, MDL No. 3010, __ F. Supp. 3d __, 2023 WL 9316534, at \*2 n.5 (J.P.M.L. Aug. 3, 2023) (finding that *Rivers* "considered legislative history in a different context," namely, in determining whether Congress intended to restore a prior

(continued…)

- 6 -

specifically, as part of a much larger $1.7 trillion appropriations package that reportedly was driven by the threat of a government shutdown and imminent expiration of the 117th Congress—weigh against reading any congressional intent (much less a clear intent) in these deletions.

Turning to the third *Mathews* question, the Panel found in *Google* that the Section 1407(g) amendment was "plainly a procedural rule" that does not have genuine retroactive effect. *Google*, 2023 WL 3828612, at *2 ("The venue of an action cannot be characterized as impairing rights that a party had when it acted, increasing a party's liability for past conduct, or imposing new duties."). Defendants dispute this interpretation, arguing that some procedural rules are subject to a presumption against retroactivity where the procedures affected have already occurred, *e.g.*, evidentiary rulings in a case in which trial has been completed. *See Mathews*, 161 F.3d at 161 n.8. Transfer under Section 1407 does not fit into this exception, however, because such transfers are for pretrial purposes only and cases transferred are always subject to remand. *See In re Google Dig. Advert. Antitrust Litig.*, MDL No. 3010, __ F. Supp. 3d __, 2023 WL 9316534, at *3 (J.P.M.L. Aug. 3, 2023) (explaining that "it is in the very nature of Section 1407 that cases are transferred into and out of MDLs in the midst of pretrial proceedings"). Nor does remand, as suggested by defendants, undo the acts and decisions by the parties and the transferee court. For instance, even after remand, the decisions of the transferee court generally remain law of the case. *See, e.g.*, *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 705–06 (5th Cir. 2014) (holding that transferor court "properly applied the law of the case when it refused to reconsider the MDL court's rulings"). Thus, even under Third Circuit precedent, we conclude that Section 1407(g) applies to the State Actions.

## III.

Defendants also argue that the natural reading of the amendment to Section 1407(g) deprives the Panel both of its authority to transfer state antitrust enforcement actions and its authority to remand such actions. We addressed this argument in *Google*:

> On its face, the Venue Act plainly is intended to allow state antitrust actions to proceed in the action's original forum, and interpreting the subsection (g) amendment to eliminate the possibility of remand to that forum yields an absurd result that is the exact opposite of the statute's purpose. Thus, we conclude that we retain the authority to remand previously-centralized state antitrust enforcement actions under subsection (a). We also believe that the power to remand is a part of the Panel's inherent authority to grant a remedy for actions transferred to an MDL that no longer belong there.

*Google*, 2023 WL 3828612, at *3. *See also id.* at *3 n.3 (citing *United States v. Fitzgerald*, 906 F.3d 437, 447 (6th Cir. 2018) ("absurd results are to be avoided, and courts should not construe a

---

understanding of § 1981). Defendants here also cite *Hamdan v. Rumsfeld*, 548 U.S. 557 (2006), which involved application of the Detainee Treatment Act of 2005 to a challenge to a trial before a military commission at Guantanamo Bay. The Court there found that Congress had considered the temporal reach of the statute at every stage of the legislative process. *Id.* at 579–80. The same cannot be said here.

- 7 -

statute to produce an absurd result that we are confident Congress did not intend") (internal citations omitted)). Holding otherwise would leave the State Actions stranded in a procedural limbo—the actions could never be remanded from the transferee court and possibly could not be tried in E.D. Pennsylvania, as they were transferred exclusively for pretrial proceedings. Defendants' proposed solution to this conundrum—adopting a prospective application of the amended Section 1407(g) that, as we have held, is not consistent with a proper interpretation of the statute—is not persuasive.

### IV.

Defendants suggest that because several states' claims were added through amendment of the complaints in the MDL, and were never filed in the transferor court, there is no district to which these claims can be remanded. This argument is easily dispensed with. Section 1407(a) states that "[e]ach *action* so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred." (Emphasis added.) Regardless of whether certain claims or plaintiffs originated in the MDL, the State Actions originated in the District of Connecticut and ultimately must be remanded there.[6]

### V.

Finally, defendants argue that the transferee court and the parties have expended significant resources on the State Actions, which will be wasted if the actions are remanded to the District of Connecticut. This is undoubtedly true to some extent. As the transferee court reports, one of the State Actions "is fully integrated into, and a key part of, the bellwether proceedings." *See* Status Order at 4. Even so, the impact of remand on the MDL is largely irrelevant where the mandate of the statute is clear. Further, while remand may temporarily disrupt proceedings in the MDL, it is unlikely that the work by the parties and the court in the MDL will be for nought. As mentioned, the rulings of the transferee court will apply to the State Actions absent a ruling to the contrary by the transferor court, and the extensive discovery conducted to date undoubtedly will be used in both the State Actions and the MDL. Additionally, informal cooperation among the parties and coordination among the involved courts remains possible.[7]

---

[6] Similarly, it is irrelevant that some of the plaintiffs in these three actions are not states (e.g., the District of Columbia). Section 1407(g) applies to "any action in which the United States or *a State* is a complainant arising under the antitrust laws." (Emphasis added.) The statute does not require that states constitute *all* plaintiffs in an action.

[7] Defendants suggest in their opposition that they may seek Section 1404 transfer of the State Actions from the District of Connecticut to the Eastern District of Pennsylvania. We offer no opinion on the merits of such a motion but note that in other contexts such a transfer "can result in a more streamlined action, without the procedural necessity of remand to the transferor court that is required under Section 1407." *In re Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012).

**A12**

- 8 -

IT IS THEREFORE ORDERED that the actions listed on Schedule A are remanded to the District of Connecticut.

PANEL ON MULTIDISTRICT LITIGATION

Karen K. Caldwell
Chair

Nathaniel M. Gorton      Matthew F. Kennelly
David C. Norton          Roger T. Benitez
Dale A. Kimball          Madeline Cox Arleo

IN RE: GENERIC PHARMACEUTICALS
PRICING ANTITRUST LITIGATION                                   MDL No. 2724

## SCHEDULE A

Eastern District of Pennsylvania

STATE OF CONNECTICUT, ET AL. v. AUROBINDO PHARMA USA, INC., ET AL.,
    C.A. No. 2:17−03768 (D. Connecticut, C.A. No. 3:16−02056)
STATE OF CONNECTICUT, ET AL. v. TEVA PHARMACEUTICALS USA, INC.,
    ET AL., C.A. No. 2:19−02407 (D. Connecticut, C.A. No. 3:19−00710)
STATE OF CONNECTICUT, ET AL. v. SANDOZ, INC., ET AL.,
    C.A. No. 2:20−03539 (D. Connecticut, C.A. No. 3:20−00802)